# IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

| | |
|---|---|
| Ahlam K. Ary, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )    Case No. *17-371-IV* |
| | ) |
| Midland Mortgage Company and | ) |
| Weiss & Cummins, PLLC, | ) |
| | ) |
| **Defendants.** | ) |

## VERIFIED COMPLAINT

Plaintiff, Ahlam K. Ary ("Ms. Ary" or "Plaintiff") brings this action against Defendants, Midland Mortgage Company and Weiss & Cummins, PLLC ("Midland" and "Weiss", respectively; "Defendants" collectively), primarily because of their failure to comply with the Federal Real Estate Settlement Procedures Act (RESPA). Defendants have ignored Ms. Ary's repeated attempts to establish herself as the successor in interest to the home, assume the mortgage loan securing the home, and seek a loan modification. Defendants have also failed to respond appropriately to "Qualified Written Requests," and Defendants failed to take corrective action despite being notified of their errors. By this Verified Complaint, Ms. Ary seeks to enjoin Defendants from wrongfully foreclosing on her home and recover damages based on Defendants' numerous violations of statutory and common law, including: violations of RESPA, violations of the Consumer Financial Protection Bureau's (CFPB) regulations, breach of contract, and promissory estoppel.

EXHIBIT A

## JURISDICTION AND VENUE

1) This Court has jurisdiction over the subject matter of this lawsuit pursuant to Tenn. Code Ann. §§ 16-1-101, 102 & 103.

2) Although Midland is a non-resident of the State of Tennessee, Midland routinely conducts business within the state; thus, this Court has personal jurisdiction over Midland pursuant to Tenn. Code Ann. § 20-2-214(a)(1).

3) This Court has personal jurisdiction over Weiss as it is a resident of the State of Tennessee and routinely conducts business in the State of Tennessee.

4) Each cause of action alleged herein arose from facts that occurred or substantially occurred in Davidson County, Tennessee; thus, venue is proper in Davidson County, Tennessee pursuant to Tenn. Code Ann. § 20-4-101.

## PARTIES

5) Plaintiff Ahlam K. Ary is an adult who resides in Davidson County, Tennessee. As of the commencement of this action, her address is 109 Colemont Drive, Antioch, Tennessee, 37013. This is the same home Ms. Ary lived at with her husband, Rauf Ary (Mr. Ary), who passed away on October 4, 2015. Ms. Ary now maintains 100% title interest in the home. This interest is subject to the mortgage on the home serviced by Midland Mortgage Company.

6) Defendant Midland Mortgage Company, a corporation, is incorporated in the State of Oklahoma. The address of its principal place of business is 999 NW Grand Boulevard, Oklahoma City, Oklahoma, 73118. Based on information gathered from the Secretary of State's website, Midland Mortgage Company does not have a registered agent in Tennessee and has not been qualified to do business in Tennessee since 2012. Midland Mortgage Company is primarily engaged in the business of mortgage loan servicing. Upon information and belief, Midland

2

Mortgage Company services hundreds of mortgage loans in the State of Tennessee, including the mortgage which secures Ms. Ary's residence. Midland Mortgage Company's parent company is MidFirst Bank.

7) Defendant Weiss & Cummins, PLLC, a corporation, is incorporated in the State of Tennessee. The address of its principal place of business is 208 Adams Avenue, Memphis, Tennessee, 38103. Weiss & Cummins, PLLC is a law firm specializing in mortgage servicing and is often appointed as the substitute trustee for homes going through foreclosure in the State of Tennessee. Weiss & Cummins, PLLC has been appointed as the substitute trustee in the Deed of Trust governing Ms. Ary's residence. As the substitute trustee, Weiss & Cummins, PLLC is ultimately responsible for any foreclosure that might occur to Ms. Ary's home.

## ALLEGATIONS OF FACT

8) At all times relevant to this Complaint, Midland was the servicer to the mortgage loan which secures the property at issue ("the home").

9) Weiss was appointed the substitute trustee to Deed of Trust on or around December 2, 2016. The Substitution of Trustee (Instrument No. 20161219-0133276) was recorded with the Davidson County Register of Deeds on December 19, 2016. As the Substitute Trustee, Weiss is ultimately responsible for any foreclosure sale that occurs.

10) The home was purchased by Ms. Ary's late husband, Rauf Ary, on November 29, 1999. At the time of its purchase, only Mr. Ary's name was on the Warranty Deed and the mortgage loan. In other words, Mr. Ary was the sole owner and original borrower.

11) Mr. Ary passed away intestate on October 4, 2015.

3

12)    At the time of his passing, Ms. Ary was the only heir-at-law to Mr. Ary's estate; however, before the estate could be administered, Ms. Ary's son, Acar Ary, became a legal adult, thus making him an heir to Mr. Ary's estate.

13)    After Acar Ary turned eighteen, he and Ms. Ary were legally the successors in interest to the home secured by the mortgage at issue.

14)    At all times relevant to this Complaint, Midland failed to identify and treat Ms. Ary and her son as the successors in interest to the home secured by the mortgage at issue.

15)    On February 3, 2017, Acar Ary transferred his interest in the home to Ms. Ary via quitclaim deed. The quitclaim deed has been recorded with the Davidson County Register of Deeds as Instrument Number 20170203-0011799.

16)    Upon transfer of Acar Ary's interest in the home, Ms. Ary again became the sole owner of the home and the only successor in interest.

17)    Even after the completion of this transfer, which was done at Midland's request, Midland still did not treat or identify Ms. Ary as the successor in interest.

18)    Ms. Ary was able to keep up with the mortgage payments for several months after her husband's passing; however, she began to fall behind on payments in the Spring of 2016.

19)    Ms. Ary contacted Midland to inquire about having the loan put in her name and to see what could be done about her mortgage payments. A representative from Midland told Ms. Ary that she needed to probate her late husband's estate.

20)    Ms. Ary then contacted The Legal Aid Society of Middle Tennessee and the Cumberlands ("Legal Aid") to see if she qualified for assistance with the probate of her late husband's estate. Legal Aid was able refer Ms. Ary's probate matter to a volunteer lawyer to be handled *pro bono*.

4

21) Legal Aid also offered to assist Ms. Ary with a loss mitigation application (also known as a Request for Mortgage Assistance (RMA)) to be submitted to Midland. The RMA is a request to modify the terms of the mortgage loan to create affordable monthly payments.

22) On or around August 29, 2016, Ms. Ary sent Midland a completed RMA. Included with this RMA was documentation showing Ms. Ary's income and a hardship affidavit.

23) Ms. Ary completed the RMA with Legal Aid's assistance. Ms. Ary has worked particularly close with Tabitha Faulconer ("Ms. Faulconer"), a paralegal and NCHEC-certified Foreclosure Intervention and Default Counselor.

24) On or around September 6, 2016, Ms. Faulconer called Midland for an update on the status of Ms. Ary's RMA. Midland stated it needed a signed credit authorization from Ms. Ary in order to complete her loan modification application. Midland did not claim to need any other documentation at the time. Midland never made its request for a signed credit authorization in writing.

25) On or around September 9, 2016, Ms. Faulconer faxed Midland Ms. Ary's signed credit authorization.

26) On or around September 19, 2016, Ms. Faulconer called Midland for an update on the status of Ms. Ary's RMA. Midland stated it needed another credit authorization signed, Ms. Ary's two (2) most recent bank statements, and Ms. Ary's children's birth certificates to complete her loan modification application. Midland did not claim to need any other documentation at the time. Midland never made its request for another credit authorization, two (2) bank statements, or the children's birth certificates in writing.

5

27)     On or around September 27, 2016, Ms. Faulconer faxed Midland Ms. Ary's new signed credit authorization, two (2) most recent bank statements, and her children's birth certificates.

28)     On or around October 3, 2016, Ms. Faulconer called Midland for an update on the status of Ms. Ary's RMA. Midland stated it needed a copy of Ms. Ary's driver's license and Social Security card. Midland stated that it was preparing her loan assumption paperwork and would be mailing it to Ms. Ary soon.

29)     On or around October 11, 2016, Ms. Faulconer faxed Midland the requested copy of Ms. Ary's driver's license and Social Security card.

30)     On or around October 24, 2016, Ms. Faulconer called Midland for an update on the status of Ms. Ary's RMA. Midland stated it had not mailed Ms. Ary's loan assumption paperwork. Instead, Midland was now requesting Ms. Ary's probate filing to complete her application. Again, the request for the probate filing was not made in writing.

31)     On or around November 10, 2016, Midland mailed Ms. Ary a letter stating that her RMA was denied due to being incomplete. The letter was not sent to Legal Aid, despite having identified itself as Ms. Ary's counsel. Upon receipt of the letter, Ms. Faulconer immediately called Midland, and Midland stated that if it received a copy of Ms. Ary's probate filing by November 27, 2016, it would re-open her loss mitigation application.

32)     On or around November 23, 2016, Ms. Faulconer faxed a copy of Ms. Ary's probate filing to Midland.

33)     On or around November 28, 2016, Ms. Faulconer called Midland and Midland acknowledged that it had received Ms. Ary's probate filing and would process the re-opened application.

6

34) On or around December 1, 2016, Ms. Faulconer called Midland for an update on the status of her loan modification application. Midland stated it had deemed Ms. Ary's application as complete, and would need to speak with Ms. Ary to complete her financial review.

35) On or around December 9, 2016, Ms. Ary called Midland to complete the financial review as requested. Midland told Ms. Ary that her loss mitigation application had been closed since October 27, 2016. Midland told Ms. Ary that she would need to start all over with a new application.

36) Ms. Ary and counsel grew frustrated because this implied that Midland did not re-open the application in November 2016 as it stated. However, in efforts to save Ms. Ary's home, Legal Aid faxed Midland a new and complete loan modification application on or around December 21, 2016.

37) On or around January 3, 2017, Ms. Faulconer called Midland for an update on her new loss mitigation application. Midland stated that it had all documents it needed to review the application, but it would need Ms. Ary to call again for another financial review.

38) On or around January 9, 2017, Ms. Faulconer again called Midland for an update on her loss mitigation application. Midland stated that it needed a new third-party credit authorization signed. Despite this request not being sent in writing, Ms. Faulconer faxed Midland the requested authorization on the same day.

39) On or around January 11, 2017, counsel for Ms. Ary called Midland for an update on her loan modification application. Midland stated that the mortgagor's name on the credit authorization should read "Estate of Rauf Ary" instead of "Ahlam Ary." Midland also requested a signed credit authorization for Ms. Ary's daughter, Nisar Ary, since her income was included on the loan modification application.

7

40)     On or around January 17, 2017, Ms. Faulconer faxed Midland a new credit authorization for Ms. Ary and the credit authorization for Nisar Ary.

41)     On or around January 18, 2017, Ms. Faulconer called Midland to confirm it had received the requested credit authorizations. Midland confirmed that it had, but was now requesting Ms. Ary's letters of administration from the probate of Mr. Ary's estate. Ms. Faulconer reminded Midland that it already sent the petition for letters of administration, but Midland stated that it needed the final letters.

42)     On or around January 20, 2017, Ms. Faulconer faxed Midland the requested letters of administration.

43)     On or around January 24, 2017, Ms. Faulconer called Midland for an update on the status of Ms. Ary's loss mitigation application. Midland communicated that it deemed Ms. Ary's application as complete. Midland's representative then put Ms. Faulconer on hold to inquire about what type of assistance could be offered. When Midland's representative picked back up, Ms. Faulconer was told that Ms. Ary would need to assume the loan in order to be eligible for loss mitigation assistance. Midland's representative told Ms. Faulconer that in order to assume the loan Ms. Ary would need to issue a quitclaim deed from herself to herself. Ms. Faulconer tried explaining that this request made no sense and that Ms. Ary had already assumed the loan as the successor in interest, but Midland persistently requested this quitclaim deed.

44)     On or around February 3, 2017, Ms. Faulconer faxed Midland a quitclaim deed from Ms. Ary's adult son, Acar Ary, and an affidavit of heirship to further prove that Ms. Ary was the sole owner of the home and entitled to assume the loan.

8

45)     On or around February 8, 2017, counsel for Ms. Ary called Midland for an update on her loss mitigation application. Midland acknowledged that it had received the quitclaim deed and affidavit of heirship and that Ms. Ary needed to call Midland to review her credit report.

46)     On or around February 13, 2017, Ms. Ary called Midland to complete the credit report review. Ms. Ary completed the review, but Midland then requested her most recent bank statement and her food stamps award letter.

47)     On or around February 16, 2017, Ms. Faulconer faxed Midland Ms. Ary's most recent bank statement and a copy of her food stamps award letter.

48)     On or around February 21, 2017, Ms. Faulconer called Midland to confirm it had received the requested documents and to ask for an update on the status of Ms. Ary's loss mitigation application. Midland acknowledged that it had received Ms. Ary's most recent bank statements and her food stamps award letter, but that in order for Ms. Ary to assume the loan she needed to deed the property to herself as the administrator of Mr. Ary's estate.

49)     Midland's continued insistence on the need for a quitclaim deed from Ms. Ary to herself in order to assume the loan is illegal and inappropriate because the loan is freely assumable under the Garn-St. Germain Act.[1]

50)     On or around March 7, 2017, Midland sent correspondence saying that it had denied Ms. Ary's loss mitigation application due to incompleteness. Importantly, Midland did not explain why Ms. Ary's application was deemed incomplete or list the document(s) it was alleging it needed.

---

[1] Under the Garn-St. Germain Act, certain property transfers render a Deed of Trust's "due on sale" provision unenforceable. 12 U.S.C. § 1701j-3(d). These are known as Garn-St. Germain-exempt transfers. The transfer under which Ms. Ary received her interest in the home is exempt under Garn-St. Germain. 12 U.S.C. § 1701j-3(d)(3) & (5). Since the Deed of Trust's "due on sale" provision is unenforceable, the mortgage loan securing the property is freely assumable by transferee. In order to effectuate the assumption, the transferee need not execute any formal documentation; instead, the transferee need only communicate her intent to be obligated under the terms of the loan.

9

51)     On or around March 23, 2017, counsel sent Midland and Weiss a written RESPA Notice of Error explaining that Midland's refusal to treat Ms. Ary as the successor in interest, refusal to acknowledge her loan assumption, and refusal to properly process her loss mitigation application were unlawful servicing errors. Counsel demanded that these errors be immediately corrected and cautioned against pursuing a foreclosure without first evaluating Ms. Ary for all loss mitigation options for which she qualifies.

52)     On or around April 11, 2017, counsel received Midland's response to the Notice of Error. Midland stated that if Ms. Ary completed enclosed loan assumption paperwork, her loan modification application would be re-opened and deemed complete.

53)     On or around April 12, 2017, counsel faxed Ms. Ary's completed loan assumption paperwork, despite the fact that Ms. Ary is not required to as she has already proven she is the successor in interest and the mortgage loan is freely assumable under the Garn-St. Germain Act.

54)     Counsel for Ms. Ary sent a letter along with the loan assumption paperwork informing Midland and Weiss that if the foreclosure sale is not canceled or postponed by close of business April 17, 2017, Ms. Ary would have no choice but to file suit to stop any potential wrongful foreclosure sale.

55)     At the time this Complaint is filed, Midland has not informed Ms. Ary or her counsel that the foreclosure sale will be canceled or postponed past its currently scheduled date of April 27, 2017.

56)     Ms. Ary now seeks relief from this Court to stop this unlawful foreclosure sale.

10

## CLAIMS FOR RELIEF
### COUNT I
### Violation of the Federal Real Estate Settlement Procedures Act, Regulation X

57)     The allegations of paragraphs 1 – 56 are realleged and incorporated herein as reference.

58)     RESPA (12 U.S.C. § 2601, *et. seq.*) and its governing regulations (Regulation X) establish the requirements for how a mortgage loan servicer or lender must conduct its servicing of the loan.

59)     One of the most important obligations imposed on mortgage loan servicers is the requirement that they affirmatively consider loss mitigation before foreclosure.  12 C.F.R. § 1024.41(c).

60)     Prior to its expiration in December 2016, Midland participated in the Home Affordable Modification Program (HAMP) developed by the United States Department of Treasury and implemented on March 4, 2009.  Therefore, Midland must comply with the rules contained in the Treasury Department's Making Home Affordable Handbook ("MHA Handbook").

61)     As a participant in HAMP, Midland is required to evaluate all loss mitigation applications submitted on or before December 30, 2016, under the HAMP guidelines. In fact, the MHA Handbook obligates Midland Mortgage to consider Ms. Ary for a loan modification while simultaneously processing the loan assumption. *See* "MHA Handbook" v. 4.4, § 8.8.

62)     Since Ms. Ary submitted both of her loss mitigation applications prior to December 30, 2016, and because Defendant Midland Mortgage Company is a participant in HAMP, Ms. Ary is entitled to be considered for a HAMP modification before her home can be foreclosed on.

11

63)     Not only has Midland refused to consider Ms. Ary for a HAMP modification, it has refused to consider Ms. Ary for any loss mitigation at all. Instead, despite the numerous documents provided to Midland, Midland claims it cannot process Ms. Ary's loss mitigation because it is "incomplete."

64)     Importantly, in its most recent communication in which it claimed Ms. Ary's application was incomplete, Midland did not even list what documents were still outstanding. It is a requirement under RESPA to inform borrowers exactly documentation is required if the borrower's application is deemed incomplete. 12 C.F.R. 1024.41(b)(2)(i)(B)

65)     Ms. Ary has now submitted two (2) complete loss mitigation applications to Midland. Midland's refusal to process her applications constitutes a violation of RESPA's requirement to evaluate for loss mitigation before foreclosure. 12 C.F.R. 1024.41(g); 12 C.F.R. § 1024.35(b)(7) & (11).

66)     Such a violation gives rise to a private right of action for which Ms. Ary can ask this Court to enjoin the scheduled foreclosure sale before it happens. 12 U.S.C. § 2614; Tenn. Code Ann. 16-11-101.

67)     Ms. Ary is also eligible to recover any damages she has suffered or will suffer as the result of Defendant Midland's violations. 12 U.S.C. §2605(f)

## COUNT 2
### Violation of the Federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et. seq.*

68)     The allegations of paragraphs 1 – 67 are realleged and incorporated herein as reference.

69)     Throughout this process, Midland has failed to put requests for supplemental documentation supporting the loss mitigation application in writing. This is a violation of RESPA Regulation X. 12 C.F.R. § 1024.41(b)(2)(i)(B).

12

70) Midland has also failed to diligently obtain the documentation *actually needed* to complete Ms. Ary's loss mitigation application; instead, Midland has made numerous duplicative and arbitrary requests in an attempt to excuse its failure to process Ms. Ary's loss mitigation application. 12 C.F.R. § 1024.41(c)(2).

71) Moreover, Midland has failed to timely and adequately acknowledge and respond to the "Qualified Written Requests" sent on Ms. Ary's behalf. 12 U.S.C. § 2605(e) details the duties and statutory obligations of a mortgage loan servicer or lender in receiving and responding to borrower written inquiries. Midland has repeatedly failed to abide by the timeframe and duties imposed under this provision of RESPA and Regulation X. 12 U.S.C. § 2605(e); 12 C.F.R. §§ 1024.35 & 1024.36.

72) Midland has engaged in a pattern or practice of non-compliance with the requirements of the loss mitigation procedures and mortgage servicing provisions of RESPA as set forth in 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41.

73) Midland's violations give rise to a private right of action for which Ms. Ary can seek to enjoin the scheduled foreclosure sale and seek to recover her actual damages, statutory damages, and a reasonable attorney's fee. 12 U.S.C. §§ 2605(f) & 2614.

## COUNT 3
## Breach of Contract

74) The allegations of paragraphs 1 – 73 are realleged and incorporated herein as reference.

75) Although Ms. Ary has complied with the borrower documentation requirements of HAMP, Midland never completed the contractually required analysis to determine whether she was entitled to a HAMP trial period or any other loss mitigation option.

76)     Although Ms. Ary complied with the borrower documentation requirements of HAMP a second time, Midland has not yet completed the contractually required analysis to determine whether she is entitled to a HAMP trial period or any other loss mitigation option.

77)     Despite clear RESPA and HAMP provisions to the contrary, Defendants have allowed Ms. Ary's home to remain subject to foreclosure pending analysis of her request for a loan modification. This is known as "dual tracking". 12 C.F.R. § 1024.41(g).

78)     By participating in HAMP, Midland agreed to evaluate all eligible borrowers in default or at risk of default for loss mitigation options before foreclosing on the property.

79)     The agreement to abide by HAMP provisions was made pursuant to a Servicer Participation Agreement ("SPA") with the Treasury Department.

80)     Because the HAMP program exists for the purpose of benefitting borrowers who face foreclosure, Ms. Ary may enforce these contractual duties as a third-party beneficiary to the SPA.

81)     By this Verified Complaint, Ms. Ary seeks to enjoin the scheduled foreclosure sale until Defendants have fulfilled their duties under the SPA and HAMP.

82)     Ms. Ary also seeks to recover her actual damages stemming from Defendants' breach of the SPA and refusal to abide by the provisions of HAMP.

## COUNT 4
## Promissory Estoppel

83)     The allegations of paragraphs 1 – 82 are realleged and incorporated herein as reference.

84)     As described above, Midland promised Ms. Ary on several occasions that her loss mitigation application was complete and that it would be processed only to turn around and require additional documentation.  Midland's requests for additional documentation were

14

duplicative, arbitrary, and in direct contradiction to the promise that Ms. Ary's completed applications would be processed.

85)     Midland's promises to Ms. Ary that her loss mitigation applications were complete were unambiguous and not unenforceably vague.

86)     Ms. Ary relied on the promise that her application was complete to her detriment.

87)     Since Midland has promised on multiple occasions that Ms. Ary's loss mitigation applications were complete and being processed, Midland is estopped from referring Ms. Ary's house to Weiss for foreclosure. Instead, Midland must fulfil its promise and evaluate Ms. Ary for all loan modification/loss mitigation options for which she qualifies.

88)     Ms. Ary has the right to seek enjoinment of any foreclosure sale until Midland's promises are fulfilled.

89)     Ms. Ary also has the right to recover any damages as the result of her detrimental reliance on Midland's promises.

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Ary respectfully requests that this Court:

A. Temporarily and permanently enjoin the substitute trustee, Weiss & Cummins, PLLC, from selling Ms. Ary's house on April 27, 2017, until such time as Midland has fully complied with RESPA, Regulation X, and HAMP by processing Ms. Ary's loss mitigation application and giving her the opportunity to accept or reject any loss mitigation/loan modification options for which she qualifies.

B. Order the removal of all fees, charges, and interest arising from the wrongfully-instituted foreclosure proceedings and associated delays from Ms. Ary's account.

C. Award Ms. Ary her actual damages and statutory damages;

15

**D.** Require Defendants to pay for all court costs associated with this action, including an award for reasonable attorney's fees and expert fees, and;

**E.** Provide any and all further relief as this Court deems just and proper.

Respectfully submitted,

David Tarpley, BPR No. 004059
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax:  (615) 244-4920
Email: dtarpley@las.org
*Attorney for Plaintiff*

Samuel Keen, BPR No. 033865
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax:  (615) 244-4920
Email: skeen@las.org
*Attorney for Plaintiff*

DATED:  April 18, 2017

16

**STATE OF TENNESSEE** )
)
**COUNTY OF DAVIDSON** )

The Plaintiff, Ahlam K. Ary, having first been duly sworn according to law, makes oath that she has read the foregoing complaint, and that the contents thereof are true and correct to the best of her knowledge, information and belief, and that this Complaint is not made out of levity or by collusion with the Defendants, but in truth and sincerity for the causes mentioned therein.

_____
Ahlam K. Ary

Sworn to and subscribed before me this _18th_ day of April, 2017

_____
Notary Public

My commission expires: ___July 8, 2019___



# IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

| | |
|---|---|
| Ahlam K. Ary, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )    Case No. *17-371-IV* |
| | ) |
| Midland Mortgage Company and | ) |
| Weiss & Cummins, PLLC, | ) |
| | ) |
| **Defendants.** | ) |

## MOTION FOR TEMPORARY INJUNCTION

**NOW COMES** Plaintiff, Ahlam K. Ary ("Ms. Ary" or "Plaintiff"), by and through counsel, and pursuant to Tenn. Code Ann. § 16-11-101 and Rules 65.04 of the Tennessee Rules of Civil Procedure, respectfully moves this Honorable Court to enjoin Defendants, Midland Mortgage Company and Weiss & Cummins, PLLC ("Midland" and "Weiss" respectively; "Defendants" collectively), from selling Ms. Ary's home at foreclosure pending the outcome of these proceedings. Ms. Ary is asking that Defendants maintain the status quo until the issues between the parties are resolved. In support of this Motion, Ms. Ary states as follows:

1)      Ms. Ary has commenced this action by filing the attached Verified Complaint.

2)      Ms. Ary's rights as the successor in interest to the home secured by the mortgage at issue are being violated by Defendants.

3)      Specifically Midland has refused to recognize that Ms. Ary is the successor in interest to the home, that she has communicated her intent to assume the loan securing the home,

and that she is entitled to an evaluation of all loss mitigation options before a foreclosure sale can occur.

      4)     Ms. Ary will suffer irreparable injury, loss, or damage if Defendants are allowed to sell her home at foreclosure prior to the resolution of these proceedings.

      5)     In support of this Motion, Ms. Ary submits the attached Memorandum of Law, affidavits, and supporting exhibits.

**WHEREFORE**, premises considered, Plaintiff respectfully request this Honorable Court to:

    **A.**    Temporarily enjoin Defendants from selling Ms. Ary's home at foreclosure pending the resolution of these proceedings;

    **B.**    Order Defendants to refrain from charging additional foreclosure-related fees to Plaintiff's account pending resolution of these proceedings;

    **C.**    Provide any and all such further relief as this Court deems just and proper.

Respectfully submitted,

David Tarpley, BPR No. 004059
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax: (615) 244-4920
Email: dtarpley@las.org
*Attorney for Plaintiff*

Samuel Keen, BPR No. 033865
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax: (615) 244-4920
Email: skeen@las.org
*Attorney for Plaintiff*

2

## NOTICE OF HEARING

The above-captioned Motion for Temporary Injunction will be heard by the Chancery Court of Davidson County, Tennessee on the _____ of April, 2017 at _____ or as soon thereafter as counsel for the Plaintiff may be heard.

## CERTIFICATE OF SERVICE

Under the penalties of perjury, I, David Tarpley, do hereby certify that on April 18, 2017, I caused a copy of the foregoing Motion for Temporary Injunction, along with a copy of the supporting Memorandum of Law, Affidavit of Ahlam Ary, Affidavit of Tabitha Faulconer, and supporting exhibits, to be sent to the Defendants via US Certified Mail and facsimile at the following addresses/fax numbers:

Midland Mortgage Company
999 NW Grand Boulevard
Oklahoma City, Oklahoma 73118
Fax: (405) 767-5500

Arnold M. Weiss
Weiss & Cummins, PLLC
208 Adams Avenue
Memphis, Tennessee 38103
Fax: (901) 526-3061

David Tarpley, BPR No. 004059
*Attorney for Plaintiff*

3

# IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

| | |
|---|---|
| Ahlam K. Ary, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17·371·IV |
| | ) |
| Midland Mortgage Company and | ) |
| Weiss & Cummins, PLLC, | ) |
| | ) |
| Defendants. | ) |

*(court FILED stamp: DAVIDSON CHANCERY CT. 2017 APR 18 PM 3:18)*

## PLAINTIFF'S MEMORANDUM
## IN SUPPORT OF MOTION FOR TEMPORARY INJUNCTION

**NOW COMES** Plaintiff, Ahlam K. Ary ("Ms. Ary" or "Plaintiff"), by and through counsel, and pursuant to Tenn. Code Ann. § 16-11-101 and Rule 65.04 of the Tennessee Rules of Civil Procedure, submits this Memorandum in support of her Motion for Temporary Injunction. In support of her request, Ms. Ary states the following:

### STATEMENT OF FACTS

Ms. Ary is the lawful resident of the home at issue, which is located at 109 Colemont Drive, Antioch, TN 37013. She has lived at the home since 1999. *See* "Affidavit of Ahlam Ary" ¶ 1, attached. Prior to Mr. Rauf Ary's death in October 2015, Ms. Ary lived in the home with her husband, her daughter, Nisar, and her son, Acar. *Id.* ¶¶ 2 & 3, Ex. A. Although Ms. Ary was able to keep up with the mortgage payments for several months after her husband's passing, she began to fall behind in the Spring of 2016. *Id.* ¶ 4.

In an effort to save her home, Ms. Ary contacted Midland to see what she could do. Midland told Ms. Ary that she needed to probate her husband's estate. *Id.* ¶ 5. Ms. Ary

contacted The Legal Aid Society of Middle Tennessee and the Cumberlands ("Legal Aid") for assistance. *Id.* ¶ 6. Legal Aid was able to secure a *pro bono* lawyer to assist Ms. Ary with the probate of her late husband's estate. *Id.* Legal Aid also agreed to help Ms. Ary prepare and send a Request for Mortgage Assistance (RMA).[1] *Id.* Ms. Ary submitted her first complete RMA on August 29, 2016. *Id.* ¶ 7, Ex. B; *See* "Affidavit of Tabitha Faulconer" ¶ 6, attached. Over the course of the next two months, Midland requested several additional documents and pieces of information from Ms. Ary. Ary Affidavit ¶ 8; *See generally* Faulconer Affidavit. Importantly, these requests were never made in writing. Ary Affidavit ¶ 9; *See generally* Faulconer Affidavit. In fact, Midland never even reached out to Ms. Ary or Legal Aid to make these request; instead, Midland would only make these requests upon being contacted by Legal Aid. *See generally* Faulconer Affidavit.

On November 10, 2016, despite being provided everything it requested, Midland sent Ms. Ary a denial letter asserting that her RMA was incomplete. Ary Affidavit ¶ 10, Ex. C; Faulconer Affidavit ¶ 14. Confused, Legal Aid contacted Midland, and Midland stated if it received Ms. Ary's petition for letters of administration for Rauf Ary's estate, Ms. Ary's application would be re-opened. Ary Affidavit ¶ 10; Faulconer Affidavit ¶ 14. Legal Aid faxed Midland the requested petition on November 23, 2016, and confirmed that Ms. Ary's application had been re-opened. Ary Affidavit ¶ 10; Faulconer Affidavit ¶ 15. Midland acknowledged that it received the probate filing and that Ms. Ary's RMA would be re-opened and processed. Faulconer Affidavit ¶ 16.

On December 1, 2016, Midland communicated by telephone that it deemed Ms. Ary's application complete. Ary Affidavit ¶ 11; Faulconer Affidavit ¶ 17. However, on December 9,

---

[1] A Request for Mortgage Assistance is also commonly referred to as a loan modification application or a loss mitigation application. For the purposes of this Complaint and Motion, the terms are interchangeable.

2016, Midland told Ms. Ary that her application had been denied and closed since October 27, 2016, and she would need to submit a new one. Ary Affidavit ¶ 12; Faulconer Affidavit 18. Even though Midland already acknowledged Ms. Ary's application was complete, Legal Aid helped Ms. Ary prepare a new and complete loan modification application and sent it to Midland on December 21, 2016. Ary Affidavit ¶ 13, Ex. D; Faulconer Affidavit 19.

Over the next month, Ms. Ary and Legal Aid sent in various documents and information, and Midland again acknowledged that her application was complete on January 24, 2017. Ary Affidavit ¶¶ 14 – 16; Faulconer Affidavit ¶¶ 20 – 26. However, Midland later claimed that Ms. Ary needed to deed the property to herself in order to assume the loan. Ary Affidavit ¶ 16; Faulconer Affidavit ¶ 26. To prove that Ms. Ary was the sole owner of the property, a quitclaim deed from Ms. Ary's son and an affidavit of heirship was recorded with the Register of Deeds and sent to Midland on February 3, 2017. Ary Affidavit ¶ 17, Exs. E & F; Faulconer Affidavit ¶ 27.

Despite having told Ms. Ary that her application was complete, Ms. Ary and Legal Aid continued to send Midland other documents and information as requested. Ary Affidavit ¶¶ 19 & 20; Faulconer Affidavit ¶¶ 28 – 31. Midland sent Ms. Ary another RMA denial letter on March 6, 2017, again alleging incompleteness. Ary Affidavit ¶ 21, Ex. G; Faulconer Affidavit ¶ 32. Importantly, this denial letter did not specify what documentation was still outstanding. *Id.*

On March 23, 2017, Legal Aid sent Midland and the substitute trustee, Weiss & Cummins, PLLC, a RESPA Notice of Error explaining that Ms. Ary is legally able to freely assume the loan. Ary Affidavit ¶ 22, Ex. H; Faulconer Affidavit ¶ 33. This letter further explained that Midland was legally obligated under RESPA to process Ms. Ary's RMA before proceeding with a foreclosure sale. *Id.* On April 11, 2017, Midland responded to Legal Aid,

3

stating that if Ms. Ary submitted a Simple Loan Assumption Packet her application would be re-opened. Faulconer Affidavit ¶ 34. Despite being unnecessary, this paperwork was submitted on April 12, 2017, in hopes that Midland would finally process Ms. Ary's RMA. Ary Affidavit ¶ 23, Ex. I; Faulconer Affidavit ¶ 35. Legal Aid also sent a cover letter with the completed Simple Loan Assumption packet demanding that the foreclosure scheduled for April 27, 2017 be canceled or postponed so Midland can have time to process Ms. Ary's RMA and Ms. Ary can have time to review her options before making a decision. Ary Affidavit ¶ 23; Faulconer Affidavit ¶ 36. Neither Midland nor Weiss have informed Legal Aid of the foreclosure sale's cancelation or postponement. Faulconer Affidavit ¶ 36.

As a show of good faith, Ms. Ary has been escrowing a monthly payment of $384.00 with Legal Aid since February 2017. This amount reflects the monthly mortgage payment Ms. Ary likely qualifies for if her RMA is properly processed. Ary Affidavit ¶ 24. Ms. Ary is afraid that Midland will foreclose on her home before they process her completed loss mitigation applications. *Id.* ¶ 25. Ms. Ary does not have alternative living arrangements. *Id.* ¶ 26. She has no family in the area and lives at home with her daughter who suffers from autism. Her daughter cannot live on her own. *Id.* ¶¶ 27 & 28. Ms. Ary only wants to keep her home and be given the opportunity to make mortgage payments under the modified loan terms she qualifies for. *Id.* ¶¶ 29 – 31. Ms. Ary will suffer irreparable harm if this foreclosure sale is not stopped before Midland has done what it is legally obligated to do.

## STANDARD OF LAW

Rule 65.04 of the Tennessee Rules of Civil Procedure provides for the issuance of an injunction if "it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer

immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual." Tenn. R. Civ. P. 65.04.

There are four factors this Court should consider in deciding whether to issue this requested temporary injunction: the threat of irreparable harm, the balance between the harm to be prevented and the injury inflicted if the injunction issues, the probability that the applicant will succeed on the merits, and the public interest. *Moody v. Hutchison*, 247 S.W.3d 187, 200 (Tenn. Ct. App. 2007).

## ARGUMENT

Put simply, Ms. Ary will suffer immediate and irreparable harm if the substitute trustee is not temporarily enjoined from following through with the foreclosure sale, which is currently scheduled for April 27, 2017. As described above, if Defendants are allowed to foreclose before Ms. Ary's Verified Complaint can be resolved, Ms. Ary will permanently lose her ownership interest in the subject property which she has lived in for the last seventeen (17) years. Ms. Ary lives in the home with her disabled daughter, and the loss of their home would be devastating to them, as detailed in Ms. Ary's accompanying Affidavit. First, Plaintiff would lose the equity she has built in her home. Second, Plaintiff and her daughter would be without a place to live, and Plaintiff fears difficulty securing an affordable rental. Given Ms. Ary's daughter's disabilities, this hardship would be particularly devastating for her.

Second, Defendants will not suffer any cognizable injury if the injunction is granted. Defendant Midland Mortgage Company still maintains its security interest in the home. Defendant Weiss & Cummins, PLLC is still appointed the substitute trustee. If Defendants

5

successfully defend this action, they will still be able to sell Ms. Ary's home at foreclosure and recover whatever outstanding principal is left on the balance of the mortgage.

Third, there is a strong likelihood that Ms. Ary will succeed on the merits of this lawsuit. The Defendants' deficiencies, particularly as to Midland, are well-documented. The law on these issues is also well-settled. Midland has a legal obligation to consider Ms. Ary for all loss mitigation options for which she qualifies prior to foreclosing. Midland has not done that here. Instead, Midland has failed to recognize her as the successor in interest to the home, has refused to acknowledge her assumption of the loan, and has strung Ms. Ary along by refusing to process her applications under the pretextual assertion that more documentation was needed. Midland has further failed to respond timely and appropriately to Ms. Ary's Qualified Written Requests.

Finally, it is in the public's interest to issue this injunction. A precedent should be established that servicers and trustees cannot foreclose on homes without abiding by the laws which govern their ability to do so, particularly the laws governing the pre-foreclosure loss mitigation process. Midland and Weiss have been notified of their errors in the method prescribed by law and they have done nothing to correct these errors. It is in the public's interest to stop Midland's unabashed defiance of the law, and to let Midland and Weiss know that wrongful foreclosures will not go unchecked.

## CONCLUSION

For the reasons stated above and in Ms. Ary's Verified Complaint and Affidavit, this Court should enjoin the Defendants from foreclosing on Ms. Ary's home pending the resolution of these proceedings.

6

Respectfully submitted,

David Tarpley, BPR No. 004059
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax: (615) 244-4920
Email: dtarpley@las.org
*Attorney for Plaintiff*


Samuel Keen, BPR No. 033865
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax: (615) 244-4920
Email: skeen@las.org
*Attorney for Plaintiff*

# IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

| | |
|---|---|
| Ahlam K. Ary, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. *17·371·IV* |
| | ) |
| Midland Mortgage Company and | ) |
| Weiss & Cummins, PLLC, | ) |
| | ) |
|       Defendants. | ) |

## AFFIDAVIT OF AHLAM K. ARY

I, Ahlam K. Ary, under the penalties of perjury, swear, affirm and certify that I have knowledge of the facts set forth in this affidavit and if called upon to testify that I could competently state as follows and that the facts contained herein are true to the best of my recollection, except as to those facts which are alleged to be upon information and belief, and as to those allegations, I hereby certify that I believe the same to be true:

1)     My name is Ahlam K. Ary. My current address is 109 Colemont Drive Antioch, Tennessee, 37013. I have lived at my home for over 17 years.

2)     My husband, Rauf Ary, passed away on October 4, 2015. *See* "Death Certificate of Rauf Ary", attached as Exhibit A.

3)     Before my husband passed away, we lived in the home with our daughter and son. Now, it is just my daughter and myself. My daughter is disabled and cannot live on her own.

4)     I was able to keep up with my mortgage payment for several months after my husband passed away; however, I began to fall behind in the Spring of 2016.

5) I contacted my mortgage servicer, Midland Mortgage Company (Midland), to let them know my husband passed away.

6) I was told by a Midland representative that I needed to probate my late husband's estate. I contacted The Legal Aid Society of Middle Tennessee and the Cumberlands ("Legal Aid"). Legal Aid was able to help me get a lawyer to assist with the probate of my late husband's estate. Legal Aid also agreed to help me submit a Request for Mortgage Assistance (RMA) to see if I qualify for a loan modification or other loss mitigation options.

7) With the help of my attorney, David Tarpley, and his paralegal, Tabitha Faulconer, I submitted my first complete RMA on August 29, 2016. *See* "First RMA", attached as Exhibit B.

8) Over the course of the next two months, Midland requested several other documents and pieces of information. Every time Midland requested additional documents, I immediately got the documents to my attorney to send to Midland. These items included: a signed credit authorization, a duplicate signed credit authorization, two (2) recent bank statements, my children's birth certificates, a copy of my driver's license, a copy of my Social Security card, and copies of documents related to the probate of my late husband's estate.

9) None of these requests were ever made in writing and the only way I found out about them was through my Ms. Faulconer, who frequently called Midland for updates on my loan modification application.

10) On November 10, 2016, I received a letter in the mail from Midland stating that my RMA had been denied due to incompleteness. *See* "November 2016 Denial Letter", attached as Exhibit C. Ms. Faulconer contacted Midland to see what was still needed to complete the application. Midland stated it needed a copy of my petition for the letters of administration for

2

my deceased husband's estate. On November 23, 2016, Ms. Faulconer sent them a copy of the petition, and confirmed that my application had been re-opened.

11) On December 1, 2016, Ms. Faulconer called me to let me know that Midland had finally deemed my application as complete, and that I needed to call them to complete my financial review. I was very relieved to hear this news.

12) When I called Midland to complete my financial review, the representative I spoke with told me that my application had been denied and closed since October 27, 2016, and that I would need to submit a new one.

13) I didn't understand how this could be since Midland already told Legal Aid that my application was re-opened and complete. Despite my frustrations and with the help of Mr. Tarpley and Ms. Faulconer, I completed and submitted a second RMA on December 21, 2016. *See* "Second RMA", attached as Exhibit D. I wanted to do anything and everything I could to save my home.

14) On January 3, 2017, Ms. Faulconer called to let me know that Midland had received all the documents it needed for my second application, but that I still needed to call to complete my financial review, which I did.

15) For the next month, Midland began to request more documents and information even though it said it had everything. I signed another credit authorization, my daughter signed a credit authorization, and I traveled to the Rutherford County courthouse to retrieve the letters of administration from the probate. Once again, Midland never requested any of this in writing; instead, its representatives only made these requests when Ms. Faulconer called for an update.

16) On January 24, 2017, Ms. Faulconer told me that Midland once again deemed my application complete, but then requested that I deed the property to myself in order to assume the loan.

3

17)     To show that I was the sole owner of the property, my adult son, Acar Ary, signed a quitclaim deed to me for his portion of the interest in the home, and a family friend signed an affidavit of heirship to prove that there were no other heirs. *See* "Acar Ary Quitclaim Deed" and "Salwa Barwari Affidavit of Heirship", attached as Exhibits E & F.

18)     These documents were recorded with the Register of Deeds and sent to Midland on February 3, 2017.

19)     Midland continued to request more documents and information. On February 13, 2017, I called Midland per their request to review my credit report. The representative I spoke with started talking about a JC Penny card and another credit card that I do not have. I said, "I only have a Macy's credit card that I no longer use, I don't know what you're talking about." The representative from Midland said, "I'm sorry, it looks like we are looking at the wrong credit report, this is for Jenny." I have no idea who Jenny is or why Midland confused our credit reports.

20)     During the review of my credit report, Midland asked me to send my most recent bank statement and my food stamps award letter. I took these documents to Legal Aid on February 16, 2017 and Ms. Faulconer sent them that day.

21)     On March 6, 2017, I received a letter from Midland Mortgage stating that my second application was again denied due to incompleteness. *See* "March 2017 Denial Letter", attached as Exhibit G. I could not believe it. I had sent Midland everything it has asked for, sometimes more than once. The letter did not even state what they were missing.

22)     On March 23, 2017, my attorney explained to me that they were sending a Notice of Error to Midland and the Substitute Trustee to explain why they are legally required to recognize me as the successor in interest, recognize that I have assumed the loan, and process my loan modification application. *See* "Notice of Error", attached as Exhibit H.

4

23)     On April 12, 2017, with the help of Legal Aid, I filled out and submitted a Simple Loan Assumption Packet, since Midland requested this document to re-open my application. *See* "Simple Loan Assumption", attached Exhibit I. However, I understand that if Midland does not respond and postpone or cancel my foreclosure sale date, I will have to ask a judge to prevent them from going through with the scheduled foreclosure on Aril 27, 2017.

24)     Since February 2017, I have been escrowing a monthly payment of $384.00 with Legal Aid to show Midland that I can make the monthly mortgage payment for which I believe I am eligible under HAMP and other loss mitigation programs.

25)     I do not want to lose my house. I have done everything in my power to keep my house from going into foreclosure. I do not know why Midland will not process my loss mitigation application.

26)     If I lose my house, I do not know where I will stay.

27)     I have no family in the area.

28)     I live with my daughter, Nisar Ary, who has autism and we are in great fear that we will lose our home. My daughter cannot live on her own.

29)     My son goes to college at the University of Tennessee and he is worried about me and my daughter while trying to balance his school work.

30)     I didn't do anything wrong. My husband died and we lost his income. I could keep up the payments if Midland lowered them a little bit to make them more affordable to me.

31)     I only want Midland to recognize that I am the successor in interest, that I have assumed the loan, and that they modify my loan to make my payments more affordable so I don't lose my home.

5

FURTHER AFFIANT SAYETH NOT.

Ahlam K. Ary

Sworn to and subscribed before me on this the 18th day of April 2017.

Notary Public

My commission expires: _____July____8___2019_____

PATRICIA HYLTON
STATE OF TENNESSEE NOTARY PUBLIC
DAVIDSON COUNTY, TENN.
My Commission Expires JULY 8, 2019

6



# IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

| | |
|---|---|
| Ahlam K. Ary, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. *17-371-IV* |
| | ) |
| Midland Mortgage Company and | ) |
| Weiss & Cummins, PLLC, | ) |
| | ) |
| Defendants. | ) |

---

## AFFIDAVIT OF TABITHA FAULCONER

I, Tabitha Faulconer, under the penalties of perjury, swear, affirm and certify that I have knowledge of the facts set forth in this affidavit and if called upon to testify that I could competently state as follows and that the facts contained herein are true to the best of my recollection, except as to those facts which are alleged to be upon information and belief, and as to those allegations, I hereby certify that I believe the same to be true:

1)     My name is Tabitha Faulconer. I work for The Legal Aid Society of Middle Tennessee and the Cumberlands ("Legal Aid") as a paralegal.

2)     I am a NeighborWorks Center for Homeownership and Counseling-certified Foreclosure Intervention and Default Counselor. I routinely assist clients who are at risk of losing their homes to foreclosure.

3)     I have been assigned to Ms. Ahlam Ary's ("Ms. Ary") case.

4)     Ms. Ary came to Legal Aid for assistance because she was at risk of losing her home to foreclosure to her mortgage loan servicer, Midland Mortgage Company (Midland).

5)    In August 2016, I helped Ms. Ary complete a Request for Mortgage Assistance (RMA). The RMA is also known as a loan modification or loss mitigation application. The purpose of the RMA was to see what loan modification/loss mitigation options Ms. Ary qualifies for.

6)    On or around August 29, 2016, I sent Midland Ms. Ary's RMA by fax to fax number (405) 767-8515.

7)    I followed up with Midland on or around September 6, 2016 and a customer service representative told me that Ms. Ary needed to submit a signed credit authorization.

8)    Midland never made this request by writing, but we faxed Midland Ms. Ary's signed credit authorization anyway on or around September 9, 2016.

9)    On or around September 19, 2016, I called Midland again for another status update. This time, Midland told me that it needed another signed credit authorization, two (2) of Ms. Ary's most recent bank statements, and Ms. Ary's children's birth certificates. Once again, Midland never requested this in writing and they indicated that these documents would complete her loan modification application.

10)    I faxed the requested documents on or around September 27, 2016.

11)    I called Midland again on or around October 3, 2016, and again Midland requested additional documents. This time Midland's representative claimed it needed a copy of Ms. Ary's driver's license and Social Security card.

12)    I faxed Midland these documents on or around October 11, 2016. Midland also told me that Ms. Ary's loan assumption paperwork was being prepared and that she should receive the paperwork in the mail soon.

2

13) On or around October 24, 2016, I called Midland to let them know that Ms. Ary hadn't received anything in the mail, and to ask for a status update. Midland stated that it had not mailed any loan assumption paperwork because it needed Ms. Ary's probate filing to complete her application.

14) On or around November 10, 2016, Midland mailed Ms. Ary a letter stating that her RMA was denied due to being incomplete. The letter was not sent to me or anyone else at Legal Aid. I only learned about the denial letter because Ms. Ary called me panicked. I immediately called Midland, and Midland stated that if it received a copy of Ms. Ary's probate filing by November 27, 2016, it would re-open her loss mitigation application.

15) Ms. Ary brought me a copy of her probate filing as soon as she could, and on or around November 23, 2016, I faxed it to Midland.

16) On or around November 28, 2016, I called Midland and Midland acknowledged that it had received Ms. Ary's probate filing and would process the re-opened application.

17) I called Midland again on or around December 1, 2016 for an update on the status of her loan modification application. Midland stated it had deemed Ms. Ary's application as complete and would need to speak with Ms. Ary to complete her financial review.

18) I communicated this to Ms. Ary, and on or around December 9, 2016, Ms. Ary called Midland to complete the financial review. During this conversation, Midland told Ms. Ary that her loss mitigation application had been closed since October 27, 2016, and that she would need to start all over with a new application.

19) This news was frustrating because it implied that Midland did not reopen the application in November 2016 as it stated. However, in efforts to save Ms. Ary's home, I faxed Midland a new and complete loan modification application on or around December 21, 2016.

3

20)     On or around January 3, 2017, I called Midland for an update on the status of Ms. Ary's new RMA.  Midland stated that it had all documents it needed to review the application, but it would need Ms. Ary to call again for another financial review.

21)     On or around January 9, 2017, I again called Midland for an update on Ms. Ary's loss mitigation application. Midland stated that it needed a new third-party credit authorization signed.  Despite this request not being sent in writing, I faxed Midland the requested authorization on the same day.

22)     On or around January 11, 2017, I called Midland for an update on Ms. Ary's RMA.  Midland stated that on the credit authorization, the mortgagor's name should read "Estate of Rauf Ary" instead of "Ahlam Ary." Midland also requested a signed credit authorization for Ms. Ary's daughter, Nisar Ary, since her income was included on the loan modification application.

23)     On or around January 17, 2017, I faxed Midland a new credit authorization for Ms. Ary and a credit authorization for Nisar Ary.

24)     On or around January 18, 2017, I called Midland to confirm it had received the requested credit authorizations. Midland confirmed that it had, but was now requesting Ms. Ary's final letters of administration from the probate of Mr. Ary's estate.  I reminded Midland that it had already been sent the petition for letters of administration, but Midland stated that it needed the final letters.

25)     I faxed Midland the requested letters of administration on or around January 20, 2017.

26)     On or around January 24, 2017, I called Midland for another update on the status of Ms. Ary's loan modification application. Midland communicated that it deemed Ms. Ary's

4

application as complete. Midland's representative then put me on hold to inquire about what type of assistance could be offered. Midland picked back up and told me that Ms. Ary would need to assume the loan in order to be eligible for loss mitigation assistance. Midland's representative told me that in order to assume the loan Ms. Ary would need to issue a quitclaim deed from herself to herself. I tried explaining that this request made no sense and that Ms. Ary has already assumed the loan as the successor in interest, but Midland persistently requested this quitclaim deed.

27)     On or around February 3, 2017, I faxed Midland a quitclaim deed from Ms. Ary's adult son, Acar Ary, and an affidavit of heirship to further prove that Ms. Ary was the sole owner of the home and entitled to assume the loan.

28)     On or around February 8, 2017, I called Midland for an update on her loss mitigation application. Midland acknowledged that it had received the quitclaim deed and affidavit of heirship and that Ms. Ary needed to call Midland to review her credit report.

29)     I communicated this to Ms. Ary, and on or around February 13, 2017, Ms. Ary called Midland to complete the credit report review. Ms. Ary completed the review, but Midland then requested her most recent bank statement and her food stamps award letter.

30)     On or around February 16, 2017, I faxed Midland Ms. Ary's most recent bank statement and a copy of her food stamps award letter.

31)     On or around February 21, 2017, I called Midland to confirm it had received the requested documents and for an update on the status of her loss mitigation application. Midland acknowledged that it had received Ms. Ary's most recent bank statements and her food stamps award letter, but that in order for Ms. Ary to assume the loan she needed to deed the property to herself as the administrator.

5

FURTHER AFFIANT SAYETH NOT.

_____
Tabitha Faulconer

Sworn to and subscribed before me on this the _18ᵗʰ_ day of April 2017.

_____
Notary Public

My commission expires: __July 8 2019__.





# IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

| | |
|---|---|
| Ahlam K. Ary, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. _17-371-IV_ |
| | ) |
| Midland Mortgage Company and | ) |
| Weiss & Cummins, PLLC, | ) |
| | ) |
| Defendants. | ) |

---

## EXHIBITS TO AFFIDAVIT OF AHLAM K. ARY

---

The attached exhibits are submitted in support of the Affidavit of Ahlam K. Ary.


_____
David Tarpley, BPR No. 004059
*Attorney for Plaintiff*

Case 3:17-cv-00948   Document 1-2   Filed 06/15/17   Page 43 of 191 PageID #: 54



FILED

2017 APR 18 PM 3:19

DAVID SONJE & ALLERY CT

CC&M

# EXHIBIT A
# "Death Certificate of Rauf Ary"

TENNESSEE DEPARTMENT OF HEALTH
**CERTIFICATE OF DEATH**

STATE FILE NUMBER

1. DECEDENT'S LEGAL NAME (First, Middle, Last, Suffix)
**Raul Ary**

2. SEX
**male**

3. DATE OF DEATH (Month, Day, Year)
**10/04/2015**

4. TIME OF DEATH
**19:55**

5a. AGE
**52**

5b. UNDER 1 YEAR

5c. UNDER 1 DAY

6. DATE OF BIRTH (Month, Day, Year)
**07/01/1963**

7. BIRTHPLACE (City and State or Foreign Country)
**IRaq**

8. PLACE OF DEATH (Check only one)

IF DEATH OCCURRED IN A HOSPITAL
☐ Inpatient ☐ ER/Outpatient ☐ DOA

IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL
☐ Hospice facility ☐ Nursing home/Long term care facility ☐ Decedent's home ☐ Other residence ☐ Other (Specify)

9. FACILITY NAME (if not institution, give street and number)
**Saint Thomas Rutherford**

10. CITY OR TOWN
**Murfreesboro**

11. COUNTY
**Rutherford**

12. MARITAL STATUS
☐ Married ☑ Married, but separated ☐ Widowed
☐ Divorced ☐ Never married ☐ Unknown

13a. SURVIVING SPOUSE (if wife, give name prior to first marriage)
**Ahlam Ary**

14a. DECEDENT'S USUAL OCCUPATION
**manager**

14b. KIND OF BUSINESS/INDUSTRY
**Resturant**

15. SOCIAL SECURITY NUMBER

16a. RESIDENCE-STATE OR FOREIGN COUNTRY
**Tennessee**

16b. COUNTY
**Rutherford**

16c. CITY OR TOWN
**Murfreesboro**

16d. STREET AND NUMBER
**2025 S. church St. Apt. 606**

16e. ZIP CODE
**37130**

16f. INSIDE CITY LIMITS
☑ Yes ☐ No

17. DECEDENT EVER IN US ARMED FORCES?
☐ Yes ☑ No

18. DECEDENT'S EDUCATION (Check the box that best describes the highest degree or level of school completed at the time of death)
☐ 8th grade or less
☐ 9th - 12th grade, no diploma
☐ High school graduate or GED completed
☐ Some college credit, but no degree
☐ Associate degree (e.g. AA, AS)
☐ Bachelor's degree (e.g. BA, AB, BS)
☐ Master's degree (e.g. MA, MS, MEng, MEd, MSW, MBA)
☐ Doctorate (e.g. PhD, EdD) or Professional degree (e.g. MD, DDS, DVM, LLB, JD)

19. DECEDENT OF HISPANIC ORIGIN? (Check the box that best describes whether the decedent is Spanish/Hispanic/Latino. Check the "No" box if decedent is not Spanish/Hispanic/Latino)
☑ No, not Spanish/Hispanic/Latino
☐ Yes, Mexican, Mexican American, Chicano
☐ Yes, Puerto Rican
☐ Yes, Cuban
☐ Yes, other Spanish/Hispanic/Latino (Specify)
☐ Unknown

20. DECEDENT'S RACE (Check one or more races to indicate what the decedent considered himself or herself to be)
☑ White
☐ Black or African American
☐ American Indian or Alaska Native (Name of the enrolled or principal tribe)
☐ Asian Indian
☐ Chinese
☐ Filipino
☐ Japanese
☐ Korean
☐ Native Hawaiian
☐ Guamanian or Chamorro
☐ Samoan
☐ Other Pacific Islander (Specify)
☐ Other Asian (Specify)
☐ Unknown

21. FATHER'S NAME (First, Middle, Last)
**Abdullah Mustafa**

22. MOTHER'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last)
**Zubada**

23a. INFORMANT'S NAME
**Ahlam Ary**

23b. RELATIONSHIP TO DECEDENT
**wife**

23c. MAILING ADDRESS (Street and Number, City, State, Zip Code)
**109 Colment Dr. Antioch, TN 37013**

24. METHOD OF DISPOSITION
☐ Burial ☑ Cremation
☐ Donation ☐ Entombment ☐ Removal from State
☐ Other (Specify)

25a. PLACE OF DISPOSITION (Name of cemetery, crematory, other place)
**Salahadeen center cemetary**

25b. LOCATION - City or Town and State
**Antioch**

25c. LICENSE NUMBER

26a. NAME AND ADDRESS OF FUNERAL HOME
**Salahadeen center funeral**
**3124 Old franklin Rd. Antioch, TN 37013**

26b. SIGNATURE OF FUNERAL DIRECTOR
**Amira Nasir**

26c. LICENSE NUMBER OF FUNERAL HOME

24. SIGNATURE OF EMBALMER

25. DATE FILED (Month, Day, Year)
**Dec 8 2015**

27. REGISTRAR'S SIGNATURE
**Janecca Gorman (OR) Dec 8 2015**

28a. ☐ CERTIFIER (check one)
☐ PHYSICIAN - To the best of my knowledge, death occurred at the date and place, and due to the cause(s) and manner stated.
☑ MEDICAL EXAMINER - On the basis of examination, and/or investigation, in my opinion, death occurred at the date, and place, and due to the cause(s) and manner stated.

27b. LICENSE NUMBER
**MD 24807**

27c. DATE SIGNED (Month, Day, Year)
**Dec 5, 2015**

27a. SIGNATURE OF CERTIFIER
**Lamachonach md**

27d. NAME AND ADDRESS
**Lamachonach md**

28. PART I. Enter the chain of events (diseases, injuries, or complications) that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

IMMEDIATE CAUSE (Final disease or condition resulting in death) a. **CARDIAC ARREST**
Due to (or as a consequence of):
b. **CORONARY ARTERY DISEASE**
Due to (or as a consequence of):
c.
Due to (or as a consequence of):
d.

29a. WAS AN AUTOPSY PERFORMED?
☐ Yes ☐ No

29b. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH?
☐ Yes ☐ No

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in PART I.

30. MANNER OF DEATH
☑ Natural ☐ Homicide
☐ Accident ☐ Pending Investigation
☐ Suicide ☐ Could not be determined

31. DID TOBACCO USE CONTRIBUTE TO DEATH?
☐ Yes ☐ Probably
☐ No ☐ Unknown

32. IF FEMALE
☐ Not pregnant within past year
☐ Pregnant at time of death
☐ Not pregnant, but pregnant within 42 days of death
☐ Not pregnant, but pregnant 43 days to 1 year before death
☐ Unknown if pregnant within the past year

33. TRANSPORTATION INJURY, SPECIFY:
☐ Driver/Operator
☐ Passenger
☐ Pedestrian
☐ Other

34a. DATE OF INJURY (Month, Day, Year)

34b. TIME OF INJURY

34c. INJURY AT WORK?
☐ Yes ☐ No

34d. PLACE OF INJURY (at home, farm, street, factory, office, building, etc. Specify)

34e. LOCATION OF INJURY (Street and Number, City or Town, State)

34f. DESCRIBE HOW INJURY OCCURRED

PH-1656 (Rev. 10/2011)

RDA 1389

I hereby certify the above to be a true and correct representation of the record or document on file in this department. This certified copy is valid only when printed on security paper showing the red embossed seal of the Tennessee Department of Health. Alteration or erasure voids this certification. Reproduction of this document is prohibited.

Tennessee Code Annotated 68-3-101 et seq., Vital Records Act of 1977.

8118632

R. Benton McDonough, JD
STATE REGISTRAR

John J. Dreyzehner, MD, MPH, FACOEM
COMMISSIONER

Date Issued **DEC 8 2015**

8118632

Case 3:17-cv-00648 Document 1-2 Filed 06/15/17 Page 45 of 191 PageID #: 56



FILED

2017 APR 18 PM 3: 19

DAVIDSON CO. CHANCERY CT.

BC&M

# EXHIBIT B
# "First RMA"

# Legal Aid Society
## of Middle Tennessee and the Cumberlands

300 Deaderick Street • Nashville, TN 37201 • www.las.org • (615) 244-6610 • f (615) 244-4920 • 1-800-238-1443

## Fax Cover Sheet

| SEND TO: | FROM: |
|---|---|
| Midland Mortgage | **Tabitha Faulconer** |
| **RE:** | **OFFICE LOCATION:** |
| Loan Number 0054882515 | **Nashville, TN** |
| **RECIPIENT'S FAX NO.:** | **DATE:** |
| **1-405-767-5815** | August 29, 2016 |

☐ URGENT ☐ REPLY ASAP ☐ PLEASE COMMENT ☐ PLEASE REVIEW ☐ FOR YOUR INFORMATION

THIS FAX HAS 21 PAGES, INCLUDING THIS COVER SHEET. IF ANY PART OF THIS MESSAGE IS RECEIVED POORLY OR SEEMS INCOMPLETE, PLEASE CONTACT THE SENDER AT 615-780-7122 .

COMMENTS:

**Please find attached Ms. Ary's complete loan modification application including proof of income and hardship affidavit.**

**Loan Number 0054882515**

The information contained in this transmission is PRIVILEGED AND CONFIDENTIAL intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any dissemination, distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the Nashville Office address via the U.S. Mail.

# Legal Aid Society
## of Middle Tennessee and the Cumberlands

300 Deaderick Street • Nashville, TN 37201 • www.las.org • (615) 244-6610 • f (615) 244-4920 • 1-800-238-1443

Gary D. Housepian, *Executive Director* • Kimberly A. deMent • Allison F. Jones • Vidhi S. Joshi • Zachary D. Oswald • Russell J. Overby
Emma W. Shell • Lucinda E. Smith, *Volunteer Lawyers Program Director* • David J. Tarpley • Shana O. Thompson • DarKenya W. Waller, *Managing Attorney*

August 29, 2016

Midland Mortgage
Re: Ahlam Ary Loan Modification Application
Loan Number: 0054882515
Via Fax: 1-405-767-5818

To Whom It May Concern:

Please be advised that attorney David Tarpley and I are assisting Ms. Ary with her modification application. Ms. Ary is requesting a lower loan payment due to change in income. Please find attached a complete loss mitigation packet for the above borrower. We have also included a signed third party authorization form. Enclosed, you will find the following:

- Signed third party authorization
- Completed and signed modification application
- Social security award letters
- Hardship affidavit

My contact information is Tabitha Faulconer, 615-780-7122 or tfaulconer@las.org and David Tarpley's is 615-780-7113 or dtarpley@las.org. If you need any additional information please contact me.

Thank you for taking the time to review this information.

Sincerely,

Tabitha Faulconer
Paralegal

TF/tf



*Legal Aid Society is funded in part by Legal Services Corporation, Tennessee Civil Justice for Justice Fund, Tennessee Bar Foundation, private donations, and United Ways serving Anderson, Bedford, Cannon, Clay, Cumberland, Davidson, Fentress, Franklin, Houston, Jackson, Lincoln, Macon, Montgomery, Overton, Putnam, Rutherford, Smith, Stewart, Sumner, Trousdale, Van Buren, White, Williamson and Wilson counties*



# AUTHORIZATION AND RELEASE

TO       :       Midland Mortgage

FROM :        Name: Ahlam K. Ary
                   SSN:

RE        :       Loan Number: 0054882515
                   Property Address: 109 Colemont Dr
                                           Antioch, TN 37013

You are hereby authorized and requested to divulge to **any attorney, agent or representative of Legal Aid Society of Middle Tennessee and the Cumberlands** any and all information, data, documents or records arising from or pertaining to the origination, closing, servicing, and/or enforcement, including foreclosure, of my residential mortgage loan referenced above. You may divulge this information, data, documents or records by any method, such as:

> *answering written or oral questions;
> *permitting the examination of papers, data, documents, and records in your possession;
> *permitting the copying of such papers, data, documents and records;
> *distributing copies of such papers, data, documents and records; and
> *any other mutually convenient method.

This release shall remain in effect until <u>8/29/2017</u>, or until revoked in writing.

I hereby certify that I have read this release and that I understand it.

Signed: X _Ahlam Ary_          Date: _08/29/2016_



# MAKING HOME AFFORDABLE.gov

| HARDSHIP AFFIDAVIT page 1 | COMPLETE ALL THREE PAGES OF THIS FORM |
|---|---|

▸ Loan I.D. Number **0054842515**   ▸ Servicer Midland Mortgage, a Division of MidFirst Bank

| BORROWER | CO-BORROWER |
|---|---|
| Borrower's name **Anlam Ay** | Co-borrower's name |
| Social Security Number | Social Security Number |

Property address (include city, state and zip): **109 Covenant Dr. Antioch, TN 37013**

| *I want to:* | ☑ Keep the Property | ☐ Sell the Property | |
|---|---|---|---|
| *The property is my:* | ☑ Principal Residence | ☐ Second Home / Seasonal Rental | ☐ Year-Round Rental |
| *The property is:* | ☑ Owner Occupied | ☐ Tenant Occupied | ☐ Vacant    ☐ Other ____ |

## HARDSHIP AFFIDAVIT

I (We) am/are requesting review under the Making Home Affordable (MHA) Program.
I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):

☑ My household income has been reduced. For example: reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower.

☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes.

☐ I am unemployed and (a) I am receiving/will receive unemployment benefits or (b) my unemployment benefits ended less than 6 months ago.

☐ My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt.

☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time.

☐ Other: ____

Explanation (continue on back of page 3 if necessary): _____

*Have you filed for bankruptcy?* ☐ Yes ☑ No   If yes: ☐ Chapter 7 ☐ Chapter 13   *Filing Date:* ____
*Has your bankruptcy been discharged?* ☐ Yes ☐ No   *Bankruptcy case number* ____

How many single-family properties, other than your personal residence, do you and/or your co-borrower(s) own individually, jointly, or with others? **0**

Has the mortgage on your principle residence ever had a Home Affordable Modification Program (HAMP) trial period plan or permanent modification?   ☐ Yes ☑ No

Has the mortgage or any other property that you or any co-borrower own had a permanent HAMP modification? ☐ Yes ☑ No
If "Yes", how many? ____

## DODD FRANK CERTIFICATION

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program, authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 et seq.), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/we certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:

    (a) felony larceny, theft, fraud, or forgery,
    (b) money laundering or
    (c) tax evasion.

I/we understand that the servicer, the U.S. Department of the Treasury, or their respective agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/we also understand that knowingly submitting false information may violate Federal law.

This certification is effective on the earlier of the date listed below or the date this hardship affidavit is received by your servicer.

*page 1 of 11*

loan #005488 2515

## RENTAL PROPERTY CERTIFICATION

**You must complete this certification if you are requesting a mortgage modification with respect to a rental property.**

By checking this box and initialing below, I am requesting a mortgage modification under MHA with respect to the rental property having the address set forth above and I hereby certify under penalty of perjury that each of the following statements is true and correct with respect to that property:

1. I intend to rent the property to a tenant or tenants for at least five years following the effective date of my mortgage modification. I understand that the servicer, the U.S. Department of the Treasury, or their respective agents may ask me to provide evidence of my intention to rent the property during such time. I further understand that such evidence must show that I used reasonable efforts to rent the property to a tenant or tenants on a year-round basis, if the property is or becomes vacant during such five-year period.

*Note: The term "reasonable efforts" includes, without limitation, advertising the property for rent in local newspapers, websites or other commonly used forms of written or electronic media, and/or engaging a real estate or other professional to assist in renting the property, in either case, at or below market rent.*

2. The property is not my secondary residence and I do not intend to use the property as a secondary residence for at least five years following the effective date of my mortgage modification. I understand that if I do use the property as a secondary residence during such five-year period, my use of the property may be considered to be inconsistent with the certifications I have made herein.

*Note: The term "secondary residence" includes, without limitation, a second home, vacation home or other type of residence that I personally use or occupy on a part-time, seasonal or other basis.*

3. I do not own more than five (5) single-family homes (i.e., one-to-four unit properties) (exclusive of my principal residence).

**Notwithstanding the foregoing certifications, I may at any time sell the property, occupy it as my principal residence, or permit my legal dependent, parent or grandparent to occupy it as their principal residence with no rent charged or collected, none of which will be considered to be inconsistent with the certifications made herein.**

This certification is effective on the earlier of the date listed below or the date the Hardship Affidavit is received by your servicer.

Initials:   Borrower _____   Co-borrower _____

## INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. If you do not wish to furnish the information, please check the box below.

| BORROWER | CO-BORROWER |
|---|---|
| ☐ I do not wish to furnish this information | ☐ I do not wish to furnish this information |
| *Ethnicity:* ☐ Hispanic or Latino | *Ethnicity:* ☐ Hispanic or Latino |
| ✔ Not Hispanic or Latino | ☐ Not Hispanic or Latino |
| *Race:* ☐ American Indian or Alaska Native | *Race:* ☐ American Indian or Alaska Native |
| ☐ Asian | ☐ Asian |
| ☐ Black or African American | ☐ Black or African American |
| ☐ Native Hawaiian or Other Pacific Islander | ☐ Native Hawaiian or Other Pacific Islander |
| ✔ White (other) | ☐ White |
| *Sex:* ✔ Female | *Sex:* ☐ Female |
| ☐ Male | ☐ Male |

| To be completed by interviewer | | Name/Address of Interviewer's Employer |
|---|---|---|
| *This request was taken by:* | Interviewer's Name (print or type) & ID Number | |
| ☐ Face-to-face interview | Interviewer's Signature            Date | |
| ☐ Mail | | |
| ☐ Telephone | Interviewer's Phone Number (include area code) | |
| ☐ Internet | | |

loan # 005 4882515

## ACKNOWLEDGEMENT AND AGREEMENT

1. That all of the information in this document is truthful and the event(s) identified on page 1 is/are the reason that I need to request a modification or forbearance of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

2. I understand and acknowledge that the Servicer, the U.S. Department of the Treasury, the owner or guarantor of my mortgage loan, or their respective agents may investigate the accuracy of my statements, may require me to provide additional supporting documentation and that knowingly submitting false information may violate Federal or other applicable law.

3. I authorize and give permission to the Servicer, the U.S. Department of the Treasury, and their respective agents, to assemble and use a current consumer report on all borrowers obligated on the loan, to investigate each borrower's eligibility for MHA and the accuracy of my statements and any documentation that I provide in connection with my request for assistance. I understand that these consumer reports may include, without limitation, a credit report, and be assembled and used at any point during the application process to assess each borrower's eligibility thereafter.

4. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or if it is determined that any of my statements or any information contained in the documentation that I provide are materially false and that I was ineligible for assistance under MHA, the Servicer, the U.S. Department of the Treasury, or their respective agents may terminate my participation in MHA, including any right to future benefits and incentives that otherwise would have been available under the program, and also may seek other remedies available at law and in equity, such as recouping any benefits or incentives previously received.

5. I certify that any property for which I am requesting assistance is a habitable residential property that is not subject to a condemnation notice.

6. I certify that I am willing to provide all requested documents and to respond to all Servicer communications in a timely manner. I understand that time is of the essence.

7. I understand that the Servicer will use the information I provide to evaluate my eligibility for available relief options and foreclosure alternatives, but the Servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

8. I am willing to commit to credit counseling if it is determined that my financial hardship is related to excessive debt.

9. If I am eligible for assistance under MHA, and I accept and agree to all terms of an MHA notice, plan, or agreement, I also agree that the terms of this Acknowledgement and Agreement are incorporated into such notice, plan, or agreement by reference as if set forth therein in full. My first timely payment, if required, following my servicer's determination and notification of my eligibility or prequalification for MHA assistance will serve as my acceptance of the terms set forth in the notice, plan, or agreement sent to me.

10. I understand that my Servicer will collect and record personal information that I submit in this Hardship Affidavit and during the evaluation process, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about my account balances and activity. I understand and consent to the Servicer's disclosure of my personal information and the terms of any MHA notice, plan or agreement to the U.S. Department of the Treasury and its agents, Fannie Mae and Freddie Mac in connection with their responsibilities under MHA, companies that perform support services in conjunction with MHA, any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s) and to any HUD-certified housing counselor.

11. I consent to being contacted concerning this request for mortgage assistance at any e-mail address or cellular or mobile telephone number I have provided to the Servicer. This includes text messages and telephone calls to my cellular or mobile telephone.

The undersigned certifies under penalty of perjury that all statements in this document are true and correct.

| _Ahlam Hrij_ | | 08/05/1942 | 08/29/2016 |
|---|---|---|---|
| Borrower Signature | Social Security Number | Date of Birth | Date |

| | | | |
|---|---|---|---|
| Co-borrower Signature | Social Security Number | Date of Birth | Date |

### HOMEOWNER'S HOTLINE

If you have questions about this document or the Making Home Affordable Program, please call your servicer.

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.

**888-995-HOPE**
Homeowner's HOPE™ Hotline

### NOTICE TO BORROWERS

Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy of your property, hardship circumstances, and/or income, expenses or assets will subject me to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that: "Under penalty of perjury, all documents and information I have provided to my Servicer in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll-free). 202-622-4559 (fax), or www.sigtarp.gov and provide them with your name, our name as your servicer, your property address, loan number and the reason for escalation. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220



Beware of Foreclosure Rescue Scams. Help is FREE!

- There is never a fee to get assistance or information about the Making Home Affordable Program from your lender or a HUD-approved housing counselor.
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

page 3 of 3

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Change in Benefits

Southeastern Program Service Center
1200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL    35285-0001
Date:  July 28, 2016
Claim Number:

589 1 MB 0.419  T7 MAAD296 PL1 S296 M1 PC3 160722

589    AHLAM K ARY
109 COLEMONT DR
ANTIOCH TN 37013

We can pay you beginning July 2016.

## Your Benefits

In your next payment, you will receive the difference between the benefits already paid and those now due.

## What We Will Pay

- You will soon receive a payment for $568.00, which is the money you are due through July 2016.

- After that you will receive $568.00 on or about the third of each month.

## Do You Think We Are Wrong?

If you do not agree with this decision, you have the right to appeal. We will review your case and look at any new facts you have. A person who did not make the first decision will decide your case. We will review the parts of the decision that you think are wrong and correct any mistakes. We may also review the parts of our decision that you think are right. We will make a decision that may or may not be in your favor.

- You have 60 days to ask for an appeal.
- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.
- You must have a good reason if you wait more than 60 days to ask for an appeal.
- You can file an appeal with any Social Security office. You must ask for an appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2. You may go to our website at www.socialsecurity.gov/online/ to find the form. You can also call, write, or visit us to request the form. If you need help to fill out the form, we can help you by phone or in person.

See Next Page

C



## If You Want Help With Your Appeal

You can have a friend, representative, or someone else help you. There are groups that can help you find a representative or give you free legal services if you qualify. There are also representatives who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a representative who is eligible for direct pay, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

## Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

## If You Have Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-877-808-5461. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

> SOCIAL SECURITY
> 120 ATHENS WAY
> NASHVILLE TN 37228

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Social Security Administration*

# Social Security Administration
# **Supplemental Security Income**
Notice of Planned Action

SOCIAL SECURITY
120 ATHENS WAY
NASHVILLE TN 37228

Date: July 29, 2016
Claim Number:

# 000003668  I=000000  0722 10 T14

3446 2 MB 0.416
565 16S1725B49390
AHLAM KASSIM ARY
FOR NISAR RAUF ARY
109 COLEMONT DR
ANTIOCH TN 37013-3537

We plan to lower NISAR R. ARY's monthly Supplemental Security Income (SSI) payment from $374.00 to $185.00 beginning September 2016. The amount will change because her other income increased. She will continue to get the new amount each month unless there is a change in the information we use to figure her payment.

We explain how we figured the monthly payment amount on the worksheet(s) at the end of this letter. The explanation shows how her income, other than any SSI payments, affects her SSI payment. Her other income may include a portion of her parent's income. We include explanations only for months where payment amounts change.

## The Payments of NISAR R. ARY Will Be Changed As Follows:

| From | Through | Amount Due Each Month |
|------|---------|----------------------|
| September 1, 2016 | Continuing | $185.00 |

## When You Will Receive Her Payments

Your bank or other financial institution will receive her monthly payment of $185.00 around September 1, 2016, and on the first of each month after that.

## Information Used In Making The Decision

- Her parent has monthly income of $568.00 for July 2016 on. This amount does not affect her Supplemental Security Income payment.

- She has monthly income which must be considered in figuring her eligibility as follows:

See Next Page

SSA-L8155



07/29/2016

Her Social Security benefits–before deductions for Medicare premiums, if any-- of $568.00 for July 2016 on.

- Please see the enclosed fact sheet, "How Parents' Income and Resources Affect a Child's SSI," for more information on how we figure a child's payment.

## Your Reporting Responsibilities

NISAR R. ARY's SSI payments may change if her situation changes. You are required to report any changes that may affect her SSI no later than 10 days after the month the change takes place.

Please call 1-800-772-1213 or contact your local Social Security office to report any of the following changes:

- She starts or stops work, or her wages increase or decrease
- Her bank account balance goes over $2,000.00
- She moves
- Anyone else moves into or out of her household
- Someone in her household dies
- Income or resources change for her or members of her household
- Her medical condition improves
- She starts or stops attending school regularly
- She leaves the United States and expects to be gone for a full calendar month or for 30 consecutive days
- She is in a hospital, jail, or other institution for a full calendar month
- She has a felony or arrest warrant for escape from custody, flight to avoid prosecution or confinement, or flight-escape

## You Can Review The Information in NISAR R. ARY's Case

The decisions in this letter are based on the law and information in our records. You have a right to review and get copies of the information in our records that we used to make the decisions explained in this letter. You also have a right to review and copy the laws, regulations, and policy statements used in deciding her case. To do so, please contact us. Our telephone number and address are shown under the heading "If You Have Questions".

## Things You Should Know

We will send any decision about her benefits under other Social Security programs in a separate letter.

## If You Disagree

If you disagree with this decision, you have the right to appeal. A person who did not make the first decision will decide the appeal. We call this appeal a reconsideration. When you appeal, we review her entire case, even the parts with which you agree. We consider any new facts we have and then make a new decision. The new decision could be more favorable, less favorable, or the same as the one you already have.

SSA-L8155

07/29/2016

## Time To File An Appeal

- You have 60 days to file an appeal in writing.

- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on the letter.

- You must have a good reason for waiting more than 60 days to file an appeal.

## Appeal In 10 Days To Keep Receiving The Same Payment

If we receive your written appeal within 10 days, her payment amount will not change until we decide her case.

- The 10 days start the day after you receive this letter.

- If you lose her appeal, you might have to pay back some or all of this money.

However, even if you appeal within 10 days, we may reduce her payment in September 2016 if both of the following are true:

- Our new decision is the same as the one you appealed, and

- We send or give you a letter with our new decision in time to reduce the payment.

## How To Appeal

You can file an appeal with any Social Security office. You must request the appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2, which is available on our website at www.socialsecurity.gov on the Internet. You can also contact us by phone, by mail, or come into the office to obtain the form. If you need assistance, we can help you fill out the form.

There are 3 types of appeals. In most cases, you can choose the one you want.

- <u>Case Review</u>: You will not meet with the person who decides her case. You have a right to review the facts in her file. You can give us more facts to add to her file. Then we will decide her case again. This is the only kind of appeal you can have for a medical decision.

- <u>Informal Conference</u>: You will talk with the person who decides her case either in person or over the phone. You can tell that person why you disagree with our decision. If you meet with us in person, it may help her case. You have a right to review the facts in her file. You can give us more facts to add to her file. You can have other people help explain her case. Then we will decide her case again.

SSA-L8155

- **Formal Conference:** This is a meeting like an informal conference. The difference is we can require people to come to help prove you are right. We can require them to bring important papers about her case, even if they do not want to help you. You can question these people at your meeting. Then we will decide her case again.

## If You Want Help With Your Appeal

You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. Your local Social Security office can give you a list of groups that can help you find a representative.

If you get a representative, you or that person must notify us in writing. You may use our Form SSA-1696-U4 Appointment of Representative. Any local Social Security office can give you this form.

## Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

## If You Have Questions

If you have any questions, please:

- Visit our website at www.socialsecurity.gov to find general information about SSI;

- Visit our website at www.socialsecurity.gov/SSIrules/ to find the law and regulations about SSI eligibility and payments;

- Call us toll-free at 1-800-772-1213 or call your local office at 877-808-5461. We can answer most questions over the phone. If you are deaf or hard of hearing, our toll-free TTY number is 1-800-325-0778; or

- Write or visit any Social Security office. If you plan to visit an office, you may call ahead to make an appointment. The office that serves your area is located at:

SOCIAL SECURITY
120 ATHENS WAY
NASHVILLE TN 37228

SSA L8155

07/29/2016

Please have this letter with you if you call or visit an office. If you write, please include a copy of the first page of this letter. It will help us answer your questions. We are busiest early in the week and early in the month. If your business can wait, it is best to call or visit at other times.

*Social Security Administration*

Enclosure(s):
How Parents' Income and Resources Affect a Child's SSI
How We Figured NISAR R. ARY's Payment



SSA-L8155

07/29/2016

# How Parents' Income and Resources Affect a Child's SSI

## Why do the parents' income and resources affect a child's SSI?

The law requires us to consider the income and resources of parents who live in the same household with the child. This law recognizes the parents' responsibility to care for their child's basic needs.

## When do parents' income and resources affect a child's SSI?

We count some of the parents' income and resources when the child is living in the parents' household, is not married, and is under age 18.

## What is income for SSI purposes?

Income is the money a parent receives such as wages, Social Security benefits, and pensions. Income also includes non-cash items such as food or housing. Under the SSI program, income is divided into the following two categories:

- Earned income is income received from wages and self-employment.

- Unearned income is any income other than earned income. This includes Social Security benefits, Department of Veterans Affairs payments, unemployment compensation, private pensions, and the value of food or housing received from others.

## How is parents' income counted?

We use the following steps to determine how much of the parents' monthly income we count:

1. We use the parents' gross earned and unearned monthly income.

2. We start with the parents' unearned income.

3. We subtract a living allowance for each of the children in the household who is not eligible for SSI. The amount we subtract is reduced if these children have their own income.

4. If the parents' unearned income is less than the living allowance for the children, we subtract the balance of the living allowance from the parents' earned income.

5. We subtract $20.00 from the parents' remaining unearned income. If the parents have less than $20.00 in unearned income, we subtract the balance of the $20.00 from the parents' earned income.

6. We subtract $65.00 from the parents' remaining earned income, and then we subtract one-half of any earnings over $65.00.

7. We add the remaining unearned and earned income together.

SSA-L8155

8.  We subtract a living allowance for parents in the household.

9.  We count any remaining income as unearned income to the child.

10. If we are determining SSI eligibility and payment amounts for more than one child in the household, we divide the remaining income between those children.

11. We add the parents' income we count to the child's own unearned income.

12. We subtract an additional $20.00. If the total of the child's unearned income and the parents' income we count is less than $20.00, we subtract the balance of the $20.00 from the child's earned income.

13. We subtract $65.00 from the child's earned income, and then we subtract one-half of any earnings over $65.00.

14. We combine the child's remaining unearned and earned income to get the total income used to determine the child's SSI eligibility and payment.

## What is a resource for SSI purposes?

A resource is money and anything that parents' own and can turn into cash. A resource will be considered theirs even if they own it with someone else. Resources include cash, bank accounts, life insurance policies, automobiles, and other property.

## Why are resources important in the SSI program?

To be eligible for SSI, the child's resources and the parents' own resources cannot be more than the SSI resource limit. A child can have resources up to $2,000.00. One parent in the household can have resources up to $2,000.00. Two parents in the household can have resources up to $3,000.00. Any amount over the parents' resource limit is counted as a resource of the child.

## How are parents' resources counted?

We use the following steps to determine how much of the parents' resources we count:

1.  We generally do not count some of the parents' resources such as the home they live in, one automobile, pension funds, burial spaces, and certain burial funds up to $1,500.00.

2.  We add together the value of all the parents' resources that we count.

3.  We subtract the resource limit for the number of parents in the household ($2,000.00 for one parent or $3,000.00 for two parents).

SSA-L8155

07/29/2016

4.  We count the remaining amount as resources of the child. (If we are determining SSI eligibility for more than one child in the household, we divide the remaining amount between those children.)

5.  We add the remaining amount of the parents' resources to the value of any resources their child owns. If the combined amount is more than the child's resource limit of $2,000.00, the child is not eligible for SSI.



SSA-L8155

07/29/2016

# HOW WE FIGURED NISAR R. ARY'S PAYMENT FOR September 2016 ON

## Her Payment Amount

| | |
|---|---|
| The most SSI money the law allows us to pay | $733.00 |
| Minus (-) "Total income we count" (see below) | -548.00 |

**Total Monthly SSI Payment
for September 2016 on**      $185.00

## Her Income Other Than Her SSI

Income she receives in July 2016 on affects her payment for September 2016 on

| | |
|---|---|
| Social Security benefits | $568.00 |
| By law we don't count $20.00 of above income | - 20.00 |

**Total income we count**      $548.00

## Parent's Income for July 2016 on

| | |
|---|---|
| AHLAM K. ARY'S Social Security benefits | $568.00 |
| We don't count $20.00 of above income | - 20.00 |
| Subtotal | $548.00 |
| Minus (-) living allowance for parent | -733.00 |

**Total parent's income we count**      $ 0.00



SSA-L8155

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Important Information

Southeastern Program Service Center
1200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL    35285-0001
Date:  June 3, 2016
Claim Number:

0023441 00073089       I AT   .399 0527M1T2R3PN T336 P14
ACAR RAUF ARY
109 COLEMONT DR
ANTIOCH TN 37013-3537

We are writing to you about your Social Security benefits.

## What You Should Know

You are no longer entitled to Social Security benefits beginning June 2016.
Your benefits are stopping in that month because:

- you are not a full-time elementary or secondary level school student, and

- you are not disabled.

## Things To Remember For The Future

You may be able to receive payments again if you attend an elementary or
secondary level school full-time during any month before age 19.  If this
happens, you should get in touch with us again.

You also may be able to receive payments again if you become disabled before
age 22 and have not married since your last entitlement, unless the marriage
is void or annulled.  If this happens, you should get in touch with us again. 

## If You Disagree With The Decision

If you do not agree with this decision, you have the right to appeal.  We will
review your case and look at any new facts you have.  A person who did not
make the first decision will decide your case.  We will review the parts of the
decision that you think are wrong and correct any mistakes.  We may also
review the parts of our decision that you think are right.  We will make a
decision that may or may not be in your favor.

- You have 60 days to ask for an appeal in writing.

- The 60 days start the day after you receive this letter.  We assume you
  got this letter 5 days after the date on it unless you show us that you
  did not get it within the 5-day period.

C                                    See Next Page

- You must have a good reason if you wait more than 60 days to ask for an appeal.

- You can file an appeal with any Social Security office. You must ask for an appeal in writing. Please use our "Request for Reconsideration" form, SSA-561. You may go to our website at www.socialsecurity.gov/online/ to find the form SSA-561. You can also contact us by phone, mail, or come into an office to request the form. If you need help to fill out the form, we can help you by phone or in person.

## If You Want Help With Your Appeal

You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. Your local Social Security office can give you a list of groups that can help you find a representative. 

If you get a representative, you or that person must notify us in writing. You may use our Form SSA-1696 "Appointment of Representative." Any local Social Security office can give you this form.

## Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

## If You Have Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-877-808-5461. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
120 ATHENS WAY
NASHVILLE, TN 37228

If you do call or visit an office, please have this letter with you.  It will help
us answer your questions.  Also, if you plan to visit an office, you may call
ahead to make an appointment.  This will help us serve you more quickly
when you arrive at the office.

*Social Security Administration*



**HARDSHIP AFFIDAVIT**

My husband died in October of 2015 and my children and I relied on his income. My oldest son, Acar Ary also just turned 18 and stopped receiving social security benefits of $374 per month. My daughter and I now receive Social Security benefits. I receive $568 per month, and my daughter Nisar receives $733 per month. The reduction in my husband's income and son's social security benefits has caused me difficulty in making my normal mortgage payments and need assistance in modifying the loan to lower the payments.

_____
Ahlam Ary

08-29-16
Date



# EXHIBIT C
# "November 2016 Denial Letter"



**Midland Mortgage**
*A Division of MidFirst Bank*

**Your Loan Number and Property Address:**

Loan # 0054882515
109 COLEMONT DR
ANTIOCH      TN 37013

10/27/16

***LMT**4.36***
ESTATE OF RAUF A ARY
109 COLEMONT DR

ANTIOCH      TN 37013-3537

Dear Homeowner:

Thank you for contacting us to appeal the prior denial of your application for a mortgage assistance program. We have completed our review of your appeal.

**At this time, we are still unable to offer you a mortgage assistance program due to the reason(s) specified in the "Non-Approval Notice / Notice of Action Taken" included with this letter.**

The following options are still available to help address your delinquency:

1. Call us at **1-800-552-3000** to reapply for a mortgage assistance program if your circumstances have changed.

2. Reinstate your loan by paying your delinquency of $4923.17 in full, which includes late charges and allowable fees.

3. Consider alternatives that may allow you to avoid foreclosure by transitioning to more affordable housing after you have explored and exhausted all available options to stay in your home; we may have programs to assist you.

You may also wish to seek further assistance from a HUD-approved housing counselor.

**To locate a HUD-approved housing counselor near you, please contact the following:**

**HUD**
1-800-569-4287 (or TDD 1-800-877-8339)
www.HUD.gov/offices/hsg/sfh/hcc/fc

Homeowner's HOPE™ Hotline
1-888-995-HOPE (4673)
www.hopenow.com

Until your delinquency is resolved, we will proceed with our scheduled collection efforts, and your loan will be reported to consumer credit reporting agencies as delinquent. If your delinquency is not resolved, foreclosure proceedings may begin or continue on your loan.

If you have any further questions, you may contact our office at **1-800-552-3000**. Our office hours are Monday through Friday, 8 a.m. to 5 p.m. (Central Time).

Sincerely,

Delinquency Assistance Center
**Midland Mortgage**, *a Division of MidFirst Bank*

Enclosure(s)

**Notice:** If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust, or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt from you personally and is for informational purposes only. If your loan was in default at the time MidFirst Bank acquired the servicing of your loan, and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose.

**Midland Mortgage Delinquency Assistance Center**
P.O. Box 268806 · Oklahoma City, OK 73126-8806 · Tel 1-800-552-3000 · Fax 1-405-767-5815 · www.MyMidlandMortgage.com
Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# Non-Approval Notice / Notice of Action Taken

| Mortgagor | ESTATE OF RAUF A ARY | Date | 10/27/16 |
|---|---|---|---|
| Co-Mortgagor | | Loan | 0054882515 |
| Mailing Address | 109 COLEMONT DR ANTIOCH    TN 37013-3537 | Property Address | 109 COLEMONT DR ANTIOCH    TN 37013 |

**Your appeal has been denied.  At this time, we are unable to offer you a mortgage assistance program due to the following reason(s):**

**Request incomplete.**  You did not provide us with the documents required to evaluate you for a mortgage assistance program.

**Midland Mortgage Delinquency Assistance Center**
P.O. Box 268806 · Oklahoma City, OK  73126-8806 · Tel 1-800-552-3000 · Fax 1-405-767-5815 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK  73126-8959

Case 3:17-cv-00948   Document 1-2   Filed 06/15/17   Page 70 of 191 PageID #: 81

# Reasons to Avoid Foreclosure

- Loss of your home and requirement to leave the premises

- Time and expense to find a new place to live

- Cost to rent in your area may be higher than your current mortgage payment (if you qualify for assistance, your monthly payment could be lower than it is today)

- Cash outlays, such as deposits, first and last months' rent, and other expenses typically associated with moving and renting

- Negative impact to your credit score that could last up to 7 years, and how this may affect various aspects of your life

  - Access to lines of credit could be more difficult
  - Interest rates offered to you for secured loans (such as auto loans) and unsecured loans (such as credit cards) may be higher
  - Insurance rates offered to you may be higher
  - Ability to rent a home or apartment may be more difficult
  - Ability to purchase a new home in the future may be more difficult

- Loss of any home equity earned to date

# Transition to More Affordable Housing?

If you have explored and exhausted all available options to stay in your home, you may wish to consider transitioning to more affordable housing.

☐ **Sell your home.** The best way to transition to more affordable housing may be to sell your home and pay your home mortgage loan in full. This will allow you to avoid foreclosure.

☐ **Pre-foreclosure sale.** If you are unable to sell your home and pay the loan in full, you may qualify for a pre-foreclosure sale program. This program may allow you to avoid foreclosure by selling your home for an amount less than the total outstanding balance necessary to pay off your mortgage loan.

Call us at **1-800-552-3000** if you would like more information about the pre-foreclosure sale program.


**Midland Mortgage Delinquency Assistance Center**
P.O. Box 268806 · Oklahoma City, OK 73126-8806 · Tel 1-800-552-3000 · Fax 1-405-767-5815 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959



FILED

2017 APR 18 PM 3: 19

DAVIS COUNTY CHANCERY CT.

DC&M

# EXHIBIT D
# "Second RMA"



# Legal Aid Society
## of Middle Tennessee & the Cumberlands

300 Deaderick Street, Nashville, TN 37201
(615) 244-6610 • fax (615) 244-4920 • www.las.org

# Fax Cover Sheet

| SEND TO: | FROM: |
|---|---|
| Midland Mortgage | **Tabitha Faulconer** |
| RE: | OFFICE LOCATION: |
| Loan Modification Application | **Nashville** |
| Loan # 0054882515 | |
| RECIPIENT'S PHONE NO.: | DATE: |
| **615-780-7122** | December 21, 2016 |
| RECIPIENT'S FAX NO.: | |
| **405-767-5815** | |

☐ URGENT  ☐ REPLY ASAP  ☐ PLEASE COMMENT  ☐ PLEASE REVIEW  ☐ FOR YOUR INFORMATION

THIS FAX HAS <u>36</u> PAGES, INCLUDING THIS COVER SHEET. IF ANY PART OF THIS MESSAGE IS RECEIVED
POORLY OR SEEMS INCOMPLETE, PLEASE CONTACT THE SENDER AT <u>615-780-7122</u> .

COMMENTS:

Please find attached Ms. Ahlam Ary's complete new loan modification application. Please call
me with any questions or if anything else is needed. Thanks.

The information contained in this transmission is PRIVILEGED AND CONFIDENTIAL intended only for the use
of the addressee(s) named above. If the reader of this message is not the intended recipient or the employee or
agent responsible for delivering the message to the intended recipient(s), please note that any dissemination,
distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in
error should notify us immediately by telephone and return the original message to us at the Nashville Office
address via the U.S. Mail.

# Legal Aid Society
## of Middle Tennessee and the Cumberlands

300 Deaderick Street • Nashville, TN 37201 • www.las.org • (615) 244-6610 • f (615) 244-4920 • 1-800-238-1443

Gary D. Housepian, *Executive Director* • Kimberly A. deMent • Allison E. Jones • Vidhi S. Joshi • Zachary D. Oswald • Russell J. Overby
Emma W. Sholl • Lucinda E. Smith, *Volunteer Lawyers Program Director* • David J. Tarpley • Shauna O. Thompson • DarKenya W. Waller, *Managing Attorney*

December 21, 2016

Midland Mortgage
Re: Ahlam Ary Loan Modification Application
Loan Number: 0054882515
Attn: DAC
Fax: 405-767-5815

To Whom It May Concern:

Please be advised that attorney David Tarpley and I are assisting Ms. Ary with her modification application. Ms. Ary is requesting a lower loan payment due to change in income. Please find attached a complete loss mitigation packet for the above borrower. We have also included a signed third party authorization form. Enclosed, you will find the following:

- Signed third party authorization
- Completed and signed modification application
- Social security award letters
- Hardship affidavit
- 2 most recent bank statements
- Signed credit authorization
- Nisar Ary and Acuf Ary's birth certificates
- Copy of Ahlam Ary's social security card and driver's license
- Husband's death certificate
- Conveyance documentation

My contact information is Tabitha Faulconer, 615-780-7122 or tfaulconer@las.org and David Tarpley's is 615-780-7113 or dtarpley@las.org. If you need any additional information please contact me.

Thank you for taking the time to review this information.

Sincerely,

Tabitha Faulconer
Paralegal

TF/tf



Legal Aid Society is funded in part by Legal Services Corporation, Tennessee Civil Access to Justice Fund, Tennessee Bar Foundation, private donation, and United Ways serving Anderson, Bedford, Cannon, Clay, Cumberland, Davidson, Fentress, Franklin, Houston, Jackson, Lincoln, Macon, Montgomery, Overton, Putnam, Rutherford, Smith, Stewart, Sumner, Trousdale, Van Buren, White, Williamson and Wilson counties



**AUTHORIZATION AND RELEASE**

TO      :      Midland Mortgage

FROM :       Name: Ahlam K. Ary
              SSN:

RE      :      Loan Number: 0054882515
              Property Address: 109 Colemont Dr
                          Antioch, TN 37013

You are hereby authorized and requested to divulge to **any attorney, agent or representative of Legal Aid Society of Middle Tennessee and the Cumberlands** any and all information, data, documents or records arising from or pertaining to the origination, closing, servicing, and/or enforcement, including foreclosure, of my residential mortgage loan referenced above. You may divulge this information, data, documents or records by any method, such as:

> *answering written or oral questions;
> *permitting the examination of papers, data, documents, and records in your possession;
> *permitting the copying of such papers, data, documents and records;
> *distributing copies of such papers, data, documents and records; and
> *any other mutually convenient method.

This release shall remain in effect until 8/29/2017, or until revoked in writing.

I hereby certify that I have read this release and that I understand it.

Signed: X _Ahlam Ary_____      Date: 08/24/2016

# Making Home Affordable Program
## Hardship Affidavit

**MAKING HOME AFFORDABLE**.gov

▶ Loan I.D. Number __005 488 2515__   ▶ Servicer __Midland Mortgage, a Division of MidFirst Bank__

| BORROWER | CO-BORROWER |
|---|---|
| Borrower's name  Antam Ary | Co-borrower's name |
| Social Security Number | Social Security Number |

Property address (include city, state and zip): __109 Cement Dr Antacn TN 37013__

| I want to: | ☑ Keep the Property | ☐ Sell the Property | |
|---|---|---|---|
| The property is my: | ☑ Principal Residence | ☐ Second Home / Seasonal Rental | ☐ Year-Round Rental |
| The property is: | ☑ Owner Occupied | ☐ Tenant Occupied | ☐ Vacant  ☐ Other _____ |

### HARDSHIP AFFIDAVIT

**I (We) am/are requesting review under the Making Home Affordable (MHA) Program.**
**I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):**

☑ My household income has been reduced. For example: reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower.

☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes.

☐ I am unemployed and (a) I am receiving/will receive unemployment benefits or (b) my unemployment benefits ended less than 6 months ago.

☐ My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt.

☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time.

☐ Other:

Explanation (continue on back of page 3 if necessary): _____

Have you filed for bankruptcy?  ☐ Yes  ☑ No   If yes: ☐ Chapter 7  ☐ Chapter 13   Filing Date: _____
Has your bankruptcy been discharged?  ☐ Yes  ☐ No   Bankruptcy case number _____

How many single-family properties, other than your personal residence, do you and/or your co-borrower(s) own individually, jointly, or with others?  ___0___

Has the mortgage on your principle residence ever had a Home Affordable Modification Program (HAMP) trial-period plan or permanent modification?  ☐ Yes  ☑ No

Has the mortgage or any other property that you or any co-borrower own had a permanent HAMP modification?  ☐ Yes  ☑ No
If "Yes", how many? _____

### DODD-FRANK CERTIFICATION

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). You are required to furnish this information. The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program, authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 et seq.), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/we certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:

(a) felony larceny, theft, fraud, or forgery,
(b) money laundering or
(c) tax evasion.

I/we understand that the servicer, the U.S. Department of the Treasury, or their respective agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/we also understand that knowingly submitting false information may violate Federal law.

This certification is effective on the earlier of the date listed below or the date this hardship affidavit is received by your servicer.

4.23 (2) 0054882515 080116 p 5 of 7 ***

loan # 005488 2515

## RENTAL PROPERTY CERTIFICATION

**You must complete this certification if you are requesting a mortgage modification with respect to a rental property.**

( ) By checking this box and initialing below, I am requesting a mortgage modification under MHA with respect to the rental property having the address set forth above and I hereby certify under penalty of perjury that each of the following statements is true and correct with respect to that property:

1. I intend to rent the property to a tenant or tenants for at least five years following the effective date of my mortgage modification. I understand that the servicer, the U.S. Department of the Treasury, or their respective agents may ask me to provide evidence of my intention to rent the property during such time. I further understand that such evidence must show that I used reasonable efforts to rent the property to a tenant or tenants on a year-round basis, if the property is or becomes vacant during such five-year period.

*Note: The term "reasonable efforts" includes, without limitation, advertising the property for rent in local newspapers, websites or other commonly used forms of written or electronic media, and/or engaging a real estate or other professional to assist in renting the property, in either case, at or below market rent.*

2. The property is not my secondary residence and I do not intend to use the property as a secondary residence for at least five years following the effective date of my mortgage modification. I understand that if I do use the property as a secondary residence during such five-year period, my use of the property may be considered to be inconsistent with the certifications I have made herein.

*Note: The term "secondary residence" includes, without limitation, a second home, vacation home or other type of residence that I personally use or occupy on a part-time, seasonal or other basis.*

3. I do not own more than five (5) single-family homes (i.e., one-to-four unit properties) (exclusive of my principal residence).

**Notwithstanding the foregoing certifications, I may at any time sell the property, occupy it as my principal residence, or permit my legal dependent, parent or grandparent to occupy it as their principal residence with no rent charged or collected, none of which will be considered to be inconsistent with the certifications made herein.**

This certification is effective on the earlier of the date listed below or the date the Hardship Affidavit is received by your servicer.

Initials:   Borrower _____   Co-borrower _____

## INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. If you do not wish to furnish the information, please check the box below.

**BORROWER**
Ethnicity:
- [ ] I do not wish to furnish this information
- [ ] Hispanic or Latino
- [✓] Not Hispanic or Latino

Race:
- [ ] American Indian or Alaska Native
- [ ] Asian
- [ ] Black or African American
- [ ] Native Hawaiian or Other Pacific Islander
- [✓] White (other)

Sex:
- [ ] Female
- [ ] Male

**CO-BORROWER**
Ethnicity:
- [ ] I do not wish to furnish this information
- [ ] Hispanic or Latino
- [ ] Not Hispanic or Latino

Race:
- [ ] American Indian or Alaska Native
- [ ] Asian
- [ ] Black or African American
- [ ] Native Hawaiian or Other Pacific Islander
- [ ] White

Sex:
- [ ] Female
- [ ] Male

Name/Address of Interviewer's Employer

### To be completed by interviewer

| | |
|---|---|
| This request was taken by: | Interviewer's Name (print or type) & ID Number |
| [ ] Face-to-face interview | |
| [ ] Mail | Interviewer's Signature        Date |
| [ ] Telephone | |
| [ ] Internet | Interviewer's Phone Number (include area code) |

loan # 005486 2515

## ACKNOWLEDGEMENT AND AGREEMENT

1. That all of the information in this document is truthful and the event(s) identified on page 1 is/are the reason that I need to request a modification or forbearance of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

2. I understand and acknowledge that the Servicer, the U.S. Department of the Treasury, the owner or guarantor of my mortgage loan, or their respective agents may investigate the accuracy of my statements, may require me to provide additional supporting documentation and that knowingly submitting false information may violate Federal or other applicabale law.

3. I authorize and give permission to the Servicer, the U.S. Department of the Treasury, and their respective agents, to assemble and use a current consumer report on all borrowers obligated on the loan, to investigate each borrower's eligibility for MHA and the accuracy of my statements and any documentation that I provide in connection with my request for assistance. I understand that these consumer reports may include, without limitation, a credit report, and be assembled and used at any point during the application process to assess each borrower's eligibility thereafter.

4. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or if it is determined that any of my statements or any information contained in the documentation that I provide are materially false and that I was ineligible for assistance under MHA, the Servicer, the U.S. Department of the Treasury, or their respective agents may terminate my participation in MHA, including any right to future benefits and incentives that otherwise would have been available under the program, and also may seek other remedies available at law and in equity, such as recouping any benefits or incentives previously received.

5. I certify that any property for which I am requesting assistance is a habitable residential property that is not subject to a condemnation notice.

6. I certify that I am willing to provide all requested documents and to respond to all Servicer communications in a timely manner. I understand that time is of the essence.

7. I understand that the Servicer will use the information I provide to evaluate my eligibility for available relief options and foreclosure alternatives, but the Servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

8. I am willing to commit to credit counseling if it is determined that my financial hardship is related to excessive debt.

9. If I am eligible for assistance under MHA, and I accept and agree to all terms of an MHA notice, plan, or agreement, I also agree that the terms of this Acknowledgment and Agreement are incorporated into such notice, plan, or agreement by reference as if set forth therein in full. My first timely payment, if required, following my servicer's determination and notification of my eligibility or prequalification for MHA assistance will serve as my acceptance of the terms set forth in the notice, plan, or agreement sent to me.

10. I understand that my Servicer will collect and record personal information that I submit in this Hardship Affidavit and during the evaluation process, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about my account balances and activity. I understand and consent to the Servicer's disclosure of my personal information and the terms of any MHA notice, plan or agreement to the U.S. Department of the Treasury and its agents, Fannie Mae and Freddie Mac in connection with their responsibilities under MHA, companies that perform support services in conjunction with MHA, any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s) and to any HUD-certified housing counselor.

11. I consent to being contacted concerning this request for mortgage assistance at any e-mail address or cellular or mobile telephone number I have provided to the Servicer. This includes text messages and telephone calls to my cellular or mobile telephone.

The undersigned certifies under penalty of perjury that all statements in this document are true and correct.

| _Signature_ | | | |
|---|---|---|---|
| Borrower Signature | Social Security Number | 08/05/1962 | 12/20/2016 |
| | | Date of Birth | Date |
| Co-borrower Signature | Social Security Number | Date of Birth | Date |

### HOMEOWNER'S HOTLINE

If you have questions about this document or the Making Home Affordable Program, please call your servicer.

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.


888-995-HOPE
Homeowner's HOPE™ Hotline

### NOTICE TO BORROWERS

Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact in the completion of these documents including but not limited to misstatement regarding your occupancy of your property, hardship circumstances, and/or income, expenses, or assets will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that "Under penalty of perjury, all documents and information I have provided to my Servicer in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll-free), 202-622-4559 (fax), or www.sigtarp.gov and provide them with your name, or name as your servicer, your property address, loan number and the reason for escalation. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220

Beware of Foreclosure Rescue Scams. Help is FREE!
- There is never a fee to get assistance or information about the Making Home Affordable Program from your lender or a HUD-approved housing counselor.
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

Case 3:17-cv-00948   Document 1-2   Filed 06/15/17   Page 78 of 191 PageID #: 89

kwn # 0054583515

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Notice of Change in Benefits

Southeastern Program Service Center
1200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL   35285-0001
Date:  July 28, 2016
Claim Number:

589 1 MB 0.419  T7 MAAD296 PL1 S296 M1 PC3 160722
589      AHLAM K ARY
         109 COLEMONT DR
         ANTIOCH TN 37013

We can pay you beginning July 2016.

## Your Benefits

In your next payment, you will receive the difference between the benefits already paid and those now due.

## What We Will Pay

- You will soon receive a payment for $568.00, which is the money you are due through July 2016.

- After that you will receive $568.00 on or about the third of each month.

## Do You Think We Are Wrong?

If you do not agree with this decision, you have the right to appeal. We will review your case and look at any new facts you have. A person who did not make the first decision will decide your case. We will review the parts of the decision that you think are wrong and correct any mistakes. We may also review the parts of our decision that you think are right. We will make a decision that may or may not be in your favor.

- You have 60 days to ask for an appeal.
- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.
- You must have a good reason if you wait more than 60 days to ask for an appeal.
- You can file an appeal with any Social Security office. You must ask for an appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2. You may go to our website at www.socialsecurity.gov/online/ to find the form. You can also call, write, or visit us to request the form. If you need help to fill out the form, we can help you by phone or in person.

C

**See Next Page**





loan #C054882515

## If You Want Help With Your Appeal

You can have a friend, representative, or someone else help you. There are groups that can help you find a representative or give you free legal services if you qualify. There are also representatives who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a representative who is eligible for direct pay, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

## Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

## If You Have Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-877-808-5461. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
120 ATHENS WAY
NASHVILLE TN 37228

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Social Security Administration*

Icon # 005 1158 2515

# Social Security Administration
# **Supplemental Security Income**
Notice of Planned Action

SOCIAL SECURITY
120 ATHENS WAY
NASHVILLE TN 37228

Date: July 29, 2016
Claim Number:

# 000003668  I=060060  0722 10 T16

565  16S1725B49390
AHLAM KASSIM ARY
FOR NISAR RAUF ARY
109 COLEMONT DR
ANTIOCH TN 37013-3537

We plan to lower NISAR R. ARY's monthly Supplemental Security Income (SSI) payment from $374.00 to $185.00 beginning September 2016. The amount will change because her other income increased. She will continue to get the new amount each month unless there is a change in the information we use to figure her payment.

We explain how we figured the monthly payment amount on the worksheet(s) at the end of this letter. The explanation shows how her income, other than any SSI payments, affects her SSI payment. Her other income may include a portion of her parent's income. We include explanations only for months where payment amounts change.

## The Payments of NISAR R. ARY Will Be Changed As Follows:

| From | Through | Amount Due Each Month |
|------|---------|----------------------|
| September 1, 2016 | Continuing | $185.00 |

## When You Will Receive Her Payments

Your bank or other financial institution will receive her monthly payment of $185.00 around September 1, 2016, and on the first of each month after that.

## Information Used In Making The Decision

- Her parent has monthly income of $568.00 for July 2016 on. This amount does not affect her Supplemental Security Income payment.

- She has monthly income which must be considered in figuring her eligibility as follows:

### See Next Page

SSA-L8155

Her Social Security benefits--before deductions for Medicare premiums, if any-- of $568.00 for July 2016 on.

- Please see the enclosed fact sheet, "How Parents' Income and Resources Affect a Child's SSI," for more information on how we figure a child's payment.

## Your Reporting Responsibilities

NISAR R. ARY's SSI payments may change if her situation changes. You are required to report any changes that may affect her SSI no later than 10 days after the month the change takes place.

Please call 1-800-772-1213 or contact your local Social Security office to report any of the following changes:

- She starts or stops work, or her wages increase or decrease
- Her bank account balance goes over $2,000.00
- She moves
- Anyone else moves into or out of her household
- Someone in her household dies
- Income or resources change for her or members of her household
- Her medical condition improves
- She starts or stops attending school regularly
- She leaves the United States and expects to be gone for a full calendar month or for 30 consecutive days
- She is in a hospital, jail, or other institution for a full calendar month
- She has a felony or arrest warrant for escape from custody, flight to avoid prosecution or confinement, or flight-escape

## You Can Review The Information in NISAR R. ARY's Case

The decisions in this letter are based on the law and information in our records. You have a right to review and get copies of the information in our records that we used to make the decisions explained in this letter. You also have a right to review and copy the laws, regulations, and policy statements used in deciding her case. To do so, please contact us. Our telephone number and address are shown under the heading "If You Have Questions".

## Things You Should Know

We will send any decision about her benefits under other Social Security programs in a separate letter.

## If You Disagree

If you disagree with this decision, you have the right to appeal. A person who did not make the first decision will decide the appeal. We call this appeal a reconsideration. When you appeal, we review her entire case, even the parts with which you agree. We consider any new facts we have and then make a new decision. The new decision could be more favorable, less favorable, or the same as the one you already have.

SSA-L8155

07/29/2016    loan # 0054642515

**Time To File An Appeal**

- You have 60 days to file an appeal in writing.

- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on the letter.

- You must have a good reason for waiting more than 60 days to file an appeal.

**Appeal In 10 Days To Keep Receiving The Same Payment**

If we receive your written appeal within 10 days, her payment amount will not change until we decide her case.

- The 10 days start the day after you receive this letter.

- If you lose her appeal, you might have to pay back some or all of this money.

However, even if you appeal within 10 days, we may reduce her payment in September 2016 if both of the following are true:

- Our new decision is the same as the one you appealed, and

- We send or give you a letter with our new decision in time to reduce the payment.

**How To Appeal**

You can file an appeal with any Social Security office. You must request the appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2, which is available on our website at www.socialsecurity.gov on the Internet. You can also contact us by phone, by mail, or come into the office to obtain the form. If you need assistance, we can help you fill out the form.

There are 3 types of appeals. In most cases, you can choose the one you want.

- <u>Case Review:</u> You will not meet with the person who decides her case. You have a right to review the facts in her file. You can give us more facts to add to her file. Then we will decide her case again. This is the only kind of appeal you can have for a medical decision.

- <u>Informal Conference:</u> You will talk with the person who decides her case either in person or over the phone. You can tell that person why you disagree with our decision. If you meet with us in person, it may help her case. You have a right to review the facts in her file. You can give us more facts to add to her file. You can have other people help explain her case. Then we will decide her case again.

SSA-L8155

07/29/2016    loan # 005488 2515

- **Formal Conference:** This is a meeting like an informal conference. The difference is we can require people to come to help prove you are right. We can require them to bring important papers about her case, even if they do not want to help you. You can question these people at your meeting. Then we will decide her case again.

## If You Want Help With Your Appeal

You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. Your local Social Security office can give you a list of groups that can help you find a representative.

If you get a representative, you or that person must notify us in writing. You may use our Form SSA-1696-U4 Appointment of Representative. Any local Social Security office can give you this form.

## Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

## If You Have Questions

If you have any questions, please:

- Visit our website at www.socialsecurity.gov to find general information about SSI;

- Visit our website at www.socialsecurity.gov/SSIrules/ to find the law and regulations about SSI eligibility and payments;

- Call us toll-free at 1-800-772-1213 or call your local office at 877-808-5461. We can answer most questions over the phone. If you are deaf or hard of hearing, our toll-free TTY number is 1-800-325-0778; or

- Write or visit any Social Security office. If you plan to visit an office, you may call ahead to make an appointment. The office that serves your area is located at:

      SOCIAL SECURITY
      120 ATHENS WAY
      NASHVILLE TN 37228

SSA-L8155

loan #0054688 2515

Please have this letter with you if you call or visit an office. If you write, please include a copy of the first page of this letter. It will help us answer your questions. We are busiest early in the week and early in the month. If your business can wait, it is best to call or visit at other times.

*Social Security Administration*

Enclosure(s):
How Parents' Income and Resources Affect a Child's SSI
How We Figured NISAR R. ARY's Payment

SSA-L8155

07/29/2016        loan # COS 488 2515

## How Parents' Income and Resources Affect a Child's SSI

### Why do the parents' income and resources affect a child's SSI?

The law requires us to consider the income and resources of parents who live in the same household with the child. This law recognizes the parents' responsibility to care for their child's basic needs.

### When do parents' income and resources affect a child's SSI?

We count some of the parents' income and resources when the child is living in the parents' household, is not married, and is under age 18.

### What is income for SSI purposes?

Income is the money a parent receives such as wages, Social Security benefits, and pensions. Income also includes non-cash items such as food or housing. Under the SSI program, income is divided into the following two categories:

- Earned income is income received from wages and self-employment.

- Unearned income is any income other than earned income. This includes Social Security benefits, Department of Veterans Affairs payments, unemployment compensation, private pensions, and the value of food or housing received from others.

### How is parents' income counted?

We use the following steps to determine how much of the parents' monthly income we count:

1. We use the parents' gross earned and unearned monthly income.

2. We start with the parents' unearned income.

3. We subtract a living allowance for each of the children in the household who is not eligible for SSI. The amount we subtract is reduced if these children have their own income.

4. If the parents' unearned income is less than the living allowance for the children, we subtract the balance of the living allowance from the parents' earned income.

5. We subtract $20.00 from the parents' remaining unearned income. If the parents have less than $20.00 in unearned income, we subtract the balance of the $20.00 from the parents' earned income.

6. We subtract $65.00 from the parents' remaining earned income, and then we subtract one-half of any earnings over $65.00.

7. We add the remaining unearned and earned income together.

SSA-L8155

07/29/2016   loan # 0054688515

8. We subtract a living allowance for parents in the household.

9. We count any remaining income as unearned income to the child.

10. If we are determining SSI eligibility and payment amounts for more than one child in the household, we divide the remaining income between those children.

11. We add the parents' income we count to the child's own unearned income.

12. We subtract an additional $20.00. If the total of the child's unearned income and the parents' income we count is less than $20.00, we subtract the balance of the $20.00 from the child's earned income.

13. We subtract $65.00 from the child's earned income, and then we subtract one-half of any earnings over $65.00.

14. We combine the child's remaining unearned and earned income to get the total income used to determine the child's SSI eligibility and payment.

## What is a resource for SSI purposes?

A resource is money and anything that parents' own and can turn into cash. A resource will be considered theirs even if they own it with someone else. Resources include cash, bank accounts, life insurance policies, automobiles, and other property.

## Why are resources important in the SSI program?

To be eligible for SSI, the child's resources and the parents' own resources cannot be more than the SSI resource limit. A child can have resources up to $2,000.00. One parent in the household can have resources up to $2,000.00. Two parents in the household can have resources up to $3,000.00. Any amount over the parents' resource limit is counted as a resource of the child.

## How are parents' resources counted?

We use the following steps to determine how much of the parents' resources we count:

1. We generally do not count some of the parents' resources such as the home they live in, one automobile, pension funds, burial spaces, and certain burial funds up to $1,500.00.

2. We add together the value of all the parents' resources that we count.

3. We subtract the resource limit for the number of parents in the household ($2,000.00 for one parent or $3,000.00 for two parents).

SSA-L8155

07/29/2016   loan # 005 4186 2515

4.   We count the remaining amount as resources of the child.  (If we are determining SSI eligibility for more than one child in the household, we divide the remaining amount between those children.)

5.   We add the remaining amount of the parents' resources to the value of any resources their child owns.  If the combined amount is more than the child's resource limit of $2,000.00, the child is not eligible for SSI.



SSA-L8155

Case 3:17-cv-00948   Document 1-2   Filed 06/15/17   Page 88 of 191 PageID #: 99

# HOW WE FIGURED NISAR R. ARY'S PAYMENT FOR September 2016 ON

## Her Payment Amount

| | |
|---|---|
| The most SSI money the law allows us to pay | $733.00 |
| Minus (-) "Total income we count" (see below) | -548.00 |

**Total Monthly SSI Payment
for September 2016 on**         $185.00

## Her Income Other Than Her SSI

Income she receives in July 2016 on affects her payment for September 2016 on

| | |
|---|---|
| Social Security benefits | $568.00 |
| By law we don't count $20.00 of above income | - 20.00 |

**Total income we count**         $548.00

## Parent's Income for July 2016 on

| | |
|---|---|
| AHLAM K. ARY'S Social Security benefits | $568.00 |
| We don't count $20.00 of above income | - 20.00 |
| Subtotal | $548.00 |
| Minus (-) living allowance for parent | -733.00 |

**Total parent's income we count**         $ 0.00



SSA-L8155

Kun # 005458 3515

# Social Security Administration
# **Retirement, Survivors and Disability Insurance**
Important Information

Southeastern Program Service Center
1200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL    35285-0001
Date:  June 3, 2016
Claim Number:

0023441 00073089      1 AT    .390 0527M1T2R3PN T336 P14
ACAR RAUF ARY
109 COLEMONT DR
ANTIOCH TN 37013-3537

We are writing to you about your Social Security benefits.

**What You Should Know**

You are no longer entitled to Social Security benefits beginning June 2016.
Your benefits are stopping in that month because:

- you are not a full-time elementary or secondary level school student, and

- you are not disabled.

**Things To Remember For The Future**

You may be able to receive payments again if you attend an elementary or
secondary level school full-time during any month before age 19.  If this
happens, you should get in touch with us again.

You also may be able to receive payments again if you become disabled before
age 22 and have not married since your last entitlement, unless the marriage
is void or annulled.  If this happens, you should get in touch with us again.



**If You Disagree With The Decision**

If you do not agree with this decision, you have the right to appeal.  We will
review your case and look at any new facts you have.  A person who did not
make the first decision will decide your case.  We will review the parts of the
decision that you think are wrong and correct any mistakes.  We may also
review the parts of our decision that you think are right.  We will make a
decision that may or may not be in your favor.

- You have 60 days to ask for an appeal in writing.

- The 60 days start the day after you receive this letter.  We assume you
  got this letter 5 days after the date on it unless you show us that you
  did not get it within the 5-day period.

C                              See Next Page

- You must have a good reason if you wait more than 60 days to ask for an appeal.

- You can file an appeal with any Social Security office. You must ask for an appeal in writing. Please use our "Request for Reconsideration" form, SSA-561. You may go to our website at www.socialsecurity.gov/online/ to find the form SSA-561. You can also contact us by phone, mail, or come into an office to request the form. If you need help to fill out the form, we can help you by phone or in person.

## If You Want Help With Your Appeal

You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. Your local Social Security office can give you a list of groups that can help you find a representative.



If you get a representative, you or that person must notify us in writing. You may use our Form SSA-1696 "Appointment of Representative." Any local Social Security office can give you this form.

## Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

## If You Have Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-877-808-5461. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
120 ATHENS WAY
NASHVILLE, TN 37228

loan # 005 488 2515

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Social Security Administration*



**HARDSHIP AFFIDAVIT**

loan # CC5488 2515

My husband died in October of 2015 and my children and I relied on his income. My oldest son, Acar Ary also just turned 18 and stopped receiving social security benefits of $374 per month. My daughter and I now receive Social Security benefits. I receive $568 per month, and my daughter Nisar receives $733 per month. The reduction in my husband's income and son's social security benefits has caused me difficulty in making my normal mortgage payments and need assistance in modifying the loan to lower the payments.

_____

**Ahlam Ary**

12/20/2016
_____

**Date**

 **REGIONS**  **Regions Bank**
Woodbine
2511 Nolensville RD
Nashville, TN 37211

loan # ccs488 2515





00019124 01 AV 0.373 001
AHLAM ARY
RAUF ARY
109 COLEMONT DR
ANTIOCH TN 37013-3537

1

ACCOUNT # 0065611373

| | |
|---|---|
| Cycle | 053 |
| Enclosures | 09 |
| Page | 0 |
| | 1 of 2 |

## LIFEGREEN CHECKING
September 20, 2016 through October 18, 2016

| | | | | |
|---|---|---|---|---|
| **Beginning Balance** | **$101.51** | | Minimum Balance | $35 |
| Deposits & Credits | $1,247.70 | + | Average Balance | $83 |
| Withdrawals | $66.10 | − | | |
| Fees | $0.00 | − | | |
| Automatic Transfers | $0.00 | + | | |
| Checks | $1,210.00 | − | | |
| **Ending Balance** | **$73.11** | | | |

### DEPOSITS & CREDITS

| | | | |
|---|---|---|---|
| 09/30 | Ssi Treas 310 Xxsupp Sec Ahlam K Ary | | 111.70 |
| 10/03 | SSA Treas 310 Xxsoc Sec Ahlam Ary For | | 568.00 |
| 10/03 | SSA Treas 310 Xxsoc Sec Ahlam K Ary | | 568.00 |
| | | Total Deposits & Credits | $1,247.70 |

### WITHDRAWALS

| | | |
|---|---|---|
| 09/27 | Prog Hawaii Ins Ins Prem ary | 66.10 |

| | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 36.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 0.00 |

| Date | Check No. | Amount | | Date | Check No. | Amount |
|---|---|---|---|---|---|---|
| 10/03 | | 1,210.00 | | | | |

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 09/27 | 35.41 | 09/30 | 147.11 | 10/03 | 73.11 |

 **REGIONS**

## Easy Steps to Balance Your Account

4a List any checks, payments, transfers or other withdrawals from your account that are not on this statement.

loan # 0054882615

| | | Checking Account |
|---|---|---|
| 1. | Write here the amount shown on statement for **ENDING BALANCE** | $ |
| 2. | Enter any deposits which have not been credited on this statement. | $ + |
| 3. | Total lines 1 & 2 | $ = |
| 4. | Enter total from 4a (column on right side of page) | $ - |
| 5. | Subtract line 4 from line 3. This should be your checkbook balance. | $ = |



| Check No. | Amount |
|---|---|
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Total Enter in Line 4 at Left | $ |

The law requires you to use "reasonable care and promptness" in examining your bank statement and any checks sent with it and to report to the Bank an unauthorized signature (i.e., a forgery), any alteration of a check, or any unauthorized endorsement. You must report any forged signatures, alterations or forged endorsements to the Bank within the time periods specified under the Deposit Agreement. If you do not do this, the Bank will not be liable to you for the losses or claims arising from the forged signatures, forged endorsements or alterations. Please see the Deposit Agreement for further explanation of your responsibilities with regard to your statement and checks. A copy of our current Deposit Agreement may be requested at any of our branch locations.

Summary of Our Error Resolution Procedures
In Case of Errors or Questions About Your Electronic Transfers
Telephone us toll-free at 1-800-734-4667
or write us at
Regions Electronic Funds Transfer Services
Post Office Box 413
Birmingham, Alabama 35201

Please contact Regions as soon as you can, if you think your statement is wrong or if you need more information about a transfer listed on your statement. We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared.
(1) Tell us your name and account number.
(2) Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.
If you tell us verbally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days to investigate your complaint or question (ninety (90) days for POS transactions or for transfers initiated outside of the United States). If we decide to do this, we will credit your account within ten (10) business days for the amount you think is in error. If, after the investigation, we determine that no bank error occurred, we will debit your account to the extent previously credited. If we ask you to put your complaint in writing and we do not receive it within ten (10) business days, we may not credit your account.

New Accounts- If an alleged error occurred within thirty (30) days after your first deposit to your account was made, we may have up to ninety (90) days to investigate your complaint, provided we credit your account within twenty (20) business days for the amount you think is in error. If we decide there was no error, we will send you a written explanation within three (3) business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation.

FOR QUESTIONS CONCERNING THIS STATEMENT OR FOR VERIFICATION OF A PREAUTHORIZED DEPOSIT, PLEASE CALL THE PHONE NUMBER ON THE REVERSE SIDE OF THIS STATEMENT OR VISIT YOUR NEAREST REGIONS LOCATION.

| | | | |
|---|---|---|---|
| ADJ - Adjustment | RI - Return Item | CR - Credit | SC - Service Charge | OD - Overdrawn |
| EB - Electronic Banking | NSF - Nonsufficient Funds | APY - Annual Percentage Yield | FWT - Federal Withholding Tax | *Break in Number Sequence |

 

**Regions Bank**
Woodbine
2511 Nolensville RD
Nashville, TN 37211

loan #05 466 2515

00019343 01 AV  0.373 001
AHLAM ARY
RAUF ARY
109 COLEMONT DR
ANTIOCH TN 37013-3537

| | |
|---|---|
| ACCOUNT # | 0065611373 |

| | |
|---|---|
| Cycle | 053 |
| Enclosures | 09 |
| Page | 0 |
| | 1 of 2 |

## LIFEGREEN CHECKING
October 19, 2016 through November 16, 2016

### SUMMARY

| | | | | |
|---|---|---|---|---|
| **Beginning Balance** | $73.11 | + | Minimum Balance | $7 |
| Deposits & Credits | $1,247.70 | + | Average Balance | $53 |
| Withdrawals | $66.11 | – | | |
| Fees | $0.00 | – | | |
| Automatic Transfers | $0.00 | + | | |
| Checks | $1,200.00 | – | | |
| **Ending Balance** | $54.70 | | | |

### DEPOSITS & CREDITS

| | | | |
|---|---|---|---|
| 11/01 | Ssi Treas 310  Xxsupp Sec Ahlam K Ary | | 111.70 |
| 11/03 | SSA Treas 310  Xxsoc Sec Ahlam Ary For | | 568.00 |
| 11/03 | SSA Treas 310  Xxsoc Sec Ahlam K Ary | | 568.00 |
| | | Total Deposits & Credits | $1,247.70 |

### WITHDRAWALS

| | | |
|---|---|---|
| 10/26 | Prog Hawaii Ins  Ins Prem ary | 66.11 |

| | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 36.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 0.00 |

### CHECKS

| Date | Check No. | Amount | Date | Check No. | Amount |
|---|---|---|---|---|---|
| 11/03 | | 1,200.00 | | | |

### DAILY BALANCE SUMMARY

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 10/26 | 7.00 | 11/01 | 118.70 | 11/03 | 54.70 |

## REGIONS

### Easy Steps to Balance Your Account

4a List any checks, payments, transfers or other withdrawals from your account that are not on this statement.

loan #CC51446255

|   | | Checking Account |
|---|---|---|
| 1. | Write here the amount shown on statement for **ENDING BALANCE** | $ |
| 2. | Enter any deposits which have not been credited on this statement. | $ + |
| 3. | Total lines 1 & 2 | $ = |
| 4. | Enter total from 4a (column on right side of page) | $ |
| 5. | Subtract line 4 from line 3. This should be your checkbook balance. | $ = |

| Check No. | Amount |
|---|---|
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Total Enter in Line 4 at Left | $ |

The law requires you to use "reasonable care and promptness" in examining your bank statement and any checks sent with it and to report to the Bank an unauthorized signature (i.e., a forgery), any alteration of a check, or any unauthorized endorsement. You must report any forged signatures, alterations or forged endorsements to the Bank within the time periods specified under the Deposit Agreement. If you do not do this, the Bank will not be liable to you for the losses or claims arising from the forged signatures, forged endorsements or alterations. Please see the Deposit Agreement for further explanation of your responsibilities with regard to your statement and checks. A copy of our current Deposit Agreement may be requested at any of our branch locations.

Summary of Our Error Resolution Procedures
In Case of Errors or Questions About Your Electronic Transfers
Telephone us toll-free at 1-800-734-4667
or write us at
Regions Electronic Funds Transfer Services
Post Office Box 413
Birmingham, Alabama 35201

Please contact Regions as soon as you can, if you think your statement is wrong or if you need more information about a transfer listed on your statement. We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared.
(1) Tell us your name and account number.
(2) Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.
If you tell us verbally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days to investigate your complaint or question (ninety (90) days for POS transactions or for transfers initiated outside of the United States). If we decide to do this, we will credit your account within ten (10) business days for the amount you think is in error. If, after the investigation, we determine that no bank error occurred, we will debit your account to the extent previously credited. If we ask you to put your complaint in writing and we do not receive it within ten (10) business days, we may not credit your account.

New Accounts- If an alleged error occurred within thirty (30) days after your first deposit to your account was made, we may have up to ninety (90) days to investigate your complaint, provided we credit your account within twenty (20) business days for the amount you think is in error. If we decide there was no error, we will send you a written explanation within three (3) business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation.

FOR QUESTIONS CONCERNING THIS STATEMENT OR FOR VERIFICATION OF A PREAUTHORIZED DEPOSIT, PLEASE CALL THE PHONE NUMBER ON THE REVERSE SIDE OF THIS STATEMENT OR VISIT YOUR NEAREST REGIONS LOCATION.

| ADJ - Adjustment | RI - Return Item | CR - Credit | SC - Service Charge | OD - Overdrawn |
|---|---|---|---|---|
| EB - Electronic Banking | NSF - Nonsufficient Funds | APY - Annual Percentage Yield | FWT - Federal Withholding Tax | *Break in Number Sequence |



**Midland Mortgage**
A Division of MidFirst Bank

# Credit Report Authorization Form

**Instructions for Completing this Form**

This form is to be completed by a 3rd party who is not currently named as a borrower or co-borrower on the loan noted below. It grants Midland Mortgage, a Division of MidFirst Bank, permission to obtain a consumer credit report regarding the 3rd party and to use the 3rd party's income for the purpose of contributing to the credit obligation of the mortgagor named below. *This form is not to be completed by the mortgagor.*

I agree for Midland Mortgage, a Division of MidFirst Bank ("Midland") to:

(a) obtain a consumer credit report for the purpose of evaluating or assessing my financial ability to contribute income to the credit obligation of the mortgagor set forth below; and

(b) use my income to contribute to the credit obligation of the mortgagor set forth below.

CC 5 488 2515
Loan / Account Number

Anjum Ary
Mortgagor Name (please print)

109 Clement Dr. Antican TN 37013
Property Address (please print complete street address, city, state, and zip code)

By completing the information requested below and executing this Credit Report Authorization Form, I grant Midland permission to release the personal information set forth below and to obtain a copy of my consumer credit report from a credit reporting agency of Midland's choice. I agree to hold Midland harmless in connection with this release of personal information and Midland's request for a consumer credit report.

Anjum Ary
Your Name (please print)

Social Security Number

109 Clement Dr. Antican TN 37013
Your Address (please print complete street address, city, state, and zip code)

Signature

12/20/16
Date

**Please send this completed, signed, and dated form to Midland at one of the addresses below:**

| Fax | Email | Mail |
|---|---|---|
| 405-767-5815 | dac@midfirst.com | Midland Mortgage<br>Attn: DAC<br>P.O. Box 268806<br>Oklahoma City, OK 73126 |

**Midland Mortgage Delinquency Assistance Center**
P.O. Box 268806 · Oklahoma City, OK 73126 · 800-552-3000 · FAX 405-767-5815 · www.MyMidlandMortgage.com

**STATE OF TENNESSEE**
**Office of Vital Records**

AMENDED BY COURT ORDER 8/13/01
TENNESSEE DEPARTMENT OF HEALTH
CERTIFICATE OF LIVE BIRTH

98-021966

141-

1996 021966

| 1. CHILD'S NAME | First | Middle | Last | 2. SEX | 3. DATE OF BIRTH (Month, Day, Year) | 4. TIME OF BIRTH |
|---|---|---|---|---|---|---|
| Acar | Rauf | | Ary | Male | April 15, 1998 | 5:34 PM |

5. FACILITY NAME (If not institution, give street and number)

Columbia Centennial The Women Hospital

6. PLACE OF BIRTH
1 ☒ Hospital  2 ☐ Freestanding Birthing Center
3 ☐ Clinic/Doctor's Office  4 ☐ Physician
5 ☐ Other (Specify)

| 7. CITY, TOWN, OR LOCATION OF BIRTH | 8. COUNTY OF BIRTH |
|---|---|
| Nashville | Davidson |

9. I certify that this child was born alive at the
Signature  ▷

10. DATE SIGNED (Month, Day, Year)
4-18-98

11. CERTIFIER NAME AND TITLE (Type/Print)
Name  Afan  Thaijani
1 ☒ M.D.  2 ☐ D.O.  3 ☐ C.N.M.  4 ☐ Other Midwife
5 ☐ Other (Specify)

12. IF CERTIFIER WAS NOT ATTENDANT, GIVE NAME AND TITLE OF ATTENDANT:
Name
1 ☐ M.D.  2 ☐ D.O.  3 ☐ C.N.M.  4 ☐ Other Midwife
5 ☐ Other (Specify)

13. ATTENDANT'S MAILING ADDRESS Street and Number or Rural Route Number
1916 Patterson Street Suite 600
Nashville TN 37203

14. REGISTRAR'S SIGNATURE

15. DATE FILED BY REGISTRAR (Month, Day, Year)
April 30, 1998

16. MOTHER'S NAME First, Middle, Last
Ahlam  Kassim  Ary

16a. MAIDEN SURNAME
Ary

17. MOTHER'S DATE OF BIRTH
August 5, 1962

18. MOTHER'S BIRTHPLACE (State or Foreign Country)
Kurdstan

18a. RESIDENCE-STATE
Tennessee

18b. COUNTY
Davidson

18c. CITY, TOWN, OR LOCATION
Nashville

18d. STREET AND NUMBER OR RURAL LOCATION
4960 Edmondson Pike K-13

18e. INSIDE CITY LIMITS
1 ☐ Yes  2 ☒ No

18f. ZIP CODE
37211

19. MOTHER'S MAILING ADDRESS (if same as residence, enter Zip Code only)

20. FATHER'S NAME First, Middle, Last
Rauf  Abdullah  Ary

21. FATHER'S DATE OF BIRTH
July 1, 1963

22. FATHER'S BIRTHPLACE (State or Foreign Country)
Kurdstan

24a.
☒ Yes  ☐ No

24b.
☒ Yes  ☐ No

24c.
Signature of Either Parent

**INFORMATION FOR MEDICAL AND HEALTH USE ONLY**

I hereby certify the above to be a true and correct copy of the original document on file in this department. This certified copy is valid only when printed on security paper showing the red embossed seal of the Department of Health. Alteration or erasure voids this certification.

Tennessee Code Annotated 68-3-101 et seq., Vital Records Act of 1977.

Paula Taylor
Paula Taylor
State Registrar

Date Issued  Aug-13-2001

**CERTIFICATION OF VITAL RECORD**

loan # 005 468 2015

# STATE OF TENNESSEE
## Office of Vital Records

TENNESSEE DEPARTMENT OF HEALTH
CERTIFICATE OF LIVE BIRTH

0007500    141-    2000 043100

| 1 CHILD'S NAME First | Middle | Last | 2 SEX | 3 DATE OF BIRTH | 4 HOUR |
| Nisar | Rauf | Ary | Female | July 10, 2000 | 4:22 PM |

| 5 FACILITY NAME (If not institution, give street and number) | 6 PLACE OF BIRTH |
| Vanderbilt University Medical Center | 1 ☐ Hospital   2 ☐ Freestanding Birthing Center   3 ☒ Clinic/Doctor's Office   4 ☐ Residence   5 ☐ Other (Specify) |

| 7 CITY, TOWN, OR LOCATION OF BIRTH | 8 COUNTY OF BIRTH |
| Nashville | Davidson |

| 9 I hereby certify that this child was born alive at the place and time and on the date stated. Signature | 10 DATE SIGNED (Month, Day, Year) | 11 CERTIFIER'S NAME AND TITLE (Type/Print) |
| [signature] | 7/12/00 | Name Nancy   Lipsitz   1☐MD  2☐DO  3☒CNM  4☐Other Midwife |

| 12 IF CERTIFIER WAS NOT ATTENDANT, GIVE NAME AND TITLE OF ATTENDANT | 13 ATTENDANT'S MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code) |
| Name  1☐MD  2☐DO  3☐CNM  4☐Other Midwife  5☐Other (Specify) | 220 Medical Arts Bldg.  Nashville TN, 37232 |

| 14 REGISTRAR'S SIGNATURE | 15 DATE FILED BY REGISTRAR (Month, Day, Year) |
| Claudia Umstead | July 24 2000 |

| 16 MOTHER'S NAME (First, Middle, Last) | 16a MAIDEN SURNAME | 17 MOTHER'S DATE OF BIRTH |
| Ahlam   Kassim   Ary | Ary | August 5, 1962 |

| 18 MOTHER'S BIRTHPLACE (State or Foreign Country) KW | 18a RESIDENCE-STATE | 18b COUNTY | 18c CITY, TOWN, OR LOCATION |
| Kurdishtan/Iraq | Tennessee | Davidson | Antioch |

| 19 STREET AND NUMBER OF REAL LOCATION | 19a INSIDE CITY LIMITS? | 20 MOTHER'S MAILING ADDRESS (If same as residence, enter Zip Code only) |
| 109 Colemont Drive | 1☐Yes  2☐No | 37013 |

| 21 FATHER'S NAME (First, Middle, Last) | 22 FATHER'S DATE OF BIRTH | 23 FATHER'S BIRTHPLACE (State or Foreign Country) |
| Rauf   Abdullha   Ary | July 1, 1963 | Kurdishtan/Iraq |

| 24a I give permission to provide the Social Security Administration with data from this certificate for the purpose of issuing a Social Security Number | ☒Yes  ☐No | 24c I certify that the personal information provided on the certificate to the best of my knowledge is correct.  Signature of Parent or Other Parent |
| 24b I authorize the Social Security Administration to provide the Social Security numbers of those I honored to the IRS or the State's own Tax | ☒Yes  ☐No | [signature] Ahlam Ary |

INFORMATION FOR MEDICAL AND HEALTH USE ONLY

I hereby certify the above to be a true and correct copy of the original document on file in this department. This certified copy is valid only when printed on security paper showing the red embossed seal of the Department of Health. Alteration or erasure voids this certification.

Tennessee Code Annotated 68-3-101 et seq., Vital Records Act of 1977.

*Paula Taylor*
Paula Taylor
State Registrar

Date Issued   May-22-2001

## CERTIFICATION OF VITAL RECORD

kan # 005468 2515



loan # 0054488 2515



loan # C05488 2515

# STATE OF TENNESSEE
## Office of Vital Records

TENNESSEE DEPARTMENT OF HEALTH
**CERTIFICATE OF DEATH**
STATE FILE NUMBER

1. DECEDENT'S LEGAL NAME: **Rauf Ary**   SEX: **male**   DATE OF DEATH: **10/04/2015**

4. TIME OF DEATH: **19:55**   AGE: **52**   DATE OF BIRTH: **07/01/1963**   BIRTHPLACE: **Iraq**

PLACE OF DEATH: HOSPITAL / OTHER THAN HOSPITAL
FACILITY NAME: **Saint Thomas Rutherford**   CITY: **Murfreesboro**   COUNTY OF DEATH: **Rutherford**

MARITAL STATUS: Married
SURVIVING SPOUSE'S NAME: **Ahlam Ary**
USUAL OCCUPATION: **manager**   KIND OF BUSINESS/INDUSTRY: **Resturant**

RESIDENCE-STATE: **Tennessee**   COUNTY: **Rutherford**   CITY OR TOWN: **Murfreesboro**
STREET AND NUMBER: **2025 S. church St. Apt. 606**   ZIP CODE: **37130**

DECEDENT OF HISPANIC ORIGIN? ☒ No   RACE: White

FATHER'S NAME: **Abdullah Mustafa**   MOTHER'S NAME BEFORE FIRST MARRIAGE: **Zubeda**

INFORMANT'S NAME: **Ahlam Ary**   RELATIONSHIP: **wife**   MAILING ADDRESS: **109 Colment Dr. Antioch, TN 37013**

METHOD OF DISPOSITION: Burial
PLACE OF DISPOSITION: **Salahadeen center cemetery**   LOCATION: **Antioch**

SIGNATURE OF FUNERAL DIRECTOR: **Amira Musa**

NAME AND ADDRESS OF FUNERAL HOME: **Salahadeen center funeral, 3124 Old franklin Rd. Atioch, TN 37013**

CERTIFIER: **Vonecca johnson (OR)**   DATE: **Dec 8 2015**

☒ MEDICAL EXAMINER

SIGNATURE OF CERTIFIER: **Leonard Dmach MD**   LICENSE NUMBER: **MD 24807**   DATE: **Dec 5, 2015**

PART I.
CAUSE OF DEATH:
a. **CARDIAC ARREST**
b. **CORONARY ARTERY DISEASE**

WAS AN AUTOPSY PERFORMED? ☐ Yes ☒ No

MANNER OF DEATH: Natural

---

8118632

I hereby certify the above to be a true and correct representation of the record or document on file in this department. This certified copy is valid only when printed on security paper showing the red embossed seal of the Tennessee Department of Health. Alteration or erasure voids this certification. Reproduction of this document is prohibited.

Tennessee Code Annotated 68-3-101 et seq., Vital Records Act of 1977.

R. Benton McDonough, JD
STATE REGISTRAR

John J. Dreyzehner, MD, MPH, FACOEM
COMMISSIONER

Date Issued: **DEC 8 2015**

8118632

## CERTIFICATION OF VITAL RECORD

Case 3:17-cv-00948   Document 1-2   Filed 06/15/17   Page 103 of 191 PageID #: 114

loan # ce5468 2515

# IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
## AT MURFREESBORO

IN RE:     RAUF ARY,
           Deceased,                          CASE NO.: 16CV-1802

           AHLAM ARY,
           Petitioner.

JOHN A.W.G...
CLERK AND M...
2016 NOV 22 PM 27

## PETITION FOR LETTERS OF ADMINISTRATION

The petitioner requests the Court to grant her letters of administration and would state as follows:

1.      The decedent, Rauf Ary, died on October 4, 2015, at the age of fifty-two (52) years. The decedent's place of residence was Murfreesboro, Rutherford County, Tennessee.

2.      The decedent is survived by the following heirs:

   a.   Ahlam Ary, spouse, age 54, 109 Colemont Dr., Antioch, TN 37013.

   b.   Nisar Ary, daughter, age 16, 109 Colemont Dr. Antioch, TN 37013.

   c.   Acar Ary, son, age 18, 109 Colemont Dr. Antioch, TN 37013.

3.      The decedent owned the following property at the time of his death:

   a.   The decedent owned real estate located at 109 Colemont Dr., Antioch, TN, valued at $70,000.

   b.   The decedent owned personal property which the petitioner believes to be valued at less than $10,000.00.

   c.   The decedent died without a will.  The petitioner made a thorough search for wills and codicils signed by the decedent, but no such wills or codicils have been found.

   d.   The petitioner, Ahlam Ary, is one of the decedents.  Ahlam Ary, as decedent's spouse is the person with the highest right to serve as set forth in T.C.A. § 30-1-106.

Iow # ce5 488 2515

4.     Petitioner is ready, willing and alleges to be qualified to administer decedent's estate according to the law. Petitioner requests to be appointed as Administrator of the decedent's estate.

## PETITIONER THEREFORE ASKS THAT:

1.     The petitioner be administered the oath and be issued proper letters of administration and

2.     The petitioner be granted any and all additional relief to which she may be entitled.

Respectfully submitted,

PARKER, LAWRENCE, CANTRELL & SMITH

Richard K. Smith - #10113
201 Fourth Avenue North
Suite 1700
Nashville, Tennessee 37219
(615) 255-7500

STATE OF TENNESSEE        )
                          )
COUNTY OF DAVIDSON        )

     Petitioner, Ahlam Ary, makes oath that the statements in the foregoing petition are true to the best of her knowledge, information and belief. Sworn to and subscribed this 22th day of November, 2016.

Ahlam Ary

Sworn to and subscribed before me this 22th day of November, 2016.

Notary Public

My Commission Expires: May 5, 2020

2

loan #CE5146B 2515

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was mailed to:

Acar Ary
109 Colemont Dr.
Antioch, TN 37013

Nisar Ary
109 Colemont Dr.
Antioch, TN 37013

on this _22nd_ day of November, 2016.

Richard K. Smith

STATE OF TENNESSEE RUTHERFORD COUNTY

THE UNDERSIGNED, CLERK AND MASTER OF THE SAID COUNTY AND STATE
HEREBY CERTIFIES THAT THE FOREGOING IS A CORRECT COPY OF THIS
INSTRUMENT FILED IN THE FOREGOING CAUSE IN THE CHANCERY COURT OF
MURFREESBORO, TENNESSEE

THIS 22nd DAY OF Nov'16
JOHN A.W BRATCHER, CLERK AND MASTER

BY
DEPUTY CLERK AND MASTER

3

loan # co5468 2515

**IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE**
**AT MURFREESBORO**

2016 NOV 22 PM 2: 28

IN THE MATTER OF:

CASE NO.: 16CV-1802

THE ESTATE OF RAUF ARY

CLERK AND MASTER

### AFFIDAVIT OF PERSONAL REPRESENTATIVE
### PURSUANT TO T.C.A. SEC. 67-8-409
(Waiving Tennessee Inheritance Tax Return)

The undersigned Personal Representative of the Estate of RAUF ARY, deceased, states under penalty of perjury as follows:

That the gross estate of the above deceased does not exceed $100,000.00 in fair market value and that to the best of the knowledge, information and belief of the Affiant the decedent did not make any gifts during deceased's lifetime in excess of the maximum allowable free of tax under T.C.A. Sec. 64-8-104.

That the undersigned Personal Representative hereby prays that the Court waive the filing of a Tennessee Inheritance Tax return by the Personal Representative and the filing of a Non-Taxable Certificate with his Petition to close the Estate.

Wherefore, Petitioner prays this Affidavit be accepted in lieu of a Non-Taxable Certificate from the Tennessee Department of Revenue.

_____
Personal Representative

### ACKNOWLEDGEMENT

STATE OF TENNESSEE
COUNTY OF RUTHERFORD

I, AHLAM ARY, being duly sworn, do hereby make oath and state that I am the Petitioner in the foregoing Petition, and that the facts stated herein are true to the best of my knowledge, information and belief.

_____

Sworn to and subscribed before me this _22nd_ day of _November_, 20_16_.

_____
Notary Public

My Commission Expires: _May 5, 2020_

DENISE H. LEPSELTER
STATE
OF
TENNESSEE
NOTARY
PUBLIC
...ON COUNTY
EXPIRES MAY 5...

RECEIPT *ban#ces486 2515*

*Judge Suskin*

Clerk & Master, John Bratcher
Rutherford County Chancery Court
20 N. Public Square Room 302
Murfreesboro, TN 37130
(615) 898-7860

No: 172905
Receipt Date: 11/22/2016
System Date: 11/22/2016

Received : LEGAL AID SOCIETY OF MID TN & THE

Total Amount Paid: $394.50

Payment Method/No: Business Check 57058 $394.50

Amount Tendered: $394.50
Amount Returned: $0.00

Case: 75CH1-2016-CV-1802
AHLAM ARY vs RAUF ARY;  On Behalf Of:  Plaintiff - AHLAM ARY

PAID IN FULL
Amount Paid: 394.50

Page 1 of 1

John Bratcher
By: *Janetta Jones*
Tanya Webster  tanya



FILED
2017 APR 18 PM 3:19
DAVIDSON CO. CHANCERY CT.
DC&M

# EXHIBIT E

# "Acar Ary Quitclaim Deed"

# QUITCLAIM DEED

**FROM: Acar Ary**                    **TO: Ahlam Ary**

This instrument prepared by David J. Tarpley, Attorney, 300 Deaderick Street, Nashville, TN 37201

| _NEW OWNER:_ | _SEND TAX BILL TO:_ | _MAP-PARCEL:_ |
|---|---|---|
| Ahlam Ary | Midland Mortgage | 148-14-206 |
| 109 Colemont Drive | PO Box 24814 | |
| Antioch, TN 37013 | Jacksonville, FL 32241 | |

FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00) and for other good and valuable consideration, receipt of which is hereby acknowledged and deemed sufficient, and for the express purpose of creating a fee simple title in Ahlam Ary, I, **Acar Ary**, Grantor, by these presents do hereby quitclaim and convey unto **Ahlam Ary,** Grantee, her successors and assigns, all my right, title and interest in and to the following described tract or parcel of land, in Davidson County, Tennessee, to-wit:

Land in Davidson County, Tennessee, being Lot No. 52 on the Plan of Haywood Forest Section 3 of record in Plat Book 5200. Page 245, Register's Office for said County, Tennessee, to which reference is hereby made for a more complete description.

Being the same property vested in Ahlam Ary and Acar Ary, as evidenced by Affidavit of Heirship recording as instrument number _____ Register's Office for Davidson County, Tennessee.

This is improved property known as 109 Colemont Drive Antioch, TN 37013.

Said property is conveyed subject to such liens, encumbrances and restrictions as may affect the property.

WITNESS my hand this 1ˢᵗ day of February, 2017.

_____
Acar Ary

STATE OF TENNESSEE
COUNTY OF KNOX

Personally appeared before me, _Karen J. Buchanan_, a Notary Public in and for said County and State, the within named Acar Ary the Bargainor, with whom I am personally acquainted, or who proved identity to me on the basis of satisfactory evidence, and who acknowledged that he executed the within instrument for the purposes therein contained.

WITNESS my hand and official seal at _Knoxville, TN_, this _1st_ day of _February_, 2017.

Notary Public

My commission expires: _May 5, 2019_

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STATE OF TENNESSEE
COUNTY OF KNOX

The actual consideration or value, whichever is greater, for this transfer is $0.00.

Affiant

Sworn and subscribed to before me this _1st_ day of _February_, 2017.

Notary Public

My commission expires: _May 5, 2019_

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *



# EXHIBIT F
# "Salwa Barwari Affidavit of Heirship"

**FROM**: Rauf Abdullah Ary          **TO:** Ahlam Ary, Acar Ary and Nisar Ary

| New Owner | Send Tax Bills To | Map Parcel No. |
|---|---|---|
| Ahlam Ary, Acar Ary and Nisar Ary | Midland Mortgage<br>PO Box 24814<br>Jacksonville, FL 32241 | 148-14-206 |

## AFFIDAVIT OF HEIRSHIP

STATE OF TENNESSEE    )
COUNTY OF DAVIDSON)

  Comes the affiant, <u>Salwa Barwari</u>, being first duly sworn according to law, and makes oath as follows:

  1. That I am familiar with the family history of <u>Rauf Abdullah Ary</u>, deceased, who was the owner at the time of his death of improved real property located at <u>109 Colemont Drive Antioch, Tennessee 37013</u> and more particularly described as follows:

Land in Davidson County, Tennessee, being Lot No. 52 on the Plan of Haywood Forest Section 3 of record in Plat Book 5200. Page 245, Register's Office for said County, Tennessee, to which reference is hereby made for a more complete description.

Being the same property conveyed to Rauf Abdullah Ary, by the deed of record in Book 11765, Page 860 Register's Office for Davidson County, Tennessee.

  2. That the said <u>Rauf Abdullah Ary</u> died intestate in Rutherford County, Tennessee on or about <u>October 04, 2015.</u>

  3. That said decedent left only the following persons surviving as heirs or otherwise interested in the estate:

  Ahlam Ary- Spouse

  Acar Ary, 18- Child

  Nisar Ary, 16- Child

4. That said decedent left no other children, living or deceased, or adopted children, or descendants of deceased or adopted children.

5. That said decedent did not leave a will or any other testamentary instrument.

6. That I am over the age of twenty-one years.

7. That I make this Affidavit of my own free will, without collusion with any person, and of my own knowledge.

8. That I have no interest, legal or otherwise, in said property.

FURTHER AFFIANT SAITH NOT

_____
Affiant: Salwa Barwari

STATE OF TENNESSEE   )
COUNTY OF DAVIDSON)

Personally appeared before me, _David J. Tarpley_, a Notary
Public in and for said County and State, the within named _Selwa Barwari_,
with whom I am personally acquainted, or who proved identity to me on the basis of satisfactory
evidence, and who acknowledged that she executed the within instrument for the purposes
therein contained.

WITNESS my hand and official seal at Nashville, Tennessee, this _3/_ day of
_January_, 20_17_.

Notary Public

My commission expires: _____

My Commission Expires MAY 8, 2018

This Instrument Prepared By:
David J. Tarpley, Attorney, 300 Deaderick Street, Nashville, TN 37201



FILED

2017 APR 18 PM 3: 20

DAVID ... ... ... ... ERY CT.

...DC&M

# EXHIBIT G

# "March 2017 Denial Letter"




**Midland Mortgage**
*A Division of MidFirst Bank*

March 2, 2017

ESTATE OF RAUF A ARY
109 COLEMONT DR
C/O AHLAM K ARY PERS REP
ANTIOCH TN 37013-3537



Dear Homeowner:

**THIS LETTER REQUIRES YOUR IMMEDIATE ATTENTION**

We have completed our review of your application to determine your eligibility for a mortgage assistance program.

**At this time, we are unable to offer you a mortgage assistance program due to the reason(s) specified in the "Non-Approval Notice / Notice of Action Taken" included with this letter.**

As you are aware, a foreclosure sale is scheduled to occur very soon. Please contact the foreclosure attorney **immediately** to confirm the actual sale date.

You are welcome to reapply if your circumstances have changed and the reason(s) for this denial no longer apply to you. You may also wish to seek further assistance from a HUD-approved housing counselor.

The following options are still available to help address your delinquency:

1. Call us at **1-800-552-3000** to reapply for a mortgage assistance program if your circumstances have changed.
2. Reinstate your loan by paying your delinquency in full plus any allowable outstanding fees. You may receive a reinstatement amount by contacting the foreclosure attorney assigned to your loan. If you need the attorney's contact information, please call us.
3. Consider alternatives that may allow you to avoid foreclosure by transitioning to more affordable housing after you have explored and exhausted all available options to stay in your home; we may have programs to assist you.

You may also wish to seek further assistance from a HUD-approved housing counselor.

**To locate a HUD-approved housing counselor near you, please contact the following:**

**HUD**
1-800-569-4287 (or TDD 1-800-877-8339)
www.HUD.gov/findacounselor

**Homeowner's HOPE™ Hotline**
1-888-995-HOPE (4673)
www.hopenow.com

**Your home is currently in foreclosure. Unless you can resolve your delinquency, it may be sold at a foreclosure sale in accordance with the terms of your Mortgage/Deed of Trust and applicable state law.**

If you have any questions regarding program eligibility requirements or to reapply, please call us at **1-800-552-3000**. Our office hours are Monday through Friday, 8 a.m. to 5 p.m. (Central Time).

Sincerely,

Delinquency Assistance Center
**Midland Mortgage,** *a Division of MidFirst Bank*

Enclosure(s)
**Notice:** If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt, but any default will need to be cured to avoid foreclosure. If your loan was in default at the time MidFirst Bank acquired servicing of your loan and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this



**Midland Mortgage Delinquency Assistance Center**
P.O. Box 268806 · Oklahoma City, OK 73126-8806 · Tel 1-800-552-3000 · Fax 1-405-767-5815 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Errors, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959



**Midland Mortgage**
*A Division of MidFirst Bank*

communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose.



**Midland Mortgage Delinquency Assistance Center**
P.O. Box 268806 · Oklahoma City, OK 73126-8806 · Tel 1-800-552-3000 · Fax 1-405-767-5815 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notice of Errors, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959



**Midland Mortgage**
*A Division of Midwest Bank*

# Non-Approval Notice / Notice of Action Taken

| | |
|---|---|
| ESTATE OF RAUF A ARY | March 2, 2017 |
| | 54882515 |
| 109 COLEMONT DR<br>C/O AHLAM K ARY PERS REP<br>ANTIOCH TN 37013-3537 | 109 COLEMONT DR<br>ANTIOCH TN 37013 |

At this time, we are unable to offer you a mortgage assistance program due to the following reason(s):

**Request Incomplete. You did not provide us with the documents required to evaluate you for a mortgage assistance program.**

Until you bring your loan current or other payment arrangements are made, collection and/or foreclosure efforts may continue on your loan. Additionally, your loan could be included in a Single Family Loan Sale Program as outlined by the Federal Housing Administration (FHA).

If you have any questions regarding your application, program eligibility requirements, or to reapply, please call us at 1-800-552-3000, Monday through Friday, 8 a.m. to 5 p.m. (Central Time).

**Midland Mortgage Delinquency Assistance Center**
P.O. Box 268806 · Oklahoma City, OK 73126-8806 · Tel 1-800-552-3000 · Fax 1-405-767-5815 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notice of Errors, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959



**Midland Mortgage**
A Division of MidFirst Bank

# Reasons to Avoid Foreclosure

- Loss of your home and requirement to leave the premises

- Time and expense to find a new place to live

- Cost to rent in your area may be higher than your current mortgage payment (if you qualify for assistance, your monthly payment could be lower than it is today)

- Cash outlays, such as deposits, first and last months' rent, and other expenses typically associated with moving and renting

- Negative impact to your credit score that could last up to 7 years, and how this may affect various aspects of your life

  - Access to lines of credit could be more difficult
  - Interest rates offered to you for secured loans (such as auto loans) and unsecured loans (such as credit cards) may be higher
  - Insurance rates offered to you may be higher
  - Ability to rent a home or apartment may be more difficult
  - Ability to purchase a new home in the future may be more difficult

- Loss of any home equity earned to date

# Transition to More Affordable Housing?

If you have explored and exhausted all available options to stay in your home, you may wish to consider transitioning to more affordable housing.

☐ **Sell your home.** The best way to transition to more affordable housing may be to sell your home and pay your home mortgage loan in full. This will allow you to avoid foreclosure.

☐ **Pre-foreclosure sale.** If you are unable to sell your home and pay the loan in full, you may qualify for a pre-foreclosure sale program. This program may allow you to avoid foreclosure by selling your home for an amount less than the total outstanding balance necessary to pay off your mortgage loan.

Call us at **1-800-552-3000** if you would like more information about the pre-foreclosure sale program.



**Midland Mortgage Delinquency Assistance Center**
P.O. Box 268806 · Oklahoma City, OK 73126-8806 · Tel 1-800-552-3000 · Fax 1-405-767-5815 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notice of Errors, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959

FILED

2017 APR 18 PM 3:20

DAVIDSON C. CHANCERY CT.

DC&M

# EXHIBIT H
# "Notice of Error"



# Legal Aid Society
## of Middle Tennessee & the Cumberlands

**Working Together. Doing Justice. Restoring Hope.**

300 Deaderick Street, Nashville, TN 37201
(615) 244-6610 • fax (615) 244-4920 • www.las.org

March 23, 2017

<u>VIA FACSIMILE AND US CERTIFIED MAIL</u>
<u>TRACKING NUMBERS: 9590 9401 0132 5225 5592 17</u>

Midland Mortgage                        Arnold M. Weiss
P.O. Box 24814                          Weiss & Cummins, PLLC
Jacksonville, Florida 32241             208 Adams Avenue
Fax: (405) 767-5500                     Memphis, Tennessee 38103
                                        Fax: (901) 526-3061

      Re:    **Ahlam Ary, Successor in Interest and Surviving Spouse of Rauf Ary**
           **109 Colemont Drive, Antioch, Tennessee, 37013-3573**
           **Midland Loan No. 54882515**
           **W&C File No. 1882-127860-FC**
           **Notice of Error**

Dear Midland Mortgage and Mr. Weiss,

      This communication constitutes a **Notice of Error** under the provisions of the Federal Real Estate Settlement Procedures Act (RESPA) and should be treated as such. This **Notice of Error** is subject to the response periods set out in Regulation X. Please note that the time in which responses are made to this **Notice of Error** will be closely monitored. Failure to appropriately respond within the time periods set forth in Regulation X could result in legal action.

      The errors which Ms. Ary seeks to correct by this letter are as follows:

1) Midland's refusal to acknowledge and treat Ms. Ary as the successor in interest to the property secured by the mortgage;
2) Midland's refusal to acknowledge that Ms. Ary has assumed the loan at issue, and;
3) Midland's wrongful denial of and refusal to properly process Ms. Ary's loss mitigation application.

LSC



I.  **Ms. Ary is the Successor in Interest to the Property Secured by the Mortgage. She is Entitled to Assume the Loan and Step Into the Shoes of the Original Borrower.**

Ms. Ary is considered the successor in interest under both Tennessee and federal law. In Tennessee, a successor in interest is defined as a person who becomes vested in ownership of real property which is also collateral security. Tenn. Code Ann. § 45-3-603. Since the property at issue is the collateral security for the mortgage at issue, and since Ms. Ary has become vested with a 100% ownership interest in the property at issue after the origination of the mortgage, she is a successor in interest under Tennessee law.

For purposes of RESPA, a successor in interest is defined as a person to whom an ownership interest in property securing a mortgage loan is transferred from a borrower, provided that the transfer falls into one of the "due-on-sale exemption" provisions set forth in the Garn-St. Germain Act. 12 C.F.R. § 1024.31; 12 U.S.C. § 1701j-3(d). One of the many "due-on-sale exemptions" set forth in the Garn-St. Germain Act includes transfers from a borrower to a relative of the borrower resulting from the death of the borrower. Here, the transfer of the property at issue to Ms. Ary resulted from the death of the borrower, her husband. Because the type of transfer under which Ms. Ary received her ownership interests prohibits enforcement of the "due-on-sale" provision contained in the deed of trust, Ms. Ary is a successor in interest under RESPA.

A successor in interest is entitled to many well-recognized rights pertaining to the servicing of the mortgage securing the real property. Chief among these is the right to be identified and communicated with regarding the property secured by the deceased borrower's mortgage loan. 12 C.F.R. § 1024.38(b)(1)(vi).

It appears from the record that Midland has yet to properly identify Ms. Ary as the sole owner and successor in interest to the property secured by the original borrower's mortgage. Midland has insisted on being provided with unnecessary, non-existent documentation which it alleges would demonstrate Ms. Ary's ownership interest in the property. Ms. Ary has provided all the necessary documentation which would show she is the sole owner of the property at issue. This documentation includes the death certificate of the original borrower, a recorded quitclaim deed from the only other heir to Ms. Ary, and a recorded affidavit of heirship. Though Ms. Ary has already provided these documents, they are enclosed with this letter for your convenience. These documents together show that Ms. Ary is the sole owner of the property. Any assertion to the contrary is simply incorrect. Again, as the sole owner of the property secured by the mortgage at issue, Ms. Ary is the successor in interest. The refusal of Midland to properly deal with Ms. Ary is in derogation of its duties as the loan servicer as set forth in the regulations promulgated under RESPA. Demand is hereby made that Midland acknowledge in writing Ms. Ary's status as the successor in interest.

Case 3:17-cv-00948   Document 1-2   Filed 06/15/17   Page 123 of 191 PageID #: 134

Another right granted to Ms. Ary as the successor in interest is here ability to freely assume loan. She may do so without the prior approval of the servicer. Included within the group of transferees who may freely assume a mortgage are persons who have succeeded to ownership of a home through a Garn-St. Germain-exempt transfer. *See* Sarah Bolling Mancini and Alys Cohen, *Surviving the Borrower: Assumption, Modification, and Access to Mortgage Information After a Death or Divorce* (February 27, 2015), 43 Pepp. L. Rev. (2016). Again, the transfer of the home to Ms. Ary is a Garn-St. Germain-exempt transfer because it resulted from the death of the original borrower who was also Ms. Ary's husband. Since this transfer is a Garn-St. Germain-exempt transfer, thus rendering the "due-on-sale" provision of the Deed of Trust unenforceable, Ms. Ary can freely assume the loan.

In order to assume a loan, a successor who is able to freely assume the loan need not execute a formal document or employ any particular language. Signing a loan modification agreement or promising to make the payments on the note may be sufficient. See *Brush v. Wells Fargo Bank*, 911 F. Supp. 2d 445, 462–63 (S.D. Tex. 2013); *see also Carpenter v. United States*, 69 Fed. Cl. 718, 725 (Fed. Cl. 2006) ("Any words indicating the transferee's intent to undertake personal liability for the obligation will suffice."). In other words, all that is needed in order to effectuate the loan assumption is communication from Ms. Ary of her intent to be obligated under the loan taken out by the original borrower. Ms. Ary has made such intent clear by her numerous communications and attempts to exercise the rights granted to her as the successor in interest, including her right to seek a loan modification.

Once a successor in interest assumes the loan, she steps into the shoes of the borrower, with all the rights and responsibilities thereof. *Brush v. Wells Fargo*, 911 F. Supp. 2d 445 (S.D. Tex. 2012); *McGarvey v. JPMorgan Chase Bank*, 2013 WL 5597148 (E.D. Cal. Oct. 11, 2013). In other words, upon assumption, the successor homeowner becomes a borrower, with all the attendant rights and obligations. Since Ms. Ary has assumed the mortgage at issue, she has stepped into the shoes of the original borrower and is given the same rights and protections as the original borrower under RESPA, the CFPB regulations, and all other applicable laws. *See, e.g. Wilson v. Bank of Am.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014) (allowing a successor in interest to proceed with claims for breach of contract, unfair practices, and RESPA violations).

In order to avoid unnecessary, expensive, and lengthy litigation regarding this mortgage, Midland should immediately begin treating Ms. Ary just as they would an original borrower. Specifically, Midland should process the complete loss mitigation application Ms. Ary has submitted, and let Ms. Ary know all the loss mitigation options for which she is eligible. Failure to do so and to continue to pursue foreclosure on Ms. Ary's home will result in legal action.

## II. Midland has Wrongfully Denied Ms. Ary's Loss Mitigation Application.

On March 2, 2017, Midland sent Ms. Ary a letter informing her that her loss mitigation application had been denied. In the letter, Midland lists the mortgagor as the "estate of Rauf A. Ary", further confirming the assertion that Midland has refused to recognize Ms. Ary as the successor in interest and refuses to recognize that Ms. Ary has assumed the loan.

The basis for the denial alleges that Ms. Ary's application is incomplete and that she did not provide the documents required to be evaluated for mortgage assistance. Importantly, the letter does not mention exactly which documents are allegedly still missing. The likely reason for this is that Midland is not actually missing any documents which would justify its determination that Ms. Ary's application is incomplete. Further, Midland's bald assertion that Ms. Ary's request is incomplete, without specifying exactly what documents are still required in order to complete her request, is a violation of RESPA. 12 C.F.R § 1024.41(b)(2)(i)(B); *See McKerracher v. Green Tree Servicing, LLC,* 2015 WL 9942621 (W.D. Mich. Dec. 17, 2015) (Servicer was required to identify additional documents and information needed to complete application). Demand is hereby made that Midland immediately inform Ms. Ary what documents are needed in order to complete her application.

That being said, the record shows that Midland is not missing any documentation necessary to complete Ms. Ary's loss mitigation application. A chronological summary of all the documentation provided to Midland by Ms. Ary is enclosed with this letter. Since submitting her full loan modification application in 2016, Midland has requested additional documentation or information from Ms. Ary on at least 12 different occasions. Each time the requested additional documentation was promptly sent to Midland, with exception of the bizarre request for a quitclaim deed from Ms. Ary to herself. Such a quitclaim deed is, quite frankly, unheard of. The claim that this document is needed in order to process Ms. Ary's loan modification request is simply absurd. Ms. Ary is the unquestionable sole title owner to the home. A quitclaim deed from herself to herself is unnecessary and Midland's demand for such documentation demonstrates its lack of good faith in processing Ms. Ary's application.

Again, since Ms. Ary's application was complete well before the denial letter sent to her on March 2, 2017, Midland needs to reopen Ms. Ary's application, process it, and inform Ms. Ary of all the loss mitigation options she is entitled to under the law. Failure to do so before the scheduled foreclosure sale will result in legal action.

Case 3:17-cv-00948 Document 1-2 Filed 06/15/17 Page 125 of 191 PageID #: 136

III.  **Midland's Refusal to Properly Process Ms. Ary's Loss Mitigation Application is a Violation of RESPA and Gives Rise to Private Right of Action.**

As stated above, Ms. Ary, is the successor in interest and, having assumed the loan, has the same rights as original borrower. Thus, she is protected under RESPA. RESPA prohibits certain servicing errors. For example, servicers are required to process a loan mitigation application and assumption of a loan simultaneously, provided the law allows for the loan's assumption. Failure to process a loss mitigation application and an assumption simultaneously is a servicing error which gives rise to a private right of action under RESPA. *See Wells Fargo Bank. v. Wallace,* 20 N.Y.S.3d 295 (N.Y. Sup. Ct. 2015) (bank's attempt to circumvent HAMP guidelines by requiring widow to first reinstate the loan before it would allow her to assume the mortgage and consider her for a HAMP modification was wrongful). It is also servicing error to fail to properly process a loan modification application or to consider a borrower for all possible loss mitigation options. 12 C.F.R. § 1024.41(c)(1)(i) & (ii); 12 C.F.R § 102.35(b)(7). Finally, it is a servicing error to improperly deny a loss mitigation application. 12 C.F.R. § 1024.35(b)(11).

Midland has committed all of the servicing errors listed above. In order to rectify these servicing errors, Midland needs to reopen Ms. Ary's loss mitigation application, process the application it has been provided, and let Ms. Ary know what loss mitigation options she qualifies for. Continued insistence that Ms. Ary's application is incomplete, especially without reference to the documents Midland is alleging it is still missing, will be met with legal action to stop any potential foreclosure.

Again, please respond to this **Notice of Error** within the timeframes set forth under RESPA. Your response should describe in detail the actions Midland will take to rectify the errors identified in this letter. If you have any questions or concerns related to the contents of this letter, please send them to me in writing. I look forward to your prompt response.

Very truly yours,

David Tarpley
Attorney at Law

DT/sdk/tf

Enclosures:
- Death Certificate of Original Borrower
- Recorded quitclaim deed from Acar Ary to Ahlam Ary
- Recorded Affidavit of Heirship of Salwa Barwari
- Chronological summary of documentation sent to Midland

Case 3:17-cv-00948   Document 1-2   Filed 06/15/17   Page 126 of 191 PageID #: 137



# EXHIBIT I

# "Simple Loan Assumption"

## SIMPLE ASSUMPTION AGREEMENT
(without release of liability)

Loan Number 005488515

THIS AGREEMENT is made and entered into this __12__ day of __April__ 20 __17__ among:

**Ahlam Ary** (hereinafter referred to as the "Purchaser") and

**estate of Rauf Ary** (hereinafter referred to as the "Seller")

### WITNESSETH

WHEREAS, Lender is the owner and/or holder of a valid and existing promissory note secured by mortgage, deed of trust or security deed and any modifications (such note and security instrument and modifications collectively referred to as the "Mortgage"). MidFirst Bank, through its servicing division, Midland Mortgage services the Mortgage on behalf of Lender. The property which is encumbered by the Mortgage and which is the subject property of this Agreement is located at:

**109 Clement Dr. Antioch, TN 37013** (Property Address)

WHEREAS, Purchaser has contracted for or will purchase the real property encumbered by the Mortgage and

WHEREAS, Seller will not be released of any liability under the Mortgage;

NOW, THEREFORE, in consideration of the covenants and agreements herein contained, the parties do hereby covenant and agree as follows:

1. Purchaser hereby agrees to assume and to pay the indebtedness and obligations under the Mortgage and further agrees to abide and fulfill the terms, conditions and provisions contained in the Mortgage as fully and completely as if Purchaser was a signatory to the Mortgage at the time of its execution and delivery.

2. Purchaser and Seller understand that the assumption is not effective and Lender will not update its records to reflect the Purchaser as Mortgagor until Lender has received all documentation required for the assumption and, if applicable, any contemplated payment assistance plan documentation or requirements. Notwithstanding any language to the contrary in the Mortgage, Seller shall not be released from the liability under the Mortgage

3. This Agreement shall not be effective until executed by all parties with a fully executed original or counterpart received by the Lender and upon Lender's receipt of all required documentation.

4. This Agreement shall be binding upon the parties, their respective successors, representatives, assignees and assignees.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year hereinabove written.

_Ahlam Ary_                               _Ahlam Ary_          (administrator of estate of
"PURCHASER"                              "SELLER"   (as estate      Rauf Ary)

_____                  _____
"PURCHASER"                              "SELLER"

STATE OF __Tennessee__
                                    ) SS:
COUNTY OF __Montgomery__            )

On the __12__ day of __April__ 20 __17__, before me, the undersigned, a notary public in and for said state, personally appeared __Ahlam Ary__ _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to in the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.
In witness whereof, I hereunto set my hand and official seal.

_signature_
Notary Public

My Commission Expires: __July 17, 2018__

(Notary seal: SAMUEL D. KEEN / STATE OF TENNESSEE NOTARY PUBLIC / MONTGOMERY COUNTY)

STATE OF _____
                                    ) SS:
COUNTY OF _____               )

On the ____ day of _____ 20 ___, before me, the undersigned, a notary public in and for said state, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to in the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.
In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: _____

Please return completed agreement to:
Midland Mortgage, A Division of MidFirst Bank.
P.O. Box 26648
Oklahoma City, OK 73126

Revised 06/12/15

## CHANGE OF OWNERSHIP AND ESCROW ASSIGNMENT

### MIDLAND MORTGAGE, A DIVISION OF MIDFIRST BANK
PO BOX 26648, OKLAHOMA CITY, OK 73126
1-800-654-4566

0054862515                109 Clement Dr Antioch TN 37013
Loan Number                Property Address

### BUYER INFORMATION

Anlam Ary
Primary Name          Primary Social Security No.    6A3 663 0158    ( )
                                                     Primary Home Phone    Primary Work Phone

Primary Place of Employment

Secondary Name        Secondary Social Security No.   ( )              ( )
                                                     Secondary Home Phone    Secondary Work Phone

Secondary Place of Employment

Mailing address for notices and correspondence: _____

(If other than property address) _____

_____

### SELLER INFORMATION

Estate of Pawt Ary          N/a deceased    ( )
Primary Name          Primary Social Security No.    Primary Home Phone    Primary Work Phone

Secondary Name        Secondary Social Security No.   ( )              ( )
                                                     Secondary Home Phone    Secondary Work Phone

Forwarding address for year-end tax and interest information:   N/a deceased

_____

_____

### HAZARD INSURANCE INFORMATION

The existing insurance policy may NOT be transferred. It is the Buyer's responsibility to furnish new insurance coverage with a paid receipt for the first year. If insurance coverage is not provided, Midland Mortgage will obtain insurance coverage at the Buyer's expense. Flood, earthquake, or other special insurance will be required when applicable. The new hazard and/or flood policy must contain the following mortgage clause:

MIDLAND MORTGAGE, A DIVISION OF MIDFIRST BANK
ITS SUCCESSORS AND ASSIGNS
PO BOX 163529
FORT WORTH, TX 76161-3529
MIDLAND LOAN NUMBER

The loan number is a required portion of the mortgage clause as it is our method of identification.
**Please note that any refund from the Seller's policy will be assigned to the Seller.**

### PAYMENT INFORMATION AND ESCROW ASSIGNMENT

Midland Mortgage is not responsible for any expenses in connection with this transaction or for any payments applied prior to the transfer, but later returned unpaid due to insufficient funds, uncollected funds, stop payment, etc. Late charges will be assessed on any payments received after the late charge assessment date. Any payments or fees not paid at the time of the transfer of ownership will become the responsibility of the Buyer.

The existing escrow impound balance will become the property of the Buyer. Any arrangements or disputes regarding escrow funds must be resolved directly between the Seller and Buyer.

Midland Mortgage will not prorate daily interest between the Seller and Buyer.

_Ahlam Ary_            4/12/17              _Ahlam Ary_            4/12/17
Seller Signature (estate of     Date          Buyer Signature          Date
Pawt Ary)

Seller Signature          Date              Buyer Signature          Date

Last Revised 05/12/15

Form **W-9**

(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer**
**Identification Number and Certification**

Give Form to the
requester. Do not
send to the IRS.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Anlum Ary

2 Business name/disregarded entity name, if different from above

Na

3 Check appropriate box for federal tax classification; check only one of the following seven boxes:

☑ Individual/sole proprietor or
single-member LLC
☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for
the tax classification of the single-member owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to
certain entities, not individuals; see
instructions on page 3):

Exempt payee code (if any) N/A

Exemption from FATCA reporting
code (if any)

*(Applies to accounts maintained outside the U.S.)*

5 Address (number, street, and apt. or suite no.)

109 Clement Drive

6 City, state, and ZIP code

Antioch TN 37013

Requester's name and address (optional)

7 List account number(s) here (optional)

**Part I    Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid
backup withholding. For individuals, this is generally your social security number (SSN). However, for a
resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other
entities, it is your employer identification number (EIN). If you do not have a number, see How to get a
TIN on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for
guidelines on whose number to enter.

Social security number

Employer identification number

**Part II    Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue
Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am
no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding
because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage
interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and
generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the
instructions on page 3.

**Sign**
**Here**

Signature of
U.S. person ▶

Date ▶ 4/12/17

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. Information about developments affecting Form W-9 (such
as legislation enacted after we release it) is at www.irs.gov/fw9.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information
return with the IRS must obtain your correct taxpayer identification number (TIN)
which may be your social security number (SSN), individual taxpayer identification
number (ITIN), adoption taxpayer identification number (ATIN), or employer
identification number (EIN), to report on an information return the amount paid to
you, or other amount reportable on an information return. Examples of information
returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by
brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T
(tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to
provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject
to backup withholding. See What is backup withholding? on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number
to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If
applicable, you are also certifying that as a U.S. person, your allocable share of
any partnership income from a U.S. trade or business is not subject to the
withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are
exempt from the FATCA reporting, is correct. See What is FATCA reporting? on
page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

**IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE**
**TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY**

_Anam c Ary_
_____
Plaintiff(s)

Docket No. _17-371-IV_

Vs.

_Midland Mortgage Company & Weiss & Cummins PLLC_
_____
Defendant(s).

Method of Service*:
☐ Davidson County Sheriff
☐ Commissioner of Insurance
☐ Secretary of State
☐ Out of County Sheriff
☑ Attorney
*Attach Required Fees

Address for Service:
_We155 & Cummins Arnold We155_
_208 Adams Ave._
_Memphis, TN 38103_

FILED 2017 APR 18 PM 3:37 DAVIDSON CHANCERY CT.

### ORDER SETTING HEARING

**RTf** It appearing to the Court that the _Plaintiff_ has filed an application for a temporary injunction pursuant to Rule 65.02,

Tennessee Rules of Civil Procedure, it is accordingly ORDERED that a hearing be held upon the application for injunctive relief on

**RTf** the _25th_ day of _April_, _2017_, at _1:30_, P.M., before Part _IV_ of this court.
**RTf** _This will be a non-evidentiary hearing._

_Russell ___
CHANCELLOR

---

Issued this _____ day of _____, _____ at _____ o'clock _____.M.

MARIA M. SALAS, Clerk and Master    By _____ D.C. & M.

_____
ATTORNEY FOR _____ - PHONE NUMBER

---

### * NOTICE *

Rule 19.04 of the rules of this Court provides that hearings on applications for temporary injunctions are to be heard upon affidavits or depositions unless a request for the introduction of oral testimony is made prior to the hearing. If introduction of oral testimony is requested, all parties or counsel must be notified.

---

Received this _____ day of _____, _____    _____
Sheriff – Deputy Sheriff

---

### RETURN ON SERVICE

I hereby certify and return that on the _____ day of _____, _____, I served a true copy of this

order upon _____ as follows: _____

_____

_____
Sheriff – Deputy Sheriff – Special Officer

**ADA Coordinator, Maria M. Salas (862-5710)**

**IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE**
**TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY**

Anum *e. Ary
_____
Plaintiff(s)

Docket No. 17-371-IV

Vs.

Midland Mortgage Company & Weiss & Cummins PLLC
_____
Defendant(s).

Method of Service*:
- ☐ Davidson County Sheriff
- ☐ Commissioner of Insurance
- ☐ Secretary of State
- ☐ Out of County Sheriff
- ☑ Attorney
*Attach Required Fee

FILED 2017 APR 18 PM 3:37 DAVIDSON CHANCERY CT. DC&M

Address for Service:
Weiss & Cummins Arnold Weiss
208 Adams Ave.
Memphis TN 38103

### ORDER SETTING HEARING

RTP It appearing to the Court that the **Plaintiff** has filed an application for a temporary injunction pursuant to Rule 65.02,

Tennessee Rules of Civil Procedure, it is accordingly ORDERED that a hearing be held upon the application for injunctive relief on

RTP the **25th** day of **April**, **2017**, at **1:30**, **P**.M., before Part **IV** of this court.

RTP This will be a non-evidentiary hearing.

_____
Russell T. Perkins
CHANCELLOR

---

Issued this **18th** day of **April** **2017** at **3:40** o'clock **P**.M.

MARIA M. SALAS, Clerk and Master    By _____ D.C. & M.

David J. Tarpley 615-780-7112
ATTORNEY FOR _____  PHONE NUMBER

---

### * NOTICE *

Rule 19.04 of the rules of this Court provides that hearings on applications for temporary injunctions are to be heard upon affidavits or depositions unless a request for the introduction of oral testimony is made prior to the hearing. If introduction of oral testimony is requested, all parties or counsel must be notified.

---

Received this _____ day of _____, _____    _____
                                                          Sheriff – Deputy Sheriff

---

### RETURN ON SERVICE

I hereby certify and return that on the _____ day of _____, _____, I served a true copy of this

order upon _____ as follows: _____

_____

_____
Sheriff – Deputy Sheriff – Special Officer

⚕ ADA Coordinator, Maria M. Salas (862-5710)

# ORIGINAL

## IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
## TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY

_Anum & Ary_
Plaintiff(s)

Docket No. _17-371-IV_

Vs.

_Midland Mortgage Company & Weiss & Cummins PLLC_
Defendant(s)

Address for Service:
_Weiss & Cummins Attorneys_
_208 Adams Ave -_
_Memphis, TN 38103_

Method of Service*:
☐ Davidson County Sheriff
☐ Commissioner of Insurance
☐ Secretary of State
☐ Out of County Sheriff
☑ Attorney
*Attach Required Fees

## ORDER SETTING HEARING

**RTI** It appearing to the Court that the _Plaintiff_ has filed an application for a temporary injunction pursuant to Rule 65.02,

Tennessee Rules of Civil Procedure, it is accordingly ORDERED that a hearing be held upon the application for injunctive relief on

**RTI** the _25th_ day of _April_ , _2017_, at _1:30_ , _P_ .M., before Part _IV_ of this court.

**RTI** _This will be a non-evidentiary hearing._

_Russell T. Perkins_
CHANCELLOR

Issued this _18th_ day of _April_ _2017_ at _3:40_ o'clock _P_ .M.

MARIA M. SALAS, Clerk and Master    By _[signature]_ D.C. & M.

_David J. Tarpley 615-780-7112_
ATTORNEY FOR _____ – PHONE NUMBER

## * NOTICE *

Rule 19.04 of the rules of this Court provides that hearings on applications for temporary injunctions are to be heard upon affidavits or depositions unless a request for the introduction of oral testimony is made prior to the hearing. If introduction of oral testimony is requested, all parties or counsel must be notified.

Received this _____ day of _____, _____.

_____
Sheriff – Deputy Sheriff

## RETURN ON SERVICE

I hereby certify and return that on the _18_ day of _April_ , _2017_, I served a true copy of this

order upon _Midland Mortgage & Weiss & Cummins_ as follows: _Midland by fax_

_(405-767-5500); Weiss by email at firm@weisscummins.com_

_per my copy_
Sheriff – Deputy Sheriff – Special Officer _Atty for plaintiff_



**Tre Hargett**
Secretary of State

FILED

2017 MAY 11  AM 11: 21

CLERK & MASTER
DAVIDSON CO. CHANCERY CT

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

## AFFIDAVIT AND ENDORSEMENT

Case #: **17-371-IV**                                                    05/04/2017

Certified #: **70162140000014630027**                    SOS Summons #: 04223932

RE: **AHLAM K. ARY**

VS: **MIDLAND MORTGAGE COMPANY AND WEISS & CUMMINS, PLLC**

I, <u>DARLENE LAWRENCE</u>, having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows:

That on <u>04/26/2017</u>, I received from the plaintiff the original and certified copies of the process, notice or demand issued against <u>MIDLAND MORTGAGE COMPANY</u> whose address is: <u>999 N.W. GRAND BLVD, OKLAHOMA CITY, OK 73118</u>, and that on <u>04/27/2017</u>, I mailed by registered or certified return-receipt mail the certified copies of the process, notice, or demand to the above address together with a written notice that service was made.

I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on <u>05/04/2017</u>, and returned to <u>DAVIDSON COUNTY - CHANCERY COURT of NASHVILLE, TN</u> on <u>05/04/2017</u>.

*Tre Hargett*

Tre Hargett
Secretary of State

By: *Darlene Lawrence-POA*

Sworn to and subscribed before me this

<u>4</u> day of <u>May</u>, 20<u>17</u>

_____

Notary Public

My Commission Expires: <u>1.9.2018</u>

SS-4201(Rev. 9/15)                                                                                    RDA 1003

# COPY

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>17-371- IV |
|---|---|---|
| PLAINTIFF<br>Ahlam K. Ary | DEFENDANT<br>Midland Mortgage Company and<br>Weiss & Cummins, PLLC | |

TO:   (NAME AND ADDRESS OF DEFENDANT)

Midland Mortgage Company
999 N.W. Grand Blvd.
Oklahoma City, OK 73118
SERVE:  TN Secretary of State
          312 Rosa L. Parks Ave., 6th Floor
          Nashville, TN 37243

List each defendant on a separate summons.

Method of Service:

- [ ] Certified Mail
- [ ] Davidson Co. Sheriff
- [ ] *Comm. Of Insurance
- [x] *Secretary of State
- [ ] *Out of County Sheriff
- [ ] Private Process Server
- [ ] Other
      *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br>David J. Tarpley  615-780-7113<br>Samuel Keen  615-780-7114<br>Legal Aid Society of Middle TN and the Cumberlands<br>300 Deaderick Street<br>Nashville, TN 37201 | FILED, ISSUED & ATTESTED<br><br>APR 1 8 2017<br><br>**MARIA M. SALAS, Clerk and Master**<br>By:          1 Public Square<br>              Suite 308<br>              Nashville, TN 37201<br><br>Deputy Clerk & Master |
|---|---|

## NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED | |
|---|---|---|
| | Sheriff | RECEIVED STATE OF TENNESSEE<br>2017 APR 26  AM 9: 15<br>TRE HARGETT<br>SECRETARY OF STATE |

***Submit one original plus one copy for each defendant to be served.**

ADA Coordinator, Maria M. Salas (862-5710)

# RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows:  (Name of Party Served) _____

☐ Served _____
☐ Not Served _____

☐ Not Found _____
☐ Other _____

DATE OF RETURN: _____

By: _____

Sheriff/or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

**Sworn to and subscribed before me on this _____ day of _____ _____, 20___.**

Signature of _____ Notary Public or _____ Deputy Clerk

My Commission Expires: _____

Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process.

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment.  If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court.  The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.  Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them.  If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to: Clerk & Master
1 Public Square
Suite 308
Nashville TN 37201

Please state file number on list.

## CERTIFICATION (IF AP

I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case.

MA

By: _____

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MIDLAND MORTGAGE COMPANY
999 N.W. GRAND BLVD
OKLAHOMA CITY, OK 73118

9590 9402 1906 6104 9928 69

2. Article Number (Transfer from service label)
7016 2140 0000 1463 0027

PS Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X

B. Received by (Printed Name)        C. Date of Delivery
WEST

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

HUDSON CO. CHANCERY
CLERK & MASTER

MAY 11 AM 11:

FILE

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

# ORIGINAL

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | SUMMONS | CASE FILE NUMBER 17-371-IV |
|---|---|---|

| PLAINTIFF Ahlam K. Ary | DEFENDANT Midland Mortgage Company and Weiss & Cummins, PLLC |
|---|---|

**TO:** (NAME AND ADDRESS OF DEFENDANT)

Weiss & Cummins, PLLC
Serve: Arnold M. Weiss
     208 Adams Avenue
     Memphis, TN 38103-1922

List each defendant on a separate summons.

Method of Service:

☑ Certified Mail
☐ Davidson Co. Sheriff
☐ *Comm. Of Insurance
☐ *Secretary of State
☐ *Out of County Sheriff
☐ Private Process Server
☐ Other
    *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) David J. Tarpley 615-780-7113 Samuel Keen 615-780-7114 Legal Aid Society of Middle TN and the Cumberlands 300 Deaderick Street Nashville, TN 37201 | FILED, ISSUED & ATTESTED APR 18 2017  MARIA M. SALAS, Clerk and Master By: 1 Public Square Suite 308 Nashville, TN 37201  Deputy Clerk & Master |
|---|---|

## NOTICE OF DISPOSITION DATE

    The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

    If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

***Submit one original plus one copy for each defendant to be served.**

ᏝADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served _____     ☐ Not Found _____

☐ Not Served _____     ☐ Other _____

| DATE OF RETURN: | By: |
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _18th_ day of _April_____, 20_17_, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _17-031-IV___ to the defendant _Weiss & Cummins PLLC_ . On the _20th_ day of _April_____, 20_17_, ~~I received the return receipt, which had been signed by~~ _Delivery was made_ printout from USPS website showing delivery attached. ~~on the ___ day of _____, 20___~~

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| **Sworn to and subscribed before me on this** _11th_ day of _May_ , **20**_17_ | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
| Signature of ✓ Notary Public or ___ Deputy Clerk | _[signature]_ |
| My Commission Expires: _July 8, 2019_ | Return receipt never returned. |

PATRICIA HYLTON ... PUBLIC _(notary seal)_

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to: Clerk & Master
1 Public Square
Suite 308
Nashville TN 37201

Please state file number on list.

_Return receipt never returned._

_Tracking printout from USPS website showing delivery is attached._

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master |
| | By: _____ D.C. & M. |

FILED

2017 MAY 11 AM 9:40

CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

D.C.&M

7011 3500 0002 7760 7163

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To Ne'fss

Street, Apt. No.; 205 Adams Ave
or PO Box No.

City, State, ZIP+4 Nashville TN 38103

PS Form 3800, August 2006     See Reverse for Instructions

**Tracking Number:** 70113500000277607163

Remove X

> **Delivered**

Updated Delivery Day: Thursday, April 20, 2017 ⓘ
## Product & Tracking Information

See Available Actions

Postal Product:
Features:
Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| April 20, 2017, 2:00 pm | Delivered, Front Desk/Reception | MEMPHIS, TN 38103 |
| | Your item was delivered to the front desk or reception area at 2:00 pm on April 20, 2017 in MEMPHIS, TN 38103. | |
| April 20, 2017, 5:40 am | Arrived at Unit | MEMPHIS, TN 38103 |
| April 19, 2017, 7:48 am | Arrived at USPS Facility | MEMPHIS, TN 38136 |
| April 19, 2017, 7:35 am | Departed USPS Facility | MEMPHIS, TN 38118 |
| April 19, 2017, 5:39 am | Arrived at USPS Facility | MEMPHIS, TN 38118 |
| April 19, 2017, 12:45 am | Departed USPS Facility | NASHVILLE, TN 37227 |
| April 18, 2017, 11:17 pm | Arrived at USPS Facility | NASHVILLE, TN 37227 |

See Less ⌃

# IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
## TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, PART IV

AHLAM K. ARY,            )
                               )

    **Plaintiff,**           )

                               )

**vs.**                      )      CASE NO.  17-0371-IV

                               )

**MIDLAND MORTGAGE COMPANY and**  )
**WEISS & CUMMINS, PLLC,**    )

                               )

    **Defendants.**        )

## ORDER GRANTING TEMPORARY INJUNCTION

On April 18, 2017, Plaintiff Ahlam K. Ary ("Ms. Ary" or "Plaintiff") sued Defendants, Midland Mortgage Company and Weiss & Cummins, PLLC ("Midland" and "Weiss," respectively; "Defendants" collectively), seeking a temporary injunction preventing Weiss from selling Ms. Ary's house on April 27, 2017, a permanent injunction, damages, and other relief.  Ms. Ary's Verified Complaint ("Complaint") contains the following four counts:  1) Violation of the Federal Real Estate Settlement Procedures Act ("RESPA"), Regulation X; 2) Violation of the Federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et. seq.*; 3) Breach of Contract; and 4) Promissory Estoppel.  On April 18, 2017, the Court entered an Order setting Ms. Ary's application for a temporary injunction for non-evidentiary hearing on April 25, 2017 at 1:30 p.m., which was held as scheduled.[1]

---

[1] Neither Defendant filed a written response to Plaintiff's application for a temporary injunction. Additionally, no one appeared on behalf of the named Defendants. Local counsel (Duane W. Devault, Esquire) for the entity identified in court as the actual *servicer* of Plaintiff's loan (MidFirst Bank) announced that he was making a "special and limited appearance" on behalf of MidFirst Bank at the hearing. Mr. Devault made certain statements for the record concerning appropriate entities, potential arrearages, and what might be the current status of Plaintiff's request for a loan modification. Although Mr. Devault did not offer a vigorous or substantive opposition to Plaintiff's application for a temporary injunction, he did not want the record to reflect that MidFirst Bank had no opposition to Plaintiff's request for a temporary injunction.

## Applicable Standard

In deciding a motion for temporary injunction, the inquiry is based on the language of Tenn. R. Civ. P. 65.04(2), which reads in its entirety as follows:

> A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

*Id.* In following this language, Tennessee appellate courts have distilled four factors for the Court's consideration in determining whether to grant a temporary injunction:

1) The threat of irreparable harm to the applicant if the injunction is not granted;

2) The balance between the harm the applicant is seeking to prevent and the injury that granting the injunction would inflict on the party the applicant is proposing to enjoin;

3) The probability that the applicant will succeed on the merits; and

4) The public interest.

*See Moody v. Hutchison*, 247 S.W.3d 187, 199-200 (Tenn. Ct. App. 2007). These factors are considerations, not a hard and fast test. Ultimately, the above-quoted language of Tenn. R. Civ. P. 65.04(2) controls the Court's disposition of a temporary injunction request. Under Tenn. R. Civ. P. 65.04(6), the Court is required to "set forth findings of fact and conclusions of law which constitute the grounds of its action." *Id.*

## Findings of Fact

Based on the current state of the record, the Court makes the following preliminary findings of fact:

1. Ms. Ary lives at her home (the "Property") at 109 Colemont Drive, Antioch, Davidson County, Tennessee; she now maintains 100% title interest in her

2

home. At all relevant times, Midland or MidFirst Bank[2] serviced the mortgage on the Property. Ms. Ary lived in this home with her husband, Rauf Ary ("Mr. Ary"), until he passed away on October 4, 2015.

2. Midland is an Oklahoma corporation qualified to do business in Tennessee, with its principal place of business in Oklahoma City, Oklahoma.

3. Weiss is a Tennessee corporation, with is principal place of business in Memphis, Tennessee. As the substitute trustee (appointed on or about December 2, 2016) in the applicable Deed of Trust, Weiss has responsibility for any potential foreclosure of Ms. Ary's home.

4. Mr. Ary purchased the Property solely in his name in November 1999. He passed away intestate on October 4, 2015.

5. On or about February 3, 2017, Ms. Ary's son, Acar Ary, quitclaimed any interest he might have in the Property. Ms. Ary caused this quitclaim deed to be recorded with the Davidson County Register of Deeds.

6. Ms. Ary was able to keep up the payments on her home after her husband's death until the Spring of 2016, when she began to fall behind. Ms. Ary has been in contact with Midland trying to work out the arrearages and reach a modified arrangement on a going-forward basis.

7. With the assistance of the Legal Aid Society of Middle Tennessee and the Cumberlands ("Legal Aid"), Ms. Ary sent a completed Request for Mortgage Assistance ("RMA") to Midland on or about August 29, 2016. Ms. Ary's RMA included documentation showing Ms. Ary's income and a hardship affidavit.

---

[2] *See* footnote 1 on page 1.

3

8. On about September 6, 2016, Ms. Ary, through one of the representatives at Legal Aid who was assisting her, Tabitha Faulconer ("Ms. Faulconer"), a paralegal, called Midland for an update on Ms. Ary's RMA. On or about September 9, 2016, in response to Midland's statement concerning what else was needed to complete Ms. Ary's RMA, Ms. Faulconer faxed Midland Ms. Ary's signed credit authorization.

9. On or about September 19, 2016, Ms. Faulconer called Midland for an update. Midland stated that it need another signed credit authorization, Ms. Ary's two most recent bank statements, and the birth certificate for Ms. Ary's children to complete her RMA. No other documentation was mentioned or requested.

10. On or About September 27, 2016, Ms. Faulconer faxed Midland Ms. Ary's new signed credit authorization, her two most recent bank statements, and her children's birth certificates.

11. On or about October 3, 2016, Ms. Faulconer called Midland for another update. Midland stated that it was preparing Ms. Ary's loan assumption paperwork and that it would be mailing it to her soon, but that it now needed a copy of Ms. Ary's driver's license and Social Security card. On or about October 11, 2016, Ms. Faulconer faxed Midland copies of Ms. Ary's driver's license and Social Security card.

12. On or about October 24, 2016, Ms. Faulconer called Midland seeking an update. Midland stated that it had not mailed Ms. Ary's loan assumption paperwork. Midland requested Ms. Ary's probate filing to complete her RMA.

13. On or about November 10, 2016, Midland mailed Ms. Ary a letter stating that her RMA was denied on the basis of being incomplete. The letter was not

4

sent to her legal counsel at Legal Aid. Ms. Faulconer immediately called Midland; Midland stated that if it received a copy of Ms. Ary's probate filing by November 27, 2016, it would re-open her RMA.

14. On or about November 23, 2016, Ms. Faulconer faxed a copy of Ms. Ary's probate filing to Midland.

15. On or about November 28, 2016, Ms. Faulconer called Midland and Midland acknowledged receipt of Ms. Ary's probate filing and stated that it would process Ms. Ary's re-opened RMA.

16. Ms. Faulconer called Midland for an update on or about December 1, 2016. Midland advised Ms. Faulconer that it had deemed Ms. Ary's application to be complete, and would need to speak with Ms. Ary to complete her financial review.

17. On or about December 9, 2016, Ms. Ary called Midland to complete the requested financial review. Midland told Ms. Ary that her RMA had been closed since October 27, 2016 and that should would need to start all over with a new application.

18. Despite Ms. Ary's and Legal Aid's frustration with Midland, Legal Aid faxed Midland a new completed RMA on or about December 21, 2016 in an effort to save Ms. Ary's home.

19. On or about January 3, 2017, Ms. Faulconer called Midland for an update on Ms. Ary's new RMA. Midland stated that it has all documents it needed, but it would need Ms. Ary to call again for another financial review.

20. On or about January 9, 2017, Ms. Faulconer called Midland for an update. Midland stated that it needed a new third-party credit authorization. Ms. Faulconer faxed Midland the requested authorization on the same day.

5

21. On or about January 11, 2017, Midland advised Ms. Ary's counsel by telephone that the Mortgagee's name on the credit authorization should read "Estate of Rauf Ary" instead of "Ahlam Ary." Midland also requested authorization for Ms. Ary's daughter, Nisar Ary, since her income was included in the RMA.

22. On or about January 17, 2017, Ms. Faulconer faxed the information Midland requested on January 11, 2017.

23. On or about January 18, 2017, Ms. Faulconer called Midland and it confirmed that it had received the requested authorization. Midland requested Ms. Ary's letters of administration from the probate of Mr. Ary's estate. When Ms. Faulconer reminded Midland that it already sent the petition for letters of administration, Midland stated that it needed the final letters of administration.

24. On or about January 20, 2017, Ms. Faulconer faxed Midland the requested letters of administration.

25. On or about January 24, 2017, Ms. Faulconer called Midland for another update. Midland advised Ms. Faulconer that it deemed Ms. Ary's application as complete. Midland's representative put Ms. Faulconer on hold to check on the type of assistance Midland could offer. When Midland's representative returned to the line, Ms. Faulconer was told that Ms. Ary would need to assume the loan to be eligible for assistance. Midland's representation told Ms. Falconer that Ms. Ary would need to issue a quitclaim deed from herself to herself in order to assume the loan. Ms. Faulconer explained that this request made no sense and that Ms. Ary had already assumed the loan as the successor in interest, but Midland persisted in requesting this quitclaim deed.

6

26. On or about February 3, 2017, Ms. Faulconer faxed a quitclaim deed from Ms. Ary's adult son, Acar Ary, and an affidavit of heirship to prove that Ms. Ary was the sole owner of the home.

27. On or about February 8, 2017, Ms. Ary's counsel called Midland for an update, Midland acknowledged receipt of the quitclaim deed and affidavit of heirship and that Ms. Ary needed to call to review her credit report.

28. On or about February 13, 2017, Ms. Ary called Midland and completed the credit report review. After completing the review, Midland requested her most recent bank statement and her food stamps award letter.

29. On or about February 16, 2017, Ms. Faulconer faxed Midland Ms. Ary's most recent bank statement and a copy of her food stamps award letter.

30. On or about February 21, 2017, Ms. Faulconer called Midland for an update. Midland acknowledged receipt of the requested documents, but stated that Ms. Ary needed to deed the Property to herself as the Administratrix of Mr. Ary's estate in order for Ms. Ary to assume the loan.

31. On or about March 7, 2017, Midland sent correspondence advising that it had denied Ms. Ary's RMA due to incompleteness. Midland did not explain why Ms. Ary's application was determined by it to be incomplete.

32. On or about March 23, 2017, Ms. Ary's counsel sent Midland and Weiss a written RESPA Notice of Error, demanding that errors be corrected immediately.

33. On or about April 11, 2017, Ms. Ary's counsel received Midland's response to the Notice of Error. Midland advised that if Ms. Ary completed the enclosed loan assumption paperwork, her loan modification application would be re-opened and deemed complete.

7

34. As a precautionary measure, Ms. Ary's counsel faxed her completed loan assumption paperwork on April 12, 2017. Along with this loan assumption paperwork, Ms. Ary's counsel sent a letter notifying Midland and Weiss if the April 27, 2017 proposed foreclosure was not canceled or postponed by the close of business on April 17, 2017, Ms. Ary would file suit to stop any potential foreclosure.

35. At the time that the Complaint was filed on April 18, 2017, Defendants had not informed Ms. Ary or her counsel that the April 27, 2017 foreclose sale was canceled or postponed.

36. Ms. Ary lives in her home with her disabled daughter, and her son attends the University of Tennessee at Knoxville. Ms. Ary has no other family in this area.

## Conclusions of Law

Based on the foregoing preliminary findings of fact and the applicable law, the Court makes the following conclusions of law under Tenn. R. Civ. P. 65.04:

1. Ms. Ary has shown a strong likelihood of success of breach of contract (Count 3) and violation of the federal statutes (Counts 1 and 2) relied upon in her Complaint.

2. Ms. Ary has shown a substantial risk of irreparable harm if the Court allows Weiss to foreclose on her home under the circumstances presented here.

3. The public interest and the balancing of harm militate in favor of the Court's granting Ms. Ary temporary extraordinary injunctive relief here.

4. The Court, therefore, hereby GRANTS Ms. Ary's application for a temporary restraining order.

8

5. Weiss & Cummings, PLLC, accordingly, is hereby temporarily prohibited from selling at foreclosure, or taking any additional steps with a view of selling at foreclosure, the home of Ms. Ary located at 109 Colemont Drive, Antioch, Davidson County, Tennessee, pending further orders of the Court.

6. This temporary injunction will take effect upon Plaintiff's posting of security in the nominal amount of $50.00.

## Conclusion

For the foregoing reasons, the Court hereby GRANTS Plaintiff's application for a temporary injunction.[3]

**IT IS SO ORDERED.**

RUSSELL T. PERKINS
CHANCELLOR


cc:    David Tarpley, Esq. (via facsimile)
       Samuel Keen, Esq. (via facsimile)
       Midland Mortgage Company (via U.S. mail)
       Weiss & Cummins, PLLC (via facsimile)
       Duane W. Devault, Esq. (via facsimile)

---

[3] At the hearing, Plaintiff made an oral argument regarding escrow payments and payments into Court. Although the Court was inclined to grant the motion, the Court asked Plaintiff's counsel to submit a proposed order granting this relief to give the other parties an opportunity to object to the entry of the order under the Local Rules.

9

# IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

RECEIVED

APR 2 6 2017

Dav. Co. Chancery Court

| | | |
|---|---|---|
| Ahlam K. Ary, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-0371-IV |
| | ) | |
| Midland Mortgage Company and | ) | |
| Weiss & Cummins, PLLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER SETTING ESCROW PAYMENTS

On April 25, 2017, at the hearing on her Motion for Temporary Injunction, Plaintiff presented oral argument to the Court requesting that she be allowed to start escrowing monthly payments of $384.00 with the Clerk & Master. Plaintiff informed the court that she wishes to make these escrow payments as a demonstration of good faith and her intention to make the monthly mortgage payment for which she qualifies.

Plaintiff advised the Court that the $384.00 amount roughly reflects the amount that, as calculated by her counsel, Plaintiff would likely be obligated to pay under the terms of a HAMP loan modification. Plaintiff further informed the Court that she has been escrowing a monthly payment of $384.00 into her attorney's client trust account since February 2017. Plaintiff has deposited a total of $1152.00 into her attorney's client trust account thus far. Plaintiff requested escrow payments begin with the Clerk & Master on May 15, 2017, and continue for each month thereafter until this matter is resolved or further order of the Court.

1

Duane W. Devault appeared as counsel for MidFirst Bank and, although he did not object to the escrow, he requested that the Plaintiff's escrow payment be placed into an interest-bearing account. Plaintiff has no opposition to this request. The Court finds the Plaintiff's request is well-taken. Based on the forgoing, Plaintiff's request to begin escrowing payments of $384.00 per month with the Clerk & Master is GRANTED.

**IT IS, THEREFORE, ORDERED, as follows:**

1) Plaintiff shall begin escrowing a monthly payment in the amount of $384.00 with the Clerk & Master. These payments shall begin on May 15, 2017, and continue each month thereafter until resolution of these proceedings or until further order of the Court.

2) Plaintiff's escrow payments will be placed in an interest-bearing account.

3) Plaintiff shall also deposit with the Court all amounts which she has paid into her attorney's escrow account ($1152.00) on or before May 15, 2017.

**Entered this the _____ day of April/May, 2017.**

CHANCELLOR RUSSELL T. PERKINS

Approved for Entry:

David Tarpley, BPR No. 004059
Samuel Keen, BPR No. 033865
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax: (615) 244-4920
*Attorneys for Plaintiff*

2

## CERTIFICATE OF SERVICE

Under the penalties of perjury, I, Samuel Keen, do hereby certify that on April 26, 2017, I

caused a copy of the foregoing Order Setting Escrow to be sent to the following parties via US

Mail First Class and electronic mail at their respective mailing and email addresses:


Elizabeth A. Cash
Weiss & Cummins, PLLC
208 Adams Avenue
Memphis, Tennessee 38103
firm@weisscummins.com

Duane W. Devault
Local Counsel, MidFirst Bank
2556 Cages Bend Road
Gallatin, Tennessee 37066
duanedevault@att.net

Deborah A. Wolfe
House Counsel, MidFirst Bank
999 NW Grand Boulevard
Oklahoma City, Oklahoma 73118
NO EMAIL

Samuel Keen, BPR No. 033865
*Attorney for Plaintiff*

3

| | |
|---|---|
| Ahlam K. Ary, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-0371 – Part IV |
| | ) |
| MidFirst Bank | ) |
| a/k/a Midland Mortgage and | ) |
| Weiss & Cummins, PLLC, | ) |
| | ) |
| Defendants. | ) |

2017 MAY 12 PH 1:48

CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

_____ LN _ D.C. & M

## FIRST AMENDED COMPLAINT

Plaintiff Ahlam K. Ary ("Ms. Ary" or "Plaintiff") brings this action against Defendants MidFirst Bank a/k/a Midland Mortgage and Weiss & Cummins, PLLC ("Midland" and "Weiss" respectively; "Defendants" collectively) primarily because of their failure to comply with the Federal Real Estate Settlement Procedures Act (RESPA). Defendants have ignored Ms. Ary's repeated attempts to establish herself as the successor in interest to the home, assume the mortgage loan securing the home, and seek a loan modification. Defendants have also failed to respond appropriately to "Qualified Written Requests," and Defendants failed to take corrective action despite being notified of their errors. By this Verified Complaint, Ms. Ary seeks to enjoin Defendants from wrongfully foreclosing on her home and recover damages based on Defendants' numerous violations of statutory and common law, including: violations of RESPA, violations of the Consumer Financial Protection Bureau's (CFPB) regulations, breach of contract, and promissory estoppel. Ms. Ary also seeks a declaration from this Court that she is the successor in interest and has assumed the mortgage.

## JURISDICTION AND VENUE

1)      This Court has jurisdiction over the subject matter of this lawsuit pursuant to Tenn. Code Ann. §§ 16-1-101, 102 & 103.

2)      Although Midland is a non-resident of the State of Tennessee, Midland routinely conducts business within the state; thus, this Court has personal jurisdiction over Midland pursuant to Tenn. Code Ann. § 20-2-214(a)(1).

3)      This Court has personal jurisdiction over Weiss as it is a resident of the State of Tennessee and routinely conducts business in the State of Tennessee.

4)      Each cause of action alleged herein arose from facts that occurred or substantially occurred in Davidson County, Tennessee; thus, venue is proper in Davidson County, Tennessee pursuant to Tenn. Code Ann. § 20-4-101.

## PARTIES

5)      Plaintiff Ahlam K. Ary is an adult who resides in Davidson County, Tennessee. As of the commencement of this action, her address is 109 Colemont Drive, Antioch, Tennessee, 37013. This is the same home Ms. Ary lived at with her husband, Rauf Ary ("Mr. Ary"), who passed away on October 4, 2015. Ms. Ary now maintains 100% title interest in the home. This interest is subject to the mortgage on the home serviced by Midland Mortgage Company.

6)      Defendant MidFirst Bank a/k/a Midland Mortgage, a corporation, is incorporated in the State of Oklahoma. The address of its principal place of business is 999 NW Grand Boulevard, Oklahoma City, Oklahoma, 73118. MidFirst Bank does not have a registered agent in Tennessee. MidFirst Bank routinely communicates with its mortgage customers under the moniker "Midland Mortgage". Midland Mortgage is a division of MidFirst Bank. Midland Mortgage is primarily engaged in the business of mortgage loan servicing. Upon information and

2

belief, Midland Mortgage services hundreds of mortgage loans in the State of Tennessee, including the mortgage which secures Ms. Ary's residence.

7)    Defendant Weiss & Cummins, PLLC, a corporation, is incorporated in the State of Tennessee. The address of its principal place of business is 208 Adams Avenue, Memphis, Tennessee, 38103. Weiss & Cummins, PLLC is a law firm specializing in mortgage servicing and is often appointed as the substitute trustee for homes going through foreclosure in the State of Tennessee. Weiss & Cummins, PLLC has been appointed as the substitute trustee in the Deed of Trust governing Ms. Ary's residence. As the substitute trustee, Weiss & Cummins, PLLC is ultimately responsible for any foreclosure that might occur to Ms. Ary's home.

## ALLEGATIONS OF FACT

8)    At all times relevant to this Complaint, Midland was the servicer to the mortgage loan which secures the property at issue ("the home").

9)    Weiss was appointed the substitute trustee to the Deed of Trust on or around December 2, 2016. The Substitution of Trustee (Instrument No. 20161219-0133276) was recorded with the Davidson County Register of Deeds on December 19, 2016. As the Substitute Trustee, Weiss is ultimately responsible for any foreclosure sale that occurs.

10)    The home was purchased by Ms. Ary's late husband, Rauf Ary, on November 29, 1999. At the time of its purchase, only Mr. Ary's name was on the Warranty Deed and the mortgage loan. In other words, Mr. Ary was the sole owner and original borrower.

11)    Mr. Ary passed away intestate on October 4, 2015.

12)    At the time of his passing, Ms. Ary was the only heir-at-law to Mr. Ary's estate; however, before the estate could be administered, Ms. Ary's son, Acar Ary, became a legal adult, thus making him an heir to Mr. Ary's estate.

3

13) After Acar Ary turned eighteen, he and Ms. Ary were legally the successors in interest to the home secured by the mortgage at issue.

14) At all times relevant to this Complaint, Midland failed to identify and treat Ms. Ary and her son as the successors in interest to the home secured by the mortgage at issue.

15) On February 3, 2017, Acar Ary transferred his interest in the home to Ms. Ary via quitclaim deed. The quitclaim deed has been recorded with the Davidson County Register of Deeds as Instrument Number 20170203-0011799.

16) Upon transfer of Acar Ary's interest in the home, Ms. Ary again became the sole owner of the home and the only successor in interest.

17) Even after the completion of this transfer, which was done at Midland's request, Midland still did not treat or identify Ms. Ary as the successor in interest.

18) Ms. Ary was able to keep up with the mortgage payments for several months after her husband's passing; however, she began to fall behind on payments in the Spring of 2016.

19) Ms. Ary contacted Midland to inquire about having the loan put in her name and to see what could be done about her mortgage payments. A representative from Midland told Ms. Ary that she needed to probate her late husband's estate.

20) Ms. Ary then contacted The Legal Aid Society of Middle Tennessee and the Cumberlands ("Legal Aid") to see if she qualified for assistance with the probate of her late husband's estate. Legal Aid was able refer Ms. Ary's probate matter to a volunteer lawyer to be handled *pro bono*.

21) Legal Aid also offered to assist Ms. Ary with a loss mitigation application (also known as a Request for Mortgage Assistance (RMA)) to be submitted to Midland. The RMA is a request to modify the terms of the mortgage loan to create affordable monthly payments.

4

22) On or around August 29, 2016, Ms. Ary sent Midland a completed RMA. Included with this RMA was documentation showing Ms. Ary's income and a hardship affidavit.

23) Ms. Ary completed the RMA with Legal Aid's assistance. Ms. Ary has worked particularly close with Tabitha Faulconer ("Ms. Faulconer"), a paralegal and NCHEC-certified Foreclosure Intervention and Default Counselor.

24) On or around September 6, 2016, Ms. Faulconer called Midland for an update on the status of Ms. Ary's RMA. Midland stated it needed a signed credit authorization from Ms. Ary in order to complete her loan modification application. Midland did not claim to need any other documentation at the time. Midland never made its request for a signed credit authorization in writing.

25) On or around September 9, 2016, Ms. Faulconer faxed Midland Ms. Ary's signed credit authorization.

26) On or around September 19, 2016, Ms. Faulconer called Midland for an update on the status of Ms. Ary's RMA. Midland stated it needed another credit authorization signed, Ms. Ary's two (2) most recent bank statements, and Ms. Ary's children's birth certificates to complete her loan modification application. Midland did not claim to need any other documentation at the time. Midland never made its request for another credit authorization, two (2) bank statements, or the children's birth certificates in writing.

27) On or around September 27, 2016, Ms. Faulconer faxed Midland Ms. Ary's new signed credit authorization, two (2) most recent bank statements, and her children's birth certificates.

28) On or around October 3, 2016, Ms. Faulconer called Midland for an update on the status of Ms. Ary's RMA. Midland stated it needed a copy of Ms. Ary's driver's license and Social

Security card. Midland stated that it was preparing her loan assumption paperwork and would be mailing it to Ms. Ary soon.

29)     On or around October 11, 2016, Ms. Faulconer faxed Midland the requested copy of Ms. Ary's driver's license and Social Security card.

30)     On or around October 24, 2016, Ms. Faulconer called Midland for an update on the status of Ms. Ary's RMA. Midland stated it had not mailed Ms. Ary's loan assumption paperwork. Instead, Midland was now requesting Ms. Ary's probate filing to complete her application. Again, the request for the probate filing was not made in writing.

31)     On or around November 10, 2016, Midland mailed Ms. Ary a letter stating that her RMA was denied due to being incomplete. The letter was not sent to Legal Aid, despite having identified itself as Ms. Ary's counsel. Upon receipt of the letter, Ms. Faulconer immediately called Midland, and Midland stated that if it received a copy of Ms. Ary's probate filing by November 27, 2016, it would re-open her loss mitigation application.

32)     On or around November 23, 2016, Ms. Faulconer faxed a copy of Ms. Ary's probate filing to Midland.

33)     On or around November 28, 2016, Ms. Faulconer called Midland and Midland acknowledged that it had received Ms. Ary's probate filing and would process the re-opened application.

34)     On or around December 1, 2016, Ms. Faulconer called Midland for an update on the status of her loan modification application. Midland stated it had deemed Ms. Ary's application as complete, and would need to speak with Ms. Ary to complete her financial review.

35)     On or around December 9, 2016, Ms. Ary called Midland to complete the financial review as requested. Midland told Ms. Ary that her loss mitigation application had been closed

6

since October 27, 2016. Midland told Ms. Ary that she would need to start all over with a new application.

36)     Ms. Ary and counsel grew frustrated because this implied that Midland did not re-open the application in November 2016 as it stated. However, in efforts to save Ms. Ary's home, Legal Aid faxed Midland a new and complete loan modification application on or around December 21, 2016.

37)     On or around January 3, 2017, Ms. Faulconer called Midland for an update on her new loss mitigation application. Midland stated that it had all documents it needed to review the application, but it would need Ms. Ary to call again for another financial review.

38)     On or around January 9, 2017, Ms. Faulconer again called Midland for an update on her loss mitigation application. Midland stated that it needed a new third-party credit authorization signed. Despite this request not being sent in writing, Ms. Faulconer faxed Midland the requested authorization on the same day.

39)     On or around January 11, 2017, counsel for Ms. Ary called Midland for an update on her loan modification application. Midland stated that the mortgagor's name on the credit authorization should read "Estate of Rauf Ary" instead of "Ahlam Ary." Midland also requested a signed credit authorization for Ms. Ary's daughter, Nisar Ary, since her income was included on the loan modification application.

40)     On or around January 17, 2017, Ms. Faulconer faxed Midland a new credit authorization for Ms. Ary and the credit authorization for Nisar Ary.

41)     On or around January 18, 2017, Ms. Faulconer called Midland to confirm it had received the requested credit authorizations. Midland confirmed that it had, but was now requesting Ms. Ary's letters of administration from the probate of Mr. Ary's estate. Ms. Faulconer

reminded Midland that it already sent the petition for letters of administration, but Midland stated that it needed the final letters.

42) On or around January 20, 2017, Ms. Faulconer faxed Midland the requested letters of administration.

43) On or around January 24, 2017, Ms. Faulconer called Midland for an update on the status of Ms. Ary's loss mitigation application. Midland communicated that it deemed Ms. Ary's application as complete. Midland's representative then put Ms. Faulconer on hold to inquire about what type of assistance could be offered. When Midland's representative picked back up, Ms. Faulconer was told that Ms. Ary would need to assume the loan in order to be eligible for loss mitigation assistance. Midland's representative told Ms. Faulconer that in order to assume the loan Ms. Ary would need to issue a quitclaim deed from herself to herself. Ms. Faulconer tried explaining that this request made no sense and that Ms. Ary had already assumed the loan as the successor in interest, but Midland persistently requested this quitclaim deed.

44) On or around February 3, 2017, Ms. Faulconer faxed Midland a quitclaim deed from Ms. Ary's adult son, Acar Ary, and an affidavit of heirship to further prove that Ms. Ary was the sole owner of the home and entitled to assume the loan.

45) On or around February 8, 2017, counsel for Ms. Ary called Midland for an update on her loss mitigation application. Midland acknowledged that it had received the quitclaim deed and affidavit of heirship and that Ms. Ary needed to call Midland to review her credit report.

46) On or around February 13, 2017, Ms. Ary called Midland to complete the credit report review. Ms. Ary completed the review, but Midland then requested her most recent bank statement and her food stamps award letter.

8

47)     On or around February 16, 2017, Ms. Faulconer faxed Midland Ms. Ary's most recent bank statement and a copy of her food stamps award letter.

48)     On or around February 21, 2017, Ms. Faulconer called Midland to confirm it had received the requested documents and to ask for an update on the status of Ms. Ary's loss mitigation application. Midland acknowledged that it had received Ms. Ary's most recent bank statements and her food stamps award letter, but that in order for Ms. Ary to assume the loan she needed to deed the property to herself as the administrator of Mr. Ary's estate.

49)     Midland's continued insistence on the need for a quitclaim deed from Ms. Ary to herself in order to assume the loan is illegal and inappropriate because the loan is freely assumable under the Garn-St. Germain Act.[1]

50)     On or around March 7, 2017, Midland sent correspondence saying that it had denied Ms. Ary's loss mitigation application due to incompleteness. Importantly, Midland did not explain why Ms. Ary's application was deemed incomplete or list the document(s) it was alleging it needed.

51)     On or around March 23, 2017, counsel sent Midland and Weiss a written RESPA Notice of Error explaining that Midland's refusal to treat Ms. Ary as the successor in interest, refusal to acknowledge her loan assumption, and refusal to properly process her loss mitigation application were unlawful servicing errors. Counsel demanded that these errors be immediately corrected and cautioned against pursuing a foreclosure without first evaluating Ms. Ary for all loss mitigation options for which she qualifies.

---

[1] Under the Garn-St. Germain Act, certain property transfers render a Deed of Trust's "due on sale" provision unenforceable. 12 U.S.C. § 1701j-3(d). These are known as Garn-St. Germain-exempt transfers. The transfer under which Ms. Ary received her interest in the home is exempt under Garn-St. Germain. 12 U.S.C. § 1701j-3(d)(3) & (5). Since the Deed of Trust's "due on sale" provision is unenforceable, the mortgage loan securing the property is freely assumable by transferee. In order to effectuate the assumption, the transferee need not execute any formal documentation; instead, the transferee need only communicate her intent to be obligated under the terms of the loan.

9

52) On or around April 11, 2017, counsel received Midland's first response to the Notice of Error. Midland stated that if Ms. Ary completed enclosed loan assumption paperwork, her loan modification application would be re-opened and deemed complete. The April 11, 2017 letter did not address any of the errors identified in the March 23, 2017 Notice of Error.

53) On or around April 12, 2017, counsel faxed Ms. Ary's completed loan assumption paperwork, despite the fact that Ms. Ary is not required to as she has already proven she is the successor in interest and the mortgage loan is freely assumable under the Garn-St. Germain Act.

54) Counsel for Ms. Ary sent a letter along with the loan assumption paperwork informing Midland and Weiss that if the foreclosure sale is not canceled or postponed by close of business April 17, 2017, Ms. Ary would have no choice but to file suit to stop any potential wrongful foreclosure sale.

55) Prior to filing her Verified Complaint, neither Midland nor Weiss informed Ms. Ary or her counsel that it would agree to cancel or postpone the foreclosure sale.

56) Ms. Ary filed her Verified Complaint on April 18, 2017. She also submitted with her Complaint a Motion for a Temporary Injunction requesting that Defendants be temporarily enjoined from going through with a foreclosure while this matter is pending.

57) The day after filing her Verified Complaint, Ms. Ary's counsel received a written request from Midland asking for copies of Ms. Ary's driver's license and Social Security card – documents which were first provided to Midland in October 2016. Midland claims these documents, which were sent via fax, are illegible. In other words, for roughly seven (7) months, Midland failed to communicate to Ms. Ary or her counsel that her RMA could not be processed simply because her driver's license and Social Security card did not come through clear enough

on its fax machine. Ms. Ary has now resent these documents to Midland. Midland has confirmed the resent driver's license and Social Security card are legible.

58) On April 25, 2017, the Davidson County Chancery Court held a hearing on Ms. Ary's Motion for Temporary Injunction. The Court granted Ms. Ary's request, as a result Ms. Ary's home is not currently at risk of foreclosure.

59) On April 27, 2017, despite the injunction being in place, Legal Aid received a letter from Weiss saying that "the foreclosure sale has been postponed until June 1, 2017." This letter is dated to April 21, 2017. This letter was sent directly from Weiss to Ms. Ary despite Weiss' knowledge that Ms. Ary is represented by Legal Aid.

60) On April 27, 2017, despite the injunction being in place, Midland faxed Legal Aid a letter stating that "the foreclosure sale has been postponed until June 1, 2017." The letter also denied that Midland had committed any of the errors identified in the March 23, 2017 Notice of Error. The letter further explained that Midland still does not recognize that Ms. Ary has assumed the loan. The letter states that "It is our position that Ms. Ary does not legally assume personal liability for the debt until we receive a written assumption agreement and we approve it."

61) Although Ms. Ary provided Midland with the written assumption agreement on April 12, 2017, the April 27, 2017 letter goes on to demand additional documentation from Ms. Ary before Midland will "approve" Ms. Ary's assumption.

62) The April 27, 2017 letter specifically ask for "proof of home owner's insurance in Ms. Ary's name."

63) According to Midland, there currently exists a home owner's insurance policy on the home. That policy is with Standard Fire Insurance Co. in Hartford, Connecticut and that policy is good through the end of September 2017. That policy is in Mr. Ary's name.

11

64) Importantly, the April 27, 2017 letter did not explain why the home's hazard insurance policy needed to be in Ms. Ary's name in order to effectuate her assumption of the loan.

65) Although the demand for additional documents made in the April 27, 2017 letter has since been withdrawn, Ms. Ary views this demand as further evidence of Midland's imposition of arbitrary "requirements" which are being used as pre-text to justify Midland's failure to process Ms. Ary's RMA. If Midland truly needed to have the insurance policy in Ms. Ary's name in order to "approve" her assumption, it should have asked for this documentation several months ago. At the very least, Midland should have made this request when it sent the Simple Loan Assumption packet on April 11, 2017. Instead, Midland continues requesting additional documentation only after Ms. Ary provides the documentation that was previously requested.

66) Ms. Ary has provided Midland everything it needs in order to recognize her assumption of the loan and process her RMA.

### CLAIMS FOR RELIEF
#### COUNT I
**Violation of the Federal Real Estate Settlement Procedures Act, Regulation X**

67) The allegations of paragraphs 1 – 66 are realleged and incorporated herein as reference.

68) RESPA (12 U.S.C. § 2601, *et. seq.*) and its governing regulations (Regulation X, 12 C.F.R. Part 1024) establish the requirements for how a mortgage loan servicer or lender must conduct its servicing of the loan.

69) One of the most important obligations imposed on mortgage loan servicers is the requirement that they affirmatively consider loss mitigation before foreclosure. 12 C.F.R. § 1024.41(c).

12

70)     Prior to its expiration in December 2016, Midland participated in the Home Affordable Modification Program (HAMP) developed by the United States Department of Treasury and implemented on March 4, 2009. Therefore, Midland must comply with the rules contained in the Treasury Department's Making Home Affordable Handbook ("MHA Handbook").

71)     As a participant in HAMP, Midland is required to evaluate all loss mitigation applications submitted on or before December 30, 2016, under the HAMP guidelines. In fact, the MHA Handbook obligates Midland Mortgage to consider Ms. Ary for a loan modification while simultaneously processing the loan assumption. *See* "MHA Handbook" v. 4.4, § 8.8.

72)     Since Ms. Ary submitted both of her loss mitigation applications prior to December 30, 2016, and because Defendant Midland Mortgage Company is a participant in HAMP, Ms. Ary is entitled to be considered for a HAMP modification before her home can be foreclosed on.

73)     Not only has Midland refused to consider Ms. Ary for a HAMP modification, it has refused to consider Ms. Ary for any loss mitigation at all. Instead, despite the numerous documents provided to Midland, Midland claims it cannot process Ms. Ary's loss mitigation because it is "incomplete."

74)     Importantly, in its most recent communication in which it claimed Ms. Ary's application was incomplete, Midland did not even list what documents were still outstanding. It is a requirement under RESPA to inform borrowers exactly documentation is required if the borrower's application is deemed incomplete. 12 C.F.R. 1024.41(b)(2)(i)(B)

75)     Ms. Ary has now submitted two (2) complete loss mitigation applications to Midland. Midland's refusal to process her applications constitutes a violation of RESPA's

13

requirement to evaluate for loss mitigation before foreclosure. 12 C.F.R. 1024.41(g); 12 C.F.R. § 1024.35(b)(7) & (11).

76)     Such a violation gives rise to a private right of action for which Ms. Ary can ask this Court to enjoin the scheduled foreclosure sale before it happens.    12 U.S.C. § 2614; Tenn. Code Ann. 16-11-101.

77)     Ms. Ary is also eligible to recover any damages she has suffered or will suffer as the result of Defendant Midland's violations. 12 U.S.C. §2605(f)

## COUNT 2
### Violation of the Federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et. seq.*

78)     The allegations of paragraphs 1 – 77 are realleged and incorporated herein as reference.

79)     Throughout this process, Midland has failed to put requests for supplemental documentation supporting the loss mitigation application in writing.  This is a violation of RESPA Regulation X.  12 C.F.R. § 1024.41(b)(2)(i)(B).

80)     Midland has also failed to diligently obtain the documentation *actually needed* to complete Ms. Ary's loss mitigation application; instead, Midland has made numerous duplicative and arbitrary requests in an attempt to excuse its failure to process Ms. Ary's loss mitigation application. 12 C.F.R. § 1024.41(c)(2).

81)     Moreover, Midland has failed to timely and adequately acknowledge and respond to the "Qualified Written Requests" sent on Ms. Ary's behalf.  12 U.S.C. § 2605(e) details the duties and statutory obligations of a mortgage loan servicer or lender in receiving and responding to borrower written inquiries.  Midland has repeatedly failed to abide by the timeframe and duties imposed under this provision of RESPA and Regulation X.  12 U.S.C. § 2605(e); 12 C.F.R. §§ 1024.35 & 1024.36.

82) Midland has engaged in a pattern or practice of non-compliance with the requirements of the loss mitigation procedures and mortgage servicing provisions of RESPA as set forth in 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41.

83) Midland's violations give rise to a private right of action for which Ms. Ary can seek to enjoin the scheduled foreclosure sale and seek to recover her actual damages, statutory damages, and a reasonable

### COUNT 3
**Violation of the Federal Real Estate Settlement Procedures Act**
**for Failure to Recognize Assumption Under Garn-St. Germain**

84) The allegations of paragraphs 1 – 83 are realleged and incorporated herein as reference.

85) Throughout this process, Midland has refused to recognize Ms. Ary as the successor in interest to the home.

86) Midland has also failed to recognize that Ms. Ary has assumed the loan securing the home.

87) Under the Garn-St. Germain Depository Institutions Act of 1982 ("Garn-St. Germain"), Ms. Ary is able to freely assume the loan. Midland's prior approval of the assumption is not required.

88) Garn-St. German provides that a lender's exercise of a due on sale clause in a mortgage loan is governed exclusively by the terms of the contract, subject only to limitations contained in the Act. 12 U.S.C. § 1701j-3(b)(2).

89) Garn-St. Germain prohibits enforcement of due on sale clauses with respect to certain non-substantive or non-sale transfers. 12 U.S.C. § 1701j-3(d). These transfers are known as Garn-St. German-exempt transfers.

90)     A transfer in interest in real property that renders the mortgage's due on sale clause unenforceable means that the mortgage loan securing the real property is freely assumable by the transferee. 12 U.S.C. § 1701j-3(b)(3). The loan is also freely assumable under state contract law because absent an enforceable due on sale clause, there is nothing in the mortgage loan preventing the loan's assumption.

91)     The loan is freely assumable by Ms. Ary because she obtained her interest in the home under a Garn-St. Germain-exempt transfer. 12 U.S.C. § 1701j-3(d)(3) & (5). Because the due on sale clause contained in the mortgage is unenforceable, there is no contract provision restricting Ms. Ary's ability to assume the loan.

92)     Midland must recognize Ms. Ary's assumption of the loan because she has both communicated her intent to be obligated under the terms of the loan and provided Midland with a signed assumption agreement.

93)     Midland's failure to recognize Ms. Ary's assumption of the loan is a servicing error under RESPA. 12 C.F.R. § 1024.35(b)(11).

94)     Midland's servicing error under RESPA entitles Ms. Ary to recovery of actual damages, statutory damages, reasonable attorney's fees and court costs. 12 U.S.C. §2605(f).

### COUNT 4
### Breach of Contract for Failure to Recognize Assumption

95)     The allegations of paragraphs 1 – 94 are realleged and incorporated herein as reference.

96)     At Midland's request, Ms. Ary signed a loan assumption agreement.

97)     Midland told Ms. Ary that this was all that was needed in order for Midland to recognize her assumption of the loan.

98)     Midland has still not recognized her assumption of the loan.

16

99)     Midland's continued refusal to recognize Ms. Ary's assumption despite the signed

loan assumption agreement constitutes breach of contract.

## COUNT 5
### Breach of Contract for Failure to Process Request for Mortgage Assistance Under HAMP

100)     The allegations of paragraphs 1 – 99 are realleged and incorporated herein as

reference.

101)     Although Ms. Ary has complied with the borrower documentation requirements of

HAMP, Midland never completed the contractually required analysis to determine whether she

was entitled to a HAMP trial period or any other loss mitigation option.

102)     Although Ms. Ary complied with the borrower documentation requirements of

HAMP a second time, Midland has not yet completed the contractually required analysis to

determine whether she is entitled to a HAMP trial period or any other loss mitigation option.

103)     Despite clear RESPA and HAMP provisions to the contrary, Defendants have

allowed Ms. Ary's home to remain subject to foreclosure pending analysis of her request for a loan

modification.  This is known as "dual tracking". 12 C.F.R. § 1024.41(g).

104)     By participating in HAMP, Midland agreed to evaluate all eligible borrowers in

default or at risk of default for loss mitigation options before foreclosing on the property.

105)     The agreement to abide by HAMP provisions was made pursuant to a Servicer

Participation Agreement ("SPA") with the Treasury Department.

106)     Because the HAMP program exists for the purpose of benefitting borrowers who

face foreclosure, Ms. Ary may enforce these contractual duties as a third-party beneficiary to the

SPA.

107)     By this Verified Complaint, Ms. Ary seeks to enjoin the scheduled foreclosure sale

until Defendants have fulfilled their duties under the SPA and HAMP.

17

108) Ms. Ary also seeks to recover her actual damages stemming from Defendants' breach of the SPA and refusal to abide by the provisions of HAMP.

**COUNT 6**
**Promissory Estoppel**

109) The allegations of paragraphs 1 – 108 are realleged and incorporated herein as reference.

110) As described above, Midland promised Ms. Ary on several occasions that her loss mitigation application was complete and that it would be processed only to turn around and require additional documentation. Midland's requests for additional documentation were duplicative, arbitrary, and in direct contradiction to the promise that Ms. Ary's completed applications would be processed.

111) Midland's promises to Ms. Ary that her loss mitigation applications were complete were unambiguous and not unenforceably vague.

112) Ms. Ary relied on the promise that her application was complete to her detriment.

113) Since Midland has promised on multiple occasions that Ms. Ary's loss mitigation applications were complete and being processed, Midland is estopped from referring Ms. Ary's house to Weiss for foreclosure. Instead, Midland must fulfil its promise and evaluate Ms. Ary for all loan modification/loss mitigation options for which she qualifies.

114) Ms. Ary has the right to seek enjoinment of any foreclosure sale until Midland's promises are fulfilled.

115) Ms. Ary also has the right to recover any damages as the result of her detrimental reliance on Midland's promises.

18

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Ary respectfully requests that this Court:

A. Temporarily and permanently enjoin the substitute trustee, Weiss & Cummins, PLLC, from selling Ms. Ary's house on April 27, 2017, until such time as Midland has fully complied with RESPA, Regulation X, and HAMP by processing Ms. Ary's loss mitigation application and giving her the opportunity to accept or reject any loss mitigation/loan modification options for which she qualifies.

B. Declare that Ms. Ary has assumed the loan pursuant to the Garn-St. Germain Depository Institutions Act of 1982.

C. Order the removal of all fees, charges, and interest arising from the wrongfully-instituted foreclosure proceedings and associated delays from Ms. Ary's account.

D. Award Ms. Ary her actual damages and statutory damages;

E. Require Defendants to pay for all court costs associated with this action, including an award for reasonable attorney's fees and expert fees, and;

F. Provide any and all further relief as this Court deems just and proper.

Respectfully submitted,

David Tarpley, BPR No. 004059
Samuel Keen, BPR No. 033865
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax: (615) 244-4920
Email: dtarpley@las.org; skeen@las.org
*Attorneys for Plaintiff*

DATED: May 12, 2017

19

**STATE OF TENNESSEE** )
)
**COUNTY OF DAVIDSON** )

The Plaintiff, Ahlam K. Ary, having first been duly sworn according to law, makes oath that she has read the foregoing complaint, and that the contents thereof are true and correct to the best of her knowledge, information and belief, and that this Complaint is not made out of levity or by collusion with the Defendants, but in truth and sincerity for the causes mentioned therein.

_____
Ahlam K. Ary

Sworn to and subscribed before me this _10th_ day of May, 2017

_____
Notary Public

My commission expires: _July 8, 2019_.



| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER 17-0371-Part IV |
|---|---|---|
| PLAINTIFF Ahlam K. Ary | | DEFENDANT MidFirst Bank a/ka/Midland Mortgage and Weiss & Cummins, PLI.C |

ORIGINAL
RECEIVED
JUN - 7 2017
Chancery Court

TO: (NAME AND ADDRESS OF DEFENDANT)

MidFirst Bank
Serve: Randy Sparks, General Counsel
Mid First Bank
501 NW Grand Blvd.
Oklahoma City, OK 73118

List each defendant on a separate summons.

**Method of Service:**

- [x] Certified Mail
- [ ] Davidson Co. Sheriff
- [ ] *Comm. Of Insurance
- [ ] *Secretary of State
- [ ] *Out of County Sheriff
- [ ] Private Process Server
- [ ] Other
- [ ] *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) David J. Tarpley 615-780-7113 Samuel Keen 615-780-7114 Legal Aid Society of Middle TN and the Cumberlands 300 Deaderick Street Nashville, TN 37201 | FILED, ISSUED & ATTESTED 5/12/17 MARIA M. SALAS, Clerk and Master By: 1 Public Square Suite 308 Nashville, TN 37201 Deputy Clerk & Master |
|---|---|

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

***Submit one original plus one copy for each defendant to be served.

ADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served _____     ☐ Not Found _____
☐ Not Served _____     ☐ Other _____

| DATE OF RETURN: | By: |
|---|---|
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _12th_ day of _May_____, 20_17_, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _17-0371-IV_ to

the defendant _Mid First Bank_____. On the _19th_ day of _May_____, 2017, I received the return

receipt, which had been signed by _____ _Smith_ on the _16th_ day of _May_____, 20 _17_.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

**Sworn to and subscribed before me this** _17th_ **day of** _June_
_____, 20_17_
Signature of _✓_ Notary Public or _____ Deputy Clerk

_Patricia Hylton_
My Commission Expires: _July_____

Signature of plaintiff, plaintiff's attorney or other person
authorized by statute to serve process.

_S. Keen_

## NOTICE OF PERSONAL PROPERTY EXEMPTION

### TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to:  Clerk & Master
1 Public Square
Suite 308
Nashville TN 37201

Please state file number on list.

## CERTIFICATION (IF

I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case.

PS Form 3811, July 2015 PSN 7530-02-000-9053

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MidFirst Bank
501 NW Grand Blvd.
Oklahoma City, OK 73118

7011 3500 0132 5225 5591 32

9590 9401 0132 5225 5591 32

2. Article Number (Transfer from service label)
7011 3500 0132 7760 5749

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
5/16/17

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

# IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

FILED

2017 JUN -7 PM 2:16

CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

D.C. & M

Ahlam K. Ary,                              )
                                      )
    Plaintiff,           )
                                      )
vs.                                        )   Case No.  17-0371-IV
                                      )
MidFirst Bank                              )
a/k/a Midland Mortgage and                 )
Weiss & Cummins, PLLC,                     )
                                      )
    Defendants.          )

---

## MOTION TO MODIFY ORDER SETTING ESCROW PAYMENTS

---

Plaintiff Ahlam Ary, by and through counsel, respectfully moves this Court to Modify the Order Setting Escrow Payments entered in this case on May 2, 2017. Through this Motion, Plaintiff is requesting that all escrow payments to the Clerk & Master cease and she be allowed to withdraw all monies that have been paid into the Clerk & Master's escrow account escrow thus far. In support of this Motion, Plaintiff further states and would show as follows:

1)    On May 2, 2017, this Court entered an Order Setting Escrow Payments which required Plaintiff to deposit $384.00 into the Clerk & Master's escrow account each month. Based on calculations done by Plaintiff's counsel, this amount roughly reflected the amount Plaintiff would pay if her mortgage were modified through a HAMP modification.

2)    The Order Setting Escrow Payments also required Plaintiff to make a one-time deposit of $1152.00 into the Clerk & Master's escrow account. This was the amount that Plaintiff had escrowed into her counsel's client trust account since February 2017.

1

3)      Since May 2, 2017, the following has occurred: Plaintiff has been offered, and will accept, a FHA HAMP modification of her mortgage loan serviced by Defendant Midland. The modification is contingent upon plaintiff paying to Defendant Midland $417.00 per month for a trial period of three (3) months commencing on July 1, 2017.

4)      Plaintiff cannot afford to pay the $417.00 trial period payments and the $384.00 escrow payments at the same time.

5)      Plaintiff respectfully requests permission to withdraw the money that has been paid into escrow thus far ($1536.00) and to cease making the previously ordered escrow payments with the Clerk & Master. She understands that her receipt of a permanent and favorable modification of her mortgage loan will be dependent upon her making the trial period payments that are required.

**WHEREFORE**, premises considered, Plaintiff respectfully requests this Honorable Court to:

1)      Allow Plaintiff to withdraw all funds which she has deposited into the Clerk & Master's escrow account;

2)      Allow Plaintiff to cease the previously ordered monthly escrow payments of $384.00 with the Clerk & Master.

Respectfully submitted,

David Tarpley, BPR No. 004059
Samuel Keen, BPR No. 033865
Legal Aid Society
300 Deaderick Street
Nashville, Tennessee 37201
Phone: (615) 244-6610
Fax:  (615) 244-4920
*Attorneys for Plaintiff*

2

## NOTICE OF HEARING

Please take notice that the enclosed Motion to Modify Order Setting Escrow Payments in the above-captioned matter is set to be heard by the Honorable Chancellor Russell T. Perkins of the Chancery Court of Davidson County, Tennessee at _9:00 a.m_ on the **23rd of June, 2017**.

_____
Samuel Keen, BPR No. 033865

## CERTIFICATE OF SERVICE

Under the penalties of perjury, I, Samuel Keen, do hereby certify that on June _7_, 2017 I caused a copy of the foregoing Motion to Modify Order Setting Escrow Payments to be sent to the following parties via US Mail First Class and electronic mail at their respective mailing and email addresses:

Elizabeth A. Cash
Weiss & Cummins, PLLC
208 Adams Avenue
Memphis, Tennessee 38103
elizabeth@weisscummins.com
*Attorney for Defendant Weiss*

Heather H. Wright
Local Counsel, MidFirst Bank
1600 Division Street, Suite 700
Nashville, Tennessee 37203
hwright@bradley.com
*Attorney for Defendant Midland*

_____
Samuel Keen, BPR No. 033865
*Attorney for Plaintiff*

3

IN THE CHANCERY COURT OF THE TWENTIETH JUDICIAL DISTRICT,
DAVIDSON COUNTY, TENNESSEE, AT NASHVILLE

| | |
|---|---|
| AHLAM K. ARY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 17-0371- Part IV |
| | ) |
| MIDFIRST BANK a/k/a MIDLAND | ) |
| MORTGAGE and | ) |
| WEISS & CUMMINS, PLLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ANSWER OF DEFENDANT, WEISS & CUMMINS, PLLC to FIRST AMENDED COMPLAINT

Comes now your Defendant, Weiss & Cummins, PLLC, by and through counsel, for answer to the First Amended Complaint (hereinafter "Complaint") filed against it and states to the Court as follows:

1. That the allegations of Paragraph 1 of the Complaint are admitted.

2. That the allegations of Paragraph 2 of the Complaint are admitted.

3. That the allegations of Paragraph 3 of the Complaint are admitted.

4. That the allegations in Paragraph 4 of the Complaint are admitted in part and denied in part. The Defendant admits venue is proper in Davidson County, Tennessee and denies any remaining allegations in Paragraph 6 of the Complaint.

5. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 5 of the Complaint.

6. That the allegations in Paragraph 4 of the Complaint are admitted in part and

1

denied in part. That the allegations in Paragraph 6 of the Complaint are admitted as to the address, incorporation of MidFirst Bank in Oklahoma, that Midland Mortgage is a division of MidFirst Bank, and that MidFirst Bank serviced the loan which secures 109 Colemont Drive, Antioch, Tennessee. The Defendant is without knowledge or information to form a belief as to the truth of the averments in Paragraph 6 of the Complaint.

7.   That the allegations in Paragraph 7 of the Complaint are admitted in part and denied in part. The Defendant admits it is a domestic LLC and its principal business address. The Defendant denies the remaining allegations in Paragraph 7 of the Complaint.

8.   That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 8 of the Complaint.

9.   That the allegations in Paragraph 9 of the Complaint are admitted in part and denied in part. The Defendant admits the recording information for the Substitute of Trustee document. The Defendant denies the remaining allegations in Paragraph 9 of the Complaint.

10. That the allegations in Paragraph 10 are admitted in part and denied in part. The Defendant would submit that the documents speak for themselves. The Defendant denies any remaining allegations in Paragraph 10 of the Complaint.

11. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 11 of the Complaint.

12. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 12 of the Complaint.

13. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 13 of the Complaint.

14. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 14 of the Complaint.

15. That the allegations in Paragraph 15 of the Complaint are admitted.

16. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 16 of the Complaint.

17. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 17 of the Complaint.

18. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 18 of the Complaint.

19. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 19 of the Complaint.

20. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 20 of the Complaint.

21. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 21 of the Complaint.

22. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 22 of the Complaint.

23. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 23 of the Complaint.

24. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 24 of the Complaint.

25. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 25 of the Complaint.

26. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 26 of the Complaint.

27. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 27 of the Complaint.

28. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 28 of the Complaint.

29. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 29 of the Complaint.

30. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 30 of the Complaint.

31. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 31 of the Complaint.

32. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 32 of the Complaint.

33. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 33 of the Complaint.

34. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 34 of the Complaint.

35. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 35 of the Complaint.

36. That the Defendant is without knowledge or information sufficient to form a

belief as to the truth of the averments in Paragraph 36 of the Complaint.

37. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 37 of the Complaint.

38. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 38 of the Complaint.

39. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 39 of the Complaint.

40. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 40 of the Complaint.

41. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 41 of the Complaint.

42. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 42 of the Complaint.

43. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 43 of the Complaint.

44. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 44 of the Complaint.

45. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 45 of the Complaint.

46. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 46 of the Complaint.

47. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 47 of the Complaint.

48. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 48 of the Complaint.

49. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 49 of the Complaint.

50. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 50 of the Complaint.

51. That the allegations in Paragraph 51 are admitted in part and denied in part. The Defendant would submit that the document speaks for itself. The Defendant denies any remaining allegations in Paragraph 51 of the Complaint.

52. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 52 of the Complaint.

53. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 53 of the Complaint.

54. That the allegations in Paragraph 54 are admitted in part and denied in part. The Defendant would submit that the document speaks for itself. The Defendant denies any remaining allegations in Paragraph 54 of the Complaint.

55. The allegations in Paragraph 55 of the Complaint are denied.

56. The allegations in Paragraph 56 of the Complaint are admitted.

57. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 57 of the Complaint.

58. The allegations in Paragraph 58 of the Complaint are admitted.

59. The allegations in Paragraph 59 of the Complaint are admitted.

60. That the Defendant is without knowledge or information sufficient to form a

belief as to the truth of the averments in Paragraph 60 of the Complaint.

61. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 61 of the Complaint.

62. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 62 of the Complaint.

63. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 63 of the Complaint.

64. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 64 of the Complaint.

65. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 65 of the Complaint.

66. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 66 of the Complaint.

67. Paragraph 67 of the Complaint does not require a response from the Defendant.

68. That the Defendant would state that the referenced statutes would speak for themselves.

69. That the Defendant would state that the referenced statutes would speak for themselves.

70. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 70 of the Complaint.

71. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a

belief as to the truth of the remaining averments in Paragraph 71 of the Complaint.

72. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 72 of the Complaint.

73. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 73 of the Complaint.

74. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 74 of the Complaint.

75. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 75 of the Complaint.

76. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 76 of the Complaint.

77. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 77 of the Complaint.

78. Paragraph 78 of the Complaint does not require a response from the Defendant.

79. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 79 of the Complaint.

80. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 80 of the Complaint.

81. That the Defendant would state that the referenced statutes would speak for

8

themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 81 of the Complaint.

82. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 82 of the Complaint.

83. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 83 of the Complaint.

84. Paragraph 84 of the Complaint does not require a response from the Defendant.

85. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 85 of the Complaint.

86. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 86 of the Complaint.

87. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 87 of the Complaint.

88. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 88 of the Complaint.

89. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 89 of the Complaint.

90. That the Defendant would state that the referenced statutes would speak for

themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 90 of the Complaint.

91. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 91 of the Complaint.

92. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 92 of the Complaint.

93. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 93 of the Complaint.

94. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 94 of the Complaint.

95. Paragraph 95 of the Complaint does not require a response from the Defendant.

96. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 96 of the Complaint.

97. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 97 of the Complaint.

98. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 98 of the Complaint.

99. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 99 of the Complaint.

100. Paragraph 100 of the Complaint does not require a response from the Defendant.

101. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 101 of the Complaint.

102. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 102 of the Complaint.

103. That the Defendant would state that the referenced statutes would speak for themselves. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 103 of the Complaint.

104. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 104 of the Complaint.

105. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 105 of the Complaint.

106. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 106 of the Complaint.

107. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 107 of the Complaint.

108. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 108 of the Complaint.

109. Paragraph 109 of the Complaint does not require a response from the Defendant.

110. That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 110 of the Complaint.

111. That the Defendant is without knowledge or information sufficient to form

a belief as to the truth of the averments in Paragraph 111 of the Complaint.

112.     That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 112 of the Complaint.

113.     That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 113 of the Complaint.

114.     That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 114 of the Complaint.

115.     That the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 115 of the Complaint.

116.     That the Defendant Weiss & Cummins, PLLC, hereby denies any remaining allegations not specifically addressed in Items 1-115 above.

117.     As an affirmative defense, the Defendant hereby states that the Plaintiff has failed to state a claim upon which relief can be granted as to the Defendant Weiss & Cummins, PLLC.

118.     Accordingly, Defendant Weiss & Cummins, PLLC, prays that the Court dismiss this cause against it.

Respectfully submitted,

Elizabeth A. Cash, B.P.R. #22830
Attorney for Weiss & Cummins, PLLC
208 Adams Avenue
Memphis, Tennessee 38103
(901) 526-8296

12

CERTIFICATE OF SERVICE

I, Elizabeth A. Cash, do hereby certify that a copy of the foregoing Answer, was mailed, via first-class mail, postage-prepaid, to the parties listed below, this the _____ day of June, 2017.

_____
Elizabeth A. Cash

David Tarpley, Esq.
300 Deaderick Street
Nashville, TN 37201

Samuel Keen, Esq.
300 Deaderick Street
Nashville, TN 37201

MidFirst Bank
c/o Deborah Wolfe, Esq
999 N.W. Grand Boulevard
Oklahoma City, OK 73118

13